## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDRE BOYER,
                    Plaintiff,
      V.                                    Civil Action No.

CITY OF PHILADELPHIA,
PHILADELPHIA DISTRICT              JURY TRIAL OF 12 DEMANDED
ATTORNEY'S OFFICE,
PHILADELPHIA DISTRICT
ATTORNEY LAWRENCE S.
KRASNER, PHILADELPHIA OFFICE
OF THE SHERIFF, PHILADELPHIA
SHERIFF ROCHELLE BILAL,
PENNSYLVANIA ATTORNEY
GENERAL MICHELLE A. HENRY,
STATE POLICE COMMISSIONER
ROBERT EVANCHICK,
PHILADELPHIA LODGE NO. 5,
FRATERNAL ORDER OF POLICE,
MARCUS O'SHAUGHNESSY,
LLOYD O'LEARY, FRANK T.
WALLACE, DETECTIVE LONG,
JAMES POULOS, ANTHONY
GLAVIANO, and WANDA
NEWSOME,
                    Defendants.

## COMPLAINT

NOW COMES Plaintiff, Andre Boyer, by and through undersigned

counsel, who hereby submits this Complaint and avers as follows:

1

## GROUNDS FOR RELIEF

**Individual Parties.**

1.     Plaintiff, Andre Boyer, is an adult individual and resident of the City of Philadelphia, Pennsylvania.

2.     Defendant, Marcus O'Shaughnessy ("Sgt. O'Shaughnessy"), Badge No. 432, serves as a sergeant in the Philadelphia Police Department.

3.     Defendant, Lloyd O'Leary, serves as a lieutenant in the Philadelphia Office of the Sheriff.

4.     Defendant, Frank T. Wallace, serves as a detective in the Philadelphia District Attorney's Office.

5.     Defendant, Lieutenant Long, serves as a lieutenant in the Philadelphia Police Department and is further identified by Badge No. 137. Lieutenant Long's full legal name is known to the other Defendants.

6.     Defendant, James Poulos ("Detective Poulos"), serves as a detective in the Philadelphia District Attorney's Office and is further identified by Badge No. 9260.

7.     Defendant, Anthony Glaviano ("Detective Glaviano"), serves as detective in the Philadelphia District Attorney's Office and is further identified by Badge No. 796.

8.     Defendant, Wanda Newsome (Badge No. 142), is the Commanding

Officer of the Gun Permit Unit of the Philadelphia Police Department.

9.    The foregoing Defendants are herein the "Individual Defendants."

**City of Philadelphia.**

10.    Defendant, City of Philadelphia (the "City"), is a First Class City under Pennsylvania law and has adopted a Home Rule Charter.

11.    The City of Philadelphia has a police department (the "Philadelphia Police Department").

12.    Attached as Exhibit A are true and correct copies of Chapter 1 and Chapter 2 of the Philadelphia Home Rule Charter currently in force.

13.    The Mayor of the City of Philadelphia does not have authority to give orders to the Philadelphia District Attorney or the Philadelphia Sheriff.

**Philadelphia District Attorney's Office.**

14.    Defendant, Lawrence S. Krasner, is the incumbent Philadelphia District Attorney.

15.    Defendant, Philadelphia District Attorney's Office, is not created by the Philadelphia Home Rule Charter.

16.    The Philadelphia District Attorney is not an officer or employee of the City of Philadelphia.

17.    The Philadelphia District Attorney is not an agent of the Mayor of the City of

Philadelphia.

18.     The Philadelphia District Attorney's Office and its powers are created and regulated by statute, that is, 16 P.S. §§ 7701-42.

19.     Situated within the territorial limits of the City of Philadelphia, the Philadelphia District Attorney is responsible for the hiring, firing, training, and supervising of assistant district attorneys and the chief detective and assistant detectives.

20.     Attached as Exhibit B is a true and correct copy of Section 20-207 of The Philadelphia Code currently in force, together with the Preface and Table of Contents of the Twelfth Edition of The Philadelphia Code.

**Philadelphia Office of the Sheriff.**

21.     Defendant, Rochelle Bilal, is the incumbent Sheriff of Philadelphia.

22.     Defendant, Philadelphia Office of the Sheriff, is not created by the Philadelphia Home Rule Charter.

23.     The Philadelphia Sheriff is not an officer or employee of the City of Philadelphia.

24.     The Philadelphia Sheriff is not an agent of the Mayor of the City of Philadelphia.

25.     The Philadelphia Office of the Sheriff and its powers are created and regulated by statute, that is, 16 P.S. §§ 1201-A to 1215-A and 16 P.S. §§ 7201 to 7204.

26.     Situated within the territorial limits of the City of Philadelphia, the Philadelphia

Office of the Sheriff is responsible for hiring, firing, training, and supervising of deputy sheriffs which provide security to the Philadelphia Court of Common Pleas and to the Philadelphia Municipal Court.

**Commonwealth Officers.**

27.     Michelle Henry, Attorney General of Pennsylvania, is a statewide elected officer as provided by the Pennsylvania Constitution in force and is part of the Executive Department of the Government of the Commonwealth of Pennsylvania. Pa. Const., art. IV, §§ 1, 4.1, 5, 17-18.

28.     Attorney General Michelle Henry is "the chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law." Pa. Const., art. IV, § 4.1.

29.     Pennsylvania State Police Commissioner Robert Evanchick is an officer of the Government of the Commonwealth of Pennsylvania whose office is created by Sections 205 and 710 of The Administrative Code of 1929 (71 P.S. §§ 65, 250).

30.     Licensure under the Uniform Firearms Act is administered by the Pennsylvania State Police under the authority of Commissioner Evanchick, as specified in 18 Pa.C.S. § 6111.1, who may promulgate rules and regulations necessary to carry out such act, id. § 6111.5.

31.     Under the Pennsylvania Constitution and the Commonwealth Attorneys Act, the Attorney General is empowered to prosecute criminal offenses, inter alia, if

requested by a district attorney, or upon a petition to a court of competent jurisdiction to supersede the district attorney, or upon a request by a court of competent jurisdiction to intervene, or upon indictments returned by an investigating grand jury obtained by the Attorney General, or upon a referral by the Pennsylvania State Police arising out of its enforcement of the Uniform Firearms Act. 71 P.S. § 732-205(a).

32.     Pennsylvania Attorney General Michelle Henry and Pennsylvania State Police Commissioner Robert Evanchick are herein denominated, "Commonwealth Officers."

**Philadelphia Lodge No. 5, Fraternal Order of Police.**

33.     Defendant, Philadelphia Lodge No. 5, Fraternal Order of Police ("FOP Lodge No. 5") is a Pennsylvania nonprofit corporation.

34.     FOP Lodge No. 5 is headquartered at 11630 Caroline Road, Philadelphia, PA 19154.

**Jurisdiction and Venue.**

35.     Plaintiff brings this action under 42 U.S.C. § 1983.

36.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, because the claims arise under the laws of the United States.

37.     Each Defendant is situated in, a citizen of, or found within this judicial district.

38.     Venue is properly brought in this judicial district pursuant to 28 U.S.C.

§ 1391(b)(1) and (b)(2) because Defendants are situated in this judicial district and because a substantial part of the acts, omissions, or both, occurred in this judicial district.

**Conspiracies — In General.**

39.    Plaintiff was formerly employed as a police officer in the Police Department of the City of Philadelphia and held that employment for approximately 17 years.

40.    After Plaintiff left his employ with the Police Department of the City of Philadelphia, he obtained a valid license under the Private Detective Act of 1953, 22 P.S. § 11, et seq., and continues to hold such license.

41.    During all relevant times, Plaintiff had a valid firearms certification under the Lethal Weapons Training Act, 22 P.S. § 41, et seq., and continues to hold such certification.

42.    During all relevant times, Plaintiff was employed by a business firm, namely, a hotel, for the provision of security services for the protection of employees and guests, as well as moneys, valuables and other property of employees and guests and of the employer itself.

43.    Within the scope of Plaintiff's employment, he is required to conduct a citizen's arrest if any person commits a felony or breach of the peace in his presence.

44.    In 2013, Plaintiff created an online news service dedicated to the subject

of police corruption, called *Serpico News*.

45.    During all relevant times, Plaintiff manages and periodically authors and publishes information on *Serpico News* which bears upon the conduct of the Police Department of the City of Philadelphia, the Philadelphia Office of the Sheriff, FOP Lodge No. 5, or any of them.

46.    Plaintiff believes that his involvement with *Serpico News* has the economic effects of promoting his business as a private detective and good will in the community.

47.    As a result of Plaintiff's work for *Serpico News*, FOP Lodge No. 5 regards Plaintiff as their political enemy. FOP Lodge No. 5 has requested of, and formed agreements with, the Defendants (or with any of them) to engage in a pattern of personal animus against the Plaintiff and, while acting under color of state law, to repeatedly look for any pretext to violate his rights, including by way of assault, battery, and false imprisonment, to prevent his ability to obtain a license under the Uniform Firearms Act and then look for any pretext to prosecute him under that statute, and to retaliate against him by reason of his involvement with *Serpico News*. Such conspiracy continues so long as Plaintiff continues to be found in the City of Philadelphia, to work in the City of Philadelphia as a private detective, or both.

**2016 Revocation of Uniform Firearms Act License.**

48.    Prior to 2016, Plaintiff held a license to carry firearms in the City of

Philadelphia under the Uniform Firearms Act (UFA), 18 Pa.C.S. § 6101 et seq.

49.   In 2016, the City of Philadelphia revoked Plaintiff's UFA license.

50.   On December 20, 2016, in the case of *In re* Andre Boyer, Appeal No. 28392, the License & Inspection Review Board for the City of Philadelphia held a Firearms Appeal Hearing and affirmed the City's decision to revoke Plaintiff's UFA license.

51.   A true and correct copy of a transcript of the aforementioned Firearms Appeal Hearing is attached as Exhibit C and incorporated by reference.

52.   During the aforementioned Firearms Appeal Hearing, Deputy Sheriff Robert Lee testified that he investigated Plaintiff at the request of a representative of FOP Lodge 5.

53.   During the aforementioned Firearms Appeal Hearing, Deputy Sheriff Robert Lee falsely stated under oath that Plaintiff admitted to wearing a firearm on a holster within a courtroom within City Hall in Philadelphia, where a civil trial was held for a suit against FOP Lodge No. 5.

54.   During the aforementioned Firearms Appeal Hearing, Deputy Sheriff Robert Lee admitted under oath that he neither saw a firearm on Plaintiff's holster nor did he place Plaintiff under arrest for violating the statute of 18 Pa.C.S. § 6108.

55.   The Juanita Kidd Stout Center for Criminal Justice is located at 1301 Filbert Street, Philadelphia, PA 19107, and commonly known as the "Criminal Justice

Center."

56.    During the aforementioned Firearms Appeal Hearing, Deputy Sheriff Robert Lee testified that he instructed Plaintiff to go to the Criminal Justice Center and lock up any firearms before entering any courthouses in Philadelphia.

57.    During the aforementioned Firearms Appeal Hearing, the License & Inspection Review Board for the City of Philadelphia did not permit Plaintiff to make a full and fair defense.

**Multiple Arrests and Criminal Prosecution.**

58.    On December 5, 2019, and while acting within the course and scope of his employment, Plaintiff went to the 35th Police District Headquarters of Philadelphia to surrender property on behalf of Plaintiff's employer.

59.    After delivering such property to the police, and while standing in the lobby of the 35th Police District Headquarters, Plaintiff began to record a video for Serpico News.

60.    Defendant O'Shaughnessy asserted that he saw Defendant carrying a holstered firearm in the lobby of the aforementioned Headquarters while returning the identifications.

61.    Defendant O'Shaughnessy, or someone acting on his behalf, sought and obtained a warrant to arrest the Plaintiff on the basis of briefly viewing a firearm in a holster, without inquiring whether the item seen was in fact a firearm, whether it was

operable as a weapon, or whether Plaintiff had a license or authorization to carry it.

62.   The next day, Plaintiff attended the Philadelphia Court of Common Pleas to testify before an investigating grand jury.

63.   While Plaintiff stepped out of the building to answer a phone call, Detective Long and Detective Wallace placed Plaintiff under arrest.

64.   Defendants Long and Wallace attempted to seize Plaintiff's cell phone while it was still powered on; Plaintiff powered off that device.

65.   Plaintiff's cell phone was sent to Pennsylvania State Police for a forensic analysis.

66.   However, the judge presiding over the grand jury inquired, on information and belief, into the content of the phone.

67.   When he was taken to the 35th Police District Headquarters after arrest, Plaintiff was told he was arrested because Defendant O'Shaughnessy "saw a gun."

68.   A search warrant also issued for Plaintiff's residence based on the same affidavit by Defendant O'Shaughnessy, which warrant was executed by Detectives Glaviano and Poulos, who intrusively searched Plaintiff's private home and personal effects.

69.   On December 7, 2019, Detective Wallace made a charging decision and commenced a criminal action against Plaintiff, at Docket No. MC-51-CR-0031626-2019, for a single count of 18 Pa.C.S. § 6108 — carrying a firearm upon the public

streets or upon any public property in a city of the first class.

70.     On or about March 12, 2021, and while Plaintiff was acting within the scope of his employment as a private detective, a member of the public, after being warned to leave the premises of the hotel where Plaintiff is employed, returned without permission and engaged in disorderly conduct in Plaintiff's presence. Plaintiff effected a citizen's arrest and requested the Philadelphia Police Department to take the suspect into custody.

71.     Upon arrival at the hotel, Philadelphia police officers arrested the Plaintiff and charged him with Simple Assault. The charges were dismissed without a conviction.

72.     On April 1, 2022, a Municipal Court judge dismissed the aforementioned charge under 18 Pa.C.S. § 6108 for lack of prosecution.

73.     During the month of April of 2022, and while acting within his capacity as a licensed private detective, Plaintiff appeared to testify in a case at the Criminal Justice Center.

74.     When Plaintiff arrived at the Criminal Justice Center, Plaintiff was wearing a full uniform, with a bulletproof vest and a holstered firearm on his person.

75.     Upon entering the Criminal Justice Center, Plaintiff made a request to deputy sheriffs for permission to deposit his firearm and equipment in the facility's gun locker, and he was permitted to do so.

76.     After completion of his court testimony, and seeking to depart from the Criminal Justice Center, Plaintiff retrieved his firearm and equipment. At that moment, Lieutenant O'Leary 18 Pa.C.S. § 6108 questioned whether Plaintiff had a permit to carry that firearm. After Plaintiff responded that he was a licensed private detective, O'Leary seized Plaintiff's person and confiscated his firearm and equipment.

77.     On April 19, 2022 and at Docket No. MC-51-CR-0031626-2019, the Commonwealth filed a Notice of Refiling of Criminal Complaint, resuming criminal prosecution based on the arrest from December 6, 2019.

78.     As a result of the Notice of Refiling of Criminal Complaint, the Plaintiff was subjected to an arrest and confiscation of his firearm.

79.     On March 15, 2023, a Municipal Court judge held trial and entered judgment of acquittal for the charge of violating 18 Pa.C.S. § 6108, which terminated the criminal action in favor of the Plaintiff.

80.     Throughout the aforementioned criminal proceedings, Plaintiff was represented by private counsel and incurred liability for reasonable attorneys' fees for such representation and litigation expenses reasonably related to his defense.

**Motions for Return of Property.**

81.     On September 30, 2021, Plaintiff filed in the Philadelphia Court of Common Pleas, at Docket No. CP-51-MD-0003928-2021, a motion for return of property and the court granted his request on April 25, 2022.

82.     On December 1, 2021, Plaintiff filed in the Philadelphia Court of Common Pleas, at Docket Nos. CP-51-MD-0003938-2021, CP-51-MD-0003939-2021, CP-51-MD-0003940-2021 and CP-51-MD-0003941-2021, motions for return of property and the court granted his request on April 25, 2022.

83.     On April 4, 2022, Plaintiff filed in the Philadelphia Court of Common Pleas, at Docket No. CP-51-MD-0001280-2022, a motion for a return of property and the court granted his request on April 25, 2022.

84.     On May 31, 2022, Plaintiff filed in the Philadelphia Court of Common Pleas, at Docket Nos. CP-51-MD-0001787-2022 and CP-51-MD-0001788-2022, motions for return of property, inter alia, requesting that the Philadelphia Police Department return his firearm which was confiscated from Plaintiff's arrests.

85.     On November 21, 2022, the Philadelphia Court of Common Pleas ordered the Philadelphia Police Department to Comply and return Plaintiff's firearm and property.

86.     On March 21, 2023, Plaintiff filed in the Philadelphia Court of Common Pleas, at Docket Nos. CP-51-MD-0001035-2023 and CP-51-MD-0001037-2023, motions for return of property and the court granted relief on April 12, 2023.

87.     The firearm and property were only returned the week of May 8, 2023.

88.     In the aforementioned motions and proceedings, Plaintiff incurred financial loss, including financial loss for reasonable attorneys' fees where he was represented for some of the proceedings.

**2023 Denial of Application to Carry Firearms.**

89.     Attached as Exhibit D is a true and correct information packet prepared by the Philadelphia Police Department, which contains an Application for a Pennsylvania License to Carry Firearms (the "Application").

90.     The Application in Exhibit D was promulgated by the Pennsylvania State Police, 37 Pa. Code § 33.114.

91.     The Application contains Item 28, "Reason for a License to Carry Firearms," and contains a check-the-box response for the following: "Self-Defense," "Employment," "Hunting/Fishing," "Target Shooting," "Gun Collecting," and "Other."

92.     In 2023, Plaintiff completed and submitted an Application for a Pennsylvania License to Carry Firearms, using the same form as shown in Exhibit D.

93.     One June 8, 2023, Lt. Wanda Newsome ("Lt. Newsome") signed a notice, a true and correct copy of such notice is shown in Exhibit E.

94.     In such notice, Lt. Newsome informed Plaintiff that his Application for a Pennsylvania License to Carry Firearms was disapproved for the following reasons: "Applicant is an individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety," "Applicant is denied due to good cause," "YOUR CONDUCT on the following date(s) which MAY HAVE resulted in your arrest: DATE(S): 12/6/2019 – VUFA Arrest; 3/12/2021 – Simple

Assault; 10/19/2021 – VUFA Arrest," and "Other: 9/7/2017—Common Pleas Court, City Affirmed the Decision of Revocation that occurred on 5/20/2016."

95.     "VUFA" is an abbreviation for "Violation of Uniform Firearms Act."

96.     Lt. Newsome, by disapproving Plaintiff's Application, did not rely upon any criminal conviction and acted on a discriminatory animus against Plaintiff, personally.

97.     Lt. Newsome, by disapproving Plaintiff's Application, relied on allegations of fact that were not proven before a jury in a court of law.

98.     Plaintiff has no criminal convictions which would disqualify him from possessing a valid license under the Uniform Firearms Act, 18 Pa.C.S. § 6109(e)(1).

99.     Plaintiff is not likely to act in a manner dangerous to public safety.

100.   Plaintiff has a sound mind and has never been committed to a mental institution.

101.   Plaintiff believes and avers that he is not disqualified from possessing a valid license under any of the provisions of the Uniform Firearms Act, inclusive of 18 Pa.C.S. § 6109(e)(1).

**Defendants Violated and Intend to Continue Violating Plaintiff's Rights.**

102.   Within the City of Philadelphia and for self-defense, the Plaintiff desires to openly carry a firearm outside of his home, whether as part of his occupation or not, and his right to do so under the Second Amendment of the U.S. Constitution has been infringed by and, on a continuing basis, chilled by the Defendants or by any of them.

103.    Within the Commonwealth of Pennsylvania and for self-defense, the Plaintiff desires to regularly carry a firearm in any vehicle under circumstances where none of the exceptions in 18 Pa.C.S. § 6106(a)(2) & (b) exist; and his right to do so under the Second Amendment of the U.S. Constitution has been infringed by and, on a continuing basis, chilled by the Defendants or by any of them.

104.    Within the Commonwealth of Pennsylvania and for self-defense, the Plaintiff desires to regularly carry a firearm concealed on or about his person, without a license, and while outside his place of abode and fixed place of business, or both; and his right to do so under the Second Amendment of the U.S. Constitution has been infringed by and, on a continuing basis, chilled by the Defendants or by any of them.

105.    Contrary to the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, the Uniform Firearms Act (18 Pa.C.S. § 6101 et seq.) imposes a prior restraint on carrying concealed a firearm on or about one's person, namely, licensure, which is an invidious system of individual discrimination through administrative adjudications outside of a court of law and without a jury and which invites subsequent judicial deference to administrative factfinding.

106.    Under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, core private rights, including constitutional rights, cannot be adjudicated within an administrative proceeding, but by and through a court of law before a jury. Axon Enters. v. Fed. Trade Comm'n, ___ U.S. ___, 143 S. Ct. 890, 906 (2023)

17

(Thomas, *J.*, concurring, joined by Gorsuch, *J.*).

107.    The United States of America has a long-standing history of racial discrimination against persons of color through licensing statutes, of which Plaintiff is a member of that class as an African American male.

108.    The text of the Second Amendment of the U.S. Constitution draws no distinction between carrying a firearm openly or concealed, or within or without a city, or keeping a firearm within one's home or vehicle. In Noah Webster's *American Dictionary of the English Language* (1828), the word "bear" means: "To wear," including "*to bear arms in a coat*."

109.    At the time of ratification of the Fourteenth Amendment of the U.S. Constitution: (1) there was no consensus among the States in categorically prohibiting the right to carry a firearm concealed, or outside of the home, without a license and (2) before and after the passage of the Thirteenth Amendment of the U.S. Constitution, the several States passed licensing statutes which used licensure as a pretext for controlling the freedom of and infringing upon the fundamental rights of African Americans, including the right to bear arms. After the passage of the Thirteenth Amendment, many of these licensing statutes were known as the "Black Codes."

110.    Where States had then prohibited the carrying, or the concealed carrying, of firearms without a license, it was socially understood that even race-neutral laws were to be enforceable against African Americans only. As stated by Mr. Justice Rivers

Henderson Buford of the Supreme Court of Florida, in regards to a Florida statute which prohibited the carrying of a firearm without a license:

> I know something of the history of this legislation. The original Act of 1893 was passed when there was a great influx of negro laborers in this State drawn here for the purpose of working in turpentine and lumber camps. The same condition existed when the Act was amended in 1901 and the Act was passed for the purpose of disarming the negro laborers and to thereby reduce the unlawful homicides that were prevent in turpentine and saw-mill camps and to give the white citizens in sparsely settled areas a better feeling of security. The statute was never intended to be applied to the white population and in practice has never been so applied. We have no statistics available, but it is a safe guess to assume that more than 80% of white men living in the rural sections of Florida have violated this statute. It is also a safe guess to say that not more than 5% of the men in Florida who own pistols and repeating rifles have ever applied to the Board of County Commissioners for a permit to have the same in their possession and there has never been, within my knowledge, any effort to enforce the provisions of this statute as to white people, because it has been generally concede to be in contravention to the Constitution and non-enforceable if contested.

Watson v. State, 4 So. 2d 700, 703 (Fla. 1941) (Buford, *J.* concurring).

111. The Uniform Firearms Act was borrowed from the Model Act by the United States Revolver Association, which pursued licensing under an erroneous premise that the Second Amendment of the U.S. Constitution did not protect the carrying of firearms outside of the home:

> In other words, law-abiding citizens should be perfectly free to obtain and keep in their homes pistols or revolvers, but no persons other than those authorized by law, should be allowed to carry such weapons abroad without express permission granted after necessity has been shown.

*The Argument for a Uniform Revolver Law*, *in* HANDBOOK OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS 719 (1924).

112.    From its inception by the National Conference of Commissioners on Uniform State Laws, the Uniform Firearms Act of 1926 followed an unconstitutional premise that a license to carry a firearm concealed could be had only "if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol or revolver, and that he is a suitable person to be so licensed." A Uniform Act to Regulate the Sale and Possession of Firearms § 6 (1926), *in* HANDBOOK OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS 576-77 (1926).

113.    In context of regulating the concealed carry of a firearm, the interests of the Government of the Commonwealth of Pennsylvania are constitutionally valid through laws of general applicability, inter alia, (1) prohibiting a person from possessing a firearm as a result of certain criminal convictions which were adjudicated in a court of law, see, e.g., 18 Pa.C.S. § 6105 (criminal conviction); and (2) requiring certain firearms sellers to perform required screenings on the purchaser before completing a sale, 18 Pa.C.S. § 6111.

114.    Within the City of Philadelphia and for self-defense, the Plaintiff desires to openly carry a firearm while traveling to and from a courthouse or government building, intending to surrender possession of his firearm to government authority

20

while entering a courthouse or government building and retrieving the same upon exiting a courthouse or government building, and his right to do so under the Second Amendment of the U.S. Constitution has been infringed by and, on a continuing basis, chilled by the Defendants or by any of them.

115.    The nature of Plaintiff's business as a private detective regularly requires him to appear before courthouses and government buildings and to carry a firearm on his employer's premises and while traveling to and from courthouses and government buildings. But the "employment exception" from licensure in 18 Pa.C.S. § 6106(b) is an affirmative defense raised at trial under a criminal prosecution, Commonwealth v. Lopez, 565 A.2d 437, 440 (Pa. 1989), and the exceptions in 18 Pa.C.S. § 6106(b) do not include licensed private detectives under the Private Detective Act (22 P.S. § 11 et seq.) or persons with a firearms certification under the Lethal Weapons Training Act (22 P.S. § 41 et seq.), Commonwealth v. Anderson, 169 A.3d 1092 (Pa. Super. Ct. 2017). Based on the foregoing, the Philadelphia Police Department may continually arrest Plaintiff on sight, whenever he possesses a firearm in the course of his employment, and force the Plaintiff to undergo the costs and humiliation of raising the affirmative defense at trial that he was acting within the scope of his employment.

116.    The nature of Plaintiff's exercise of First Amendment rights as an amateur journalist requires that he openly carry a firearm while off-duty as a private detective.

117.    Where duly-licensed under the Private Detective Act (22 P.S. § 11 et seq.) and

possessing a firearms certification under the Lethal Weapons Training Act (22 P.S. § 41 et seq.), Plaintiff and other persons like him are similarly-situated to other persons exempt from licensure under the Uniform Firearms Act, but the Defendants, or any of them, have prosecuted Plaintiff and persons like him and intend to continue such prosecutions by reason of not possessing a license to carry under the Uniform Firearms Act.

118.   Based on the foregoing averments taken in their entirety, Defendants have violated and intend to continue violating Plaintiff's constitutional rights to keep and bear arms under the Second Amendment of the U.S. Constitution, made applicable to the States under the Fourteenth Amendment. N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111, 2143 (2022); McDonald v. City of Chicago, 561 U.S. 742, 791 (2010); D.C. v. Heller, 554 U.S. 570, 635 (2008).

119.   The Defendants, or any of them, have enforced Pennsylvania's Uniform Firearms Act, in whole or in part, with intentional or reckless disregard of the U.S. Supreme Court's decisions in N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111, 2143 (2022), McDonald v. City of Chicago, 561 U.S. 742, 791 (2010) and D.C. v. Heller, 554 U.S. 570, 635 (2008) and intend to continue enforcing such statute with intentional or reckless disregard for those decisions.

120.   The Defendants, or any of them, have violated and intend to continue violating the Due Process and Equal Protection clauses of the Fourteenth Amendment through

a discriminatory enforcement of the Uniform Firearms Act as applied to persons who are duly-licensed under the Private Detective Act of 1953 (22 P.S. § 11 et seq.) and possess a firearms certification under the Lethal Weapon Training Act (22 P.S. § 41 et seq.), such persons being similarly-situated to other persons exempt from licensure under the Uniform Firearms Act.

121.   Based on the foregoing averments taken in their entirety, Defendants have repeatedly violated Plaintiff's rights under the First and Second amendments of the U.S. Constitution through retaliatory actions and intend to continue such retaliatory actions against him.

122.   The City of Philadelphia, the Philadelphia Office of the District Attorney, the Philadelphia Office of the Sheriff, and the Commonwealth Officers have an official policy for committing, or recklessly disregarding, or ratifying or acquiescing into, the foregoing constitutional violations.

123.   Defendants, or any of them, have formed one or more agreements and have committed substantial acts in furtherance of an object of violating the foregoing constitutional rights of the Plaintiff and to inflict tortious injury on Plaintiff.

124.   The Individual Defendants, or any of them, have acted with malice towards, or with a reckless or callous disregard of, or indifference to, the rights of Plaintiff.

125.   At all material times, Defendants acted under color of state law.

126.   Based on the foregoing averments taken in their entirety, Defendants, or any of

them, have violated and intend to continue violating the aforementioned constitutional

rights of Plaintiff.

## COUNT I:  DECLARATORY AND INJUNCTIVE RELIEF
### (42 U.S.C. § 1983)

127.   The foregoing paragraphs are incorporated by reference as though fully set forth

herein.

128.   Based on the foregoing, the statute of 18 Pa.C.S. § 6108 is unconstitutional, on

its face or as applied to the facts and circumstances of this case, in respect of carrying

a firearm, rifle or shotgun at any time upon the public streets or upon any public

property in a city of the first class.

129.   Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter

declaratory and injunctive relief in his favor and against the City of Philadelphia, the

Philadelphia District Attorney's Office, the Philadelphia Office of the Sheriff,

Pennsylvania Attorney General Michelle Henry, and Pennsylvania State Police

Commissioner Robert Evanchick, specifically, declaring unconstitutional, on its face

or as-applied to particular facts and circumstances found by the court, the statute of

18 Pa.C.S. § 6108 as to carrying a firearm, rifle or shotgun at any time upon the

public streets or upon any public property in a city of the first class, and permanently

enjoining such Defendants from enforcing the same, together with costs, reasonable

attorneys' fees, and such other relief as the Court deems necessary, just, or appropriate.

## COUNT II: DECLARATORY AND INJUNCTIVE RELIEF
## (42 U.S.C. § 1983)

130.   The foregoing paragraphs are incorporated by reference as though fully set forth herein.

131.   Based on the foregoing, Pennsylvania's Uniform Firearms Act (18 Pa.C.S. § 6106(a)) is unconstitutional, on its face or as applied to the facts and circumstances of this case, in respect of criminalizing persons who openly carry a firearm in any vehicle while unlicensed.

132.   Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter declaratory and injunctive relief in his favor and against City of Philadelphia, the Philadelphia District Attorney's Office, the Philadelphia Office of the Sheriff, Pennsylvania Attorney General Michelle Henry, and Pennsylvania State Police Commissioner Robert Evanchick, specifically, declaring unconstitutional, on its face or as-applied to particular facts and circumstances found by the court, the statute of 18 Pa.C.S. § 6106(a) as to carrying a firearm in any vehicle; and permanently enjoining such Defendants from enforcing the same; together with costs, reasonable attorneys' fees, and such other relief as the Court deems necessary, just, or

appropriate.

## COUNT III: DECLARATORY AND INJUNCTIVE RELIEF
### (42 U.S.C. § 1983)

133.    The foregoing paragraphs are incorporated by reference as though fully set forth

herein.

134.    Based on the foregoing, Pennsylvania's Uniform Firearms Act (18 Pa.C.S. §

6101 et seq.) is unconstitutional, on its face or as applied to the facts and circumstances

of this case, in respect of imposing a prior restraint on carrying concealed a firearm on

or about one's person, namely, licensure, which is an invidious system of individual

discrimination through administrative adjudications outside of a court of law and

without a jury and which invites judicial deference to administrative factfinding.

135.    Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

    **WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter

declaratory and injunctive relief in his favor and against City of Philadelphia, the

Philadelphia District Attorney's Office, the Philadelphia Office of the Sheriff,

Pennsylvania Attorney General Michelle Henry, and Pennsylvania State Police

Commissioner Robert Evanchick, specifically, declaring unconstitutional, on its face

or as-applied to particular facts and circumstances found by the court, the statute 18

Pa.C.S. §§ 6106 and 6109 on its face or as applied to the facts and circumstances of

this case; and permanently enjoining such Defendants from enforcing the same;

together with costs, reasonable attorneys' fees, and such other relief as the Court

deems necessary, just, or appropriate.

## COUNT IV: DECLARATORY AND INJUNCTIVE RELIEF
### (42 U.S.C. § 1983)

136.   The foregoing paragraphs are incorporated by reference as though fully set forth

herein.

137.   Based on the foregoing, Pennsylvania's Uniform Firearms Act (18 Pa.C.S. §

6101 et seq.) is unconstitutional, on its face or as applied to the facts and circumstances

of this case, in respect of permitting the licensing authority to deny an application for

a license to carry firearms based on allegations that are not adjudicated within a court

of law before a jury.

138.   Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter

declaratory and injunctive relief in his favor and against City of Philadelphia, the

Philadelphia District Attorney's Office, the Philadelphia Office of the Sheriff,

Pennsylvania Attorney General Michelle Henry, and Pennsylvania State Police

Commissioner Robert Evanchick, specifically, declaring unconstitutional, on its face

or as-applied to particular facts and circumstances found by the court, the statute 18

Pa.C.S. §§ 6106 and 6109 on its face or as applied to the facts and circumstances of

this case, as to permitting the licensing authority to deny an application a license to

carry firearms based on allegations that are not adjudicated within a court of law before a jury; and permanently enjoining such Defendants from enforcing the same; together with costs, reasonable attorneys' fees, and such other relief as the Court deems necessary, just, or appropriate.

### COUNT V: DECLARATORY AND INJUNCTIVE RELIEF
### (42 U.S.C. § 1983)

139.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

140.    Based on the foregoing, the uniform Application for a License to Carry Firearms, as promulgated by the Pennsylvania State Police, is unconstitutional as applied to inquiring into an applicant's reasons for seeking a license to carry firearms.

141.    Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter declaratory and injunctive relief in his favor and against Pennsylvania State Police Commissioner Robert Evanchick, specifically, declaring unconstitutional the Application for a License to Carry Firearms promulgated under Pennsylvania's Uniform Firearms Act to the extent of inquiring into an applicant's reasons for seeking a license to carry firearms; and permanently enjoining such Defendants from enforcing the same under those facts and circumstances; together with costs, reasonable attorneys' fees, and such other relief as the Court deems necessary, just,

or appropriate.

## COUNT VI: DECLARATORY AND INJUNCTIVE RELIEF
## (42 U.S.C. § 1983)

142.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

143.    Under the Due Process and Equal Protection clauses of the Fourteenth Amendment of the U.S. Constitution, a criminal prosecution under the Uniform Firearms Act (18 Pa.C.S. §§ 6106, 6108) is unconstitutional as applied to persons who are duly-licensed under the Private Detective Act of 1953 (22 P.S. § 11 et seq.), or have certification under the Lethal Weapons Training Act (22 P.S. § 41 et seq.), or both, and are acting within the scope of their licensure, where such persons are similarly-situated as other persons exempt from licensure under the Uniform Firearms Act.

144.    Plaintiff is a member of the foregoing class of persons.

145.    Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

   **WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter declaratory and injunctive relief in his favor and against the City of Philadelphia, the Philadelphia District Attorney's Office, the Philadelphia Office of the Sheriff, Attorney General of Pennsylvania Michelle Henry, and Commissioner of the Pennsylvania State Police Robert Evanchick, specifically, declaring unconstitutional

the enforcement of 18 Pa.C.S. §§ 6106 and 6108 as applied to duly-licensed persons under the Private Detective Act of 1953 who possess a firearms certification under the Lethal Weapons Training Act; and permanently enjoining such Defendants from enforcing the same under those facts and circumstances; together with costs, reasonable attorneys' fees, and such other relief as the Court deems necessary, just, or appropriate.

## COUNT VII: FIRST AMENDMENT RETALIATION
### (42 U.S.C § 1983)

146.   The foregoing paragraphs are incorporated by reference as if set forth at length herein.

147.   Based on the foregoing, Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome, or any of them, acted in retaliation of Plaintiff's viewpoints and in violation of his rights under the First Amendment of the U.S. Constitution, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

148.   Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against the Defendants City of Philadelphia, Philadelphia

Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome for damages (and punitive damages as applied to Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT VI: SECOND AMENDMENT VIOLATION
### (42 U.S.C § 1983)

149.   The foregoing paragraphs are incorporated by reference as if set forth at length herein.

150.   Based on the foregoing, the actions or omissions of Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome, or any of them, or any of their failure to intervene, violated Plaintiff's rights under the Second Amendment of the U.S. Constitution, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

151.   Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

   **WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter

judgment in his favor and against the Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome for damages (and punitive damages as applied to Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT VII: FOURTH AMENDMENT VIOLATION
## (42 U.S.C. § 1983)

152.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

153.    Based on the foregoing, Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano unlawfully seized and continued to seize Plaintiff's firearm, in violation of the Fourth Amendment of the U.S. Constitution, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

154.    Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter

judgment in his favor and against the Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano for damages (and punitive damages as applied to Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT VIII: MALICIOUS PROSECUTION
### (42 U.S.C § 1983)

155.   The foregoing paragraphs are incorporated by reference as if set forth at length herein.

156.   Based on the foregoing, Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano initiated criminal proceedings which ended in Plaintiff's favor, and such proceedings were initiated without probable cause; the Defendants, or any of them, acted maliciously or for a purpose other than bringing Plaintiff to Justice; and Plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

157. Based on the foregoing, Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

158. Relief under 42 U.S.C. § 1983 in favor of the Plaintiff is warranted.

**WHEREFORE**, Plaintiff, Andre Boyer, respectfully requests this Honorable Court enter judgment in his favor and against the Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano for damages (and punitive damages as applied to Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT IX: MALICIOUS PROSECUTION
## (PENNSYLVANIA LAW)

159. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

160. Based on the foregoing, and under Pennsylvania law, the Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano instituted criminal proceedings against the Plaintiff, without probable cause, with

malice, and such proceedings terminated in favor of the Plaintiff, or any of those defendants conspired to do the same and acted in furtherance of such conspiracy, or both.

**WHEREFORE**, Plaintiff, Andre Boyer, respectfully requests this Honorable Court enter judgment in his favor and against the Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano for damages (including punitive damages), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

### COUNT X: FAILURE TO TRAIN, DISCIPLINE, AND SUPERVISE
### (42 U.S.C § 1983)

161.    The foregoing paragraphs are incorporated by reference as if set forth at length herein.

162.    The City of Philadelphia, the Philadelphia District Attorney's Office, and the Philadelphia Office of the Sheriff, have failed to train, discipline, or supervise their respective officers, employees or agents under circumstances evidencing a reckless indifference to the rights of others.

**WHEREFORE**, Plaintiff, Andre Boyer, respectfully requests this Honorable Court enter judgment in his favor and against the City of Philadelphia, Philadelphia District Attorney's Office, and Philadelphia Office of the Sheriff for damages,

including punitive damages, as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT XI: TRESPASS TO CHATTELS
### (PENNSYLVANIA LAW)

163.    The foregoing paragraphs are incorporated by reference as if set forth at length herein.

164.    A firearm, ammunition, and cell phone were property of Plaintiff.

165.    By seizing and detaining Plaintiff's firearm, ammunition, and cell phone, Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano, or any of them, interfered with Plaintiff's continued possession, ownership, and enjoyment of his property.

166.    The foregoing Defendants intended to interfere in Plaintiff's ownership, possession, and enjoyment of his property by seizing and detaining it.

167.    As the seizure was not authorized by a constitutional statute, the foregoing Defendants were without privilege to interfere in Plaintiff's continued possession, ownership, and enjoyment of his property.

168.    Based on the foregoing, the foregoing Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

    **WHEREFORE**, Plaintiff, Andre Boyer, respectfully requests this Honorable

Court enter judgment in his favor and against the Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano, or any of them, for damages (including punitive damages), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT XII: ASSAULT AND BATTERY
## (PENNSYLVANIA LAW)

169. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

170. Based on the foregoing, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano, or any of them, are liable to Plaintiff for the torts of assault and battery under Pennsylvania law, having placed Plaintiff in apprehension of harmful or offensive contact and did, in fact, engage in harmful or offensive contact.

171. Based on the foregoing, such Defendants were not privileged as a matter of law.

172. Based on the foregoing, such Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective

Long, James Poulos, and Anthony Glaviano for damages (including punitive damages), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT XIII: FALSE IMPRISONMENT
### (PENNSYLVANIA LAW)

173.   The foregoing paragraphs are incorporated by reference as if set forth at length herein.

174.   Based on the foregoing, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano, or any of them, are liable to Plaintiff for the tort of false imprisonment under Pennsylvania law, having caused detentions of Plaintiff and such detentions were unlawful.

175.   Based on the foregoing, the foregoing Defendants were not privileged as a matter of law.

176.   Based on the foregoing, the foregoing Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano for damages (including punitive

damages), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: July 27, 2023          By:     /s/ Joel A. Ready
                                      Joel A. Ready, Esquire
                                      Attorney I.D. #321966
                                      8500 Allentown Pike, Suite 3
                                      Blandon, PA 19510
                                      (610) 926-7875
                                      joel@cornerstonelaw.us
                                      *Counsel for Plaintiff*