| | |
|---|---|
| ANDRE BOYER and PENNSYLVANIA S.I.T.E.S. AGENTS, LLC, | |
|                Plaintiffs, | |
|    V. | Civil Action No. 5:23-CV-02885-JLS |
| CITY OF PHILADELPHIA, PHILADELPHIA DISTRICT ATTORNEY'S OFFICE, PHILADELPHIA DISTRICT ATTORNEY LAWRENCE S. KRASNER, PHILADELPHIA OFFICE OF THE SHERIFF, PHILADELPHIA SHERIFF ROCHELLE BILAL, PENNSYLVANIA ATTORNEY GENERAL MICHELLE A. HENRY, STATE POLICE COMMISSIONER CHRISTOPHER L. PARIS, PHILADELPHIA LODGE NO. 5, FRATERNAL ORDER OF POLICE, MARCUS O'SHAUGHNESSY, WILLIAM O'LEARY, FRANK T. WALLACE, DETECTIVE LONG, JAMES POULOS, ANTHONY GLAVIANO, and WANDA NEWSOME, | JURY TRIAL OF 12 DEMANDED |
|                Defendants. | |

## AMENDED COMPLAINT

NOW COMES Plaintiffs, Andre Boyer and Pennsylvania S.I.T.E.S. Agents, LLC, by and through undersigned counsel, who hereby submits this Amended

Complaint and aver as follows:

## GROUNDS FOR RELIEF

**Plaintiffs.**

1.      Plaintiff, Andre Boyer, is an adult individual and resident of the City of Philadelphia, Pennsylvania.

2.      Plaintiffs, Pennsylvania S.I.T.E.S. Agents, LLC, is a Pennsylvania limited liability company headquartered in the City of Philadelphia which operates a website that refers out requests for private detective services to licensed private detectives.

**Individual Defendants.**

3.      Defendant, Marcus O'Shaughnessy ("Sgt. O'Shaughnessy"), Badge No. 432, serves as a sergeant in the Philadelphia Police Department.

4.      Defendant, William O'Leary ("Lieutenant O'Leary"), serves as a lieutenant in the Philadelphia Office of the Sheriff.

5.      Defendant, Frank T. Wallace, serves as a detective in the Philadelphia Police Department.

6.      Defendant, Lieutenant Long, serves as a lieutenant in the Philadelphia Police Department and is further identified by Badge No. 137. Lieutenant Long's full legal name is known to the other Defendants.

7.      Defendant, James Poulos ("Detective Poulos"), serves as a detective in the Philadelphia Police Department and is further identified by Badge No. 9260.

8. Defendant, Anthony Glaviano ("Detective Glaviano"), serves as detective in the Philadelphia Police Department and is further identified by Badge No. 796.

9. Defendant, Wanda Newsome (Badge No. 142), is the Commanding Officer of the Gun Permit Unit of the Philadelphia Police Department.

10. The foregoing Defendants are herein the "Individual Defendants."

**City of Philadelphia.**

11. Defendant, City of Philadelphia (the "City"), is a First Class City under Pennsylvania law and has adopted a Home Rule Charter.

12. The City of Philadelphia has a police department (the "Philadelphia Police Department").

13. Attached as Exhibit A are true and correct copies of Chapter 1 and Chapter 2 of Article III of the Philadelphia Home Rule Charter currently in force.

14. Attached as Exhibit B is a true and correct copy of Chapter 2 of Article V of the Philadelphia Home Rule Charter currently in force.

15. Neither the Mayor of the City of Philadelphia nor the Chief of the Philadelphia Police Department have authority to give orders to the Philadelphia District Attorney or the Philadelphia Sheriff.

16. The Philadelphia Police Department regularly takes custody of any individual arrested by the Philadelphia Office of the Sheriff.

17. The Philadelphia Police Department claim authority to enforce, and to assist

the Philadelphia Office of the Sheriff in the enforcement of, the statute of 18 Pa.C.S. § 913 in respect of the Philadelphia Court of Common Pleas and the Philadelphia Municipal Court.

**Philadelphia District Attorney's Office.**

18.     Defendant, Lawrence S. Krasner, is the incumbent Philadelphia District Attorney.

19.     Defendant, Philadelphia District Attorney's Office, is not created by the Philadelphia Home Rule Charter.

20.     The Philadelphia District Attorney is not an officer or employee of the City of Philadelphia.

21.     The Philadelphia District Attorney is not, solely by virtue of the office, an agent of the Mayor of the City of Philadelphia.

22.     The Philadelphia District Attorney's Office and its powers are created and regulated by statute, that is, 16 P.S. §§ 7701-42.

23.     Situated within the territorial limits of the City of Philadelphia, the Philadelphia District Attorney is responsible for the hiring, firing, training, and supervising of assistant district attorneys and the chief detective and assistant detectives.

24.     Attached as Exhibit C is a true and correct copy of Section 20-207 of The Philadelphia Code currently in force, together with the Preface and Table of Contents of the Twelfth Edition of The Philadelphia Code.

**Philadelphia Office of the Sheriff.**

25.     Defendant, Rochelle Bilal, is the incumbent Sheriff of Philadelphia.

26.     Defendant, Philadelphia Office of the Sheriff, is not created by the Philadelphia Home Rule Charter.

27.     The Philadelphia Sheriff is not an officer or employee of the City of Philadelphia.

28.     The Philadelphia Sheriff is not, solely by virtue of the office, an agent of the Mayor of the City of Philadelphia.

29.     The Philadelphia Office of the Sheriff and its powers are created and regulated by statute, that is, 16 P.S. §§ 1201-A to 1215-A and 16 P.S. §§ 7201 to 7204.

30.     Situated within the territorial limits of the City of Philadelphia, the Philadelphia Office of the Sheriff is responsible for hiring, firing, training, and supervising of deputy sheriffs which provide security to the Philadelphia Court of Common Pleas and to the Philadelphia Municipal Court.

31.     Philadelphia Sheriff Rochelle Bilal and her deputy sheriffs claim authority to make warrantless arrests in the City of Philadelphia of any individual who commits in their presence a felony or breach of the peace.

32.     Philadelphia Sheriff Rochelle Bilal and her deputy sheriffs claim authority to enforce the statute of 18 Pa.C.S. § 913 in respect of the Philadelphia Court of Common Pleas and the Philadelphia Municipal Court.

**Commonwealth Officers.**

33.     Michelle Henry, Attorney General of Pennsylvania, is a statewide elected officer as provided by the Pennsylvania Constitution in force and is part of the Executive Department of the Government of the Commonwealth of Pennsylvania. Pa. Const., art. IV, §§ 1, 4.1, 5, 17-18.

34.     Attorney General Michelle Henry is "the chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law." Pa. Const., art. IV, § 4.1.

35.     Pennsylvania State Police Commissioner Christopher L. Paris is an officer of the Government of the Commonwealth of Pennsylvania whose office is created by Sections 205 and 710 of The Administrative Code of 1929 (71 P.S. §§ 65, 250).

36.     Licensure under the Uniform Firearms Act is administered by the Pennsylvania State Police under the authority of Commissioner Christopher L. Paris, as specified in 18 Pa.C.S. § 6111.1, who may promulgate rules and regulations necessary to carry out such act, id. § 6111.5.

37.     Under the Pennsylvania Constitution and the Commonwealth Attorneys Act, the Attorney General is empowered to prosecute criminal offenses, inter alia, if requested by a district attorney, or upon a petition to a court of competent jurisdiction to supersede the district attorney, or upon a request by a court of competent jurisdiction to intervene, or upon indictments returned by an investigating grand jury obtained by

the Attorney General, or upon a referral by the Pennsylvania State Police arising out of its enforcement of the Uniform Firearms Act. 71 P.S. § 732-205(a).

38.     Pennsylvania Attorney General Michelle Henry and Pennsylvania State Police Commissioner Christopher L. Parisare herein denominated, "Commonwealth Officers."

**Philadelphia Lodge No. 5, Fraternal Order of Police.**

39.     Defendant, Philadelphia Lodge No. 5, Fraternal Order of Police ("FOP Lodge No. 5") is a Pennsylvania nonprofit corporation.

40.     FOP Lodge No. 5 is headquartered at 11630 Caroline Road, Philadelphia, PA 19154.

41.     FOP Lodge No. 5 is a labor union for employees of the Philadelphia Police Department and the Philadelphia Office of the Sheriff.

**Jurisdiction and Venue.**

42.     Plaintiffs bring this action under 42 U.S.C. § 1983 on behalf of themselves and on behalf of similarly-situated persons.

43.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, because the claims arise under the laws of the United States.

44.     Each Defendant is situated in, a citizen of, or found within this judicial district.

45.     Venue is properly brought in this judicial district pursuant to 28 U.S.C. §

1391(b)(1) and (b)(2) because Defendants are situated in this judicial district and because a substantial part of the acts, omissions, or both, occurred in this judicial district.

**Conspiracies — In General.**

46.    Boyer was formerly employed as a police officer in the Police Department of the City of Philadelphia and held that employment for approximately 13 years.

47.    During all relevant times, Boyer had a valid firearms certification under the Lethal Weapons Training Act, 22 <u>P.S.</u> § 41, <u>et seq.</u>, and continues to hold such certification.

48.    During all relevant times, Boyer was employed by a hotel for the services of protecting employees and guests, as well as moneys, valuables and other property of employees and guests and of the employer itself, and to internally investigate any complaints by patrons or guests against any employee of the hotel.

49.    Within the scope of Boyer's employment, he is required to conduct a citizen's arrest if any person commits a felony or breach of the peace in his presence.

50.    In 2013, Boyer created an online news service dedicated to the subject of police corruption, called *Serpico News*, and began holding himself out to the public as a journalist.

51.    During all relevant times, Boyer manages and periodically authors and publishes information on *Serpico News* which bears upon the conduct of the Police

Department of the City of Philadelphia, the Philadelphia Office of the Sheriff, FOP Lodge No. 5, or any of them.

52.     Boyer believes that his involvement with *Serpico News* has the economic effects of promoting his good will in the community.

53.     As a result of Boyer's work for *Serpico News*, FOP Lodge No. 5 regards Boyer as a political enemy. FOP Lodge No. 5 has requested of, and formed agreements with, the Defendants (or with any of them) to engage in a pattern of personal animus against Boyer and, while acting under color of state law, to repeatedly look for any pretext to violate his rights, including by way of assault, battery, and false imprisonment, to prevent his ability to obtain a license under the Private Detective Act and the Uniform Firearms Act and then look for any pretext to prosecute him those statutes, and to retaliate against him by reason of his involvement with *Serpico News*. Such conspiracy continues so long as Boyer continues to be found in the City of Philadelphia, to work in the City of Philadelphia, or both.

54.     Defendants, or any of them, regularly exclude Boyer from any press conference, or press room, where journalists are customarily permitted.

**2016 Revocation of Uniform Firearms Act License.**

55.     Prior to 2016, Boyer held a license to carry firearms in the City of Philadelphia under the Uniform Firearms Act (UFA), 18 Pa.C.S. § 6101 et seq.

56.     In 2016, the City of Philadelphia revoked Boyer's UFA license.

9

57.     On December 20, 2016, in the case of *In re* Andre Boyer, Appeal No. 28392, the License & Inspection Review Board for the City of Philadelphia held a Firearms Appeal Hearing and affirmed the City's decision to revoke Boyer's UFA license.

58.     A true and correct copy of a transcript of the aforementioned Firearms Appeal Hearing is attached as Exhibit D and incorporated by reference.

59.     During such Firearms Appeal Hearing, Deputy Sheriff Robert Lee testified that he investigated Boyer at the request of a representative of FOP Lodge 5.

60.     During such Firearms Appeal Hearing, Deputy Sheriff Robert Lee falsely stated under oath that Boyer admitted to wearing a firearm on a holster within a courtroom within City Hall in Philadelphia, where a civil trial was held for a suit against FOP Lodge No. 5.

61.     During such Firearms Appeal Hearing, Deputy Sheriff Robert Lee admitted under oath that he neither saw a firearm on Boyer's holster nor did he place Boyer under arrest for violating the statute of 18 Pa.C.S. § 6108.

62.     The Juanita Kidd Stout Center for Criminal Justice is located at 1301 Filbert Street, Philadelphia, PA 19107, and commonly known as the "Criminal Justice Center."

63.     During such Firearms Appeal Hearing, Deputy Sheriff Robert Lee testified that he instructed Boyer to go to the Criminal Justice Center and lock up any firearms before entering any courthouses in Philadelphia.

64.     During such Firearms Appeal Hearing, the License & Inspection Review Board for the City of Philadelphia did not permit Boyer to make a full and fair defense.

**Multiple Arrests and Criminal Prosecution.**

65.     On December 5, 2019, and while acting within the course and scope of his employment, Boyer went to the 35th Police District Headquarters of Philadelphia to surrender property on behalf of Boyer's employer.

66.     After delivering such property to the police, and while standing in the lobby of the 35th Police District Headquarters, Boyer began to record a video for Serpico News.

67.     Defendant O'Shaughnessy asserted that he saw Boyer carrying a holstered firearm in the lobby of the aforementioned Headquarters while acting on behalf of Boyer's employer.

68.     Defendant O'Shaughnessy, or someone acting on his behalf, sought and obtained a warrant to arrest Boyer on the basis of briefly viewing a firearm in a holster, without inquiring whether the item seen was in fact a firearm, whether it was operable as a weapon, or whether Boyer had a license or authorization to carry it.

69.     The next day, Boyer attended the Philadelphia Court of Common Pleas to testify before an investigating grand jury.

70.     While Boyer stepped out of the building to answer a phone call, Detective Long and Detective Wallace placed Boyer under arrest.

71.     Defendants Long and Wallace attempted to seize Boyer's cell phone while it

was still powered on; Boyer powered off that device.

72.     Boyer's cell phone was sent to Pennsylvania State Police for a forensic analysis.

73.     However, the judge presiding over the grand jury inquired, on information and belief, into the content of the phone.

74.     When he was taken to the 35th Police District Headquarters after arrest, Boyer was told he was arrested because Defendant O'Shaughnessy "saw a gun."

75.     A search warrant also issued for Boyer's residence based on the same affidavit by Defendant O'Shaughnessy, which warrant was executed by Detectives Glaviano and Poulos, who intrusively searched Boyer's private home and personal effects.

76.     On December 7, 2019, Detective Wallace made a charging decision and commenced a criminal action against Boyer, at Docket No. MC-51-CR-0031626-2019, for a single count of 18 Pa.C.S. § 6108 — carrying a firearm upon the public streets or upon any public property in a city of the first class.

77.     On information and belief, in the year 2020, the Philadelphia Police Department began circulating a photograph of Boyer's driver's license to all police officers for the purpose of encouraging them to retaliate against Boyer through pretextual arrests.

78.     On or about March 12, 2021, and while Boyer was acting within the scope of his employment, a member of the public, after being warned to leave the premises of

the hotel where Boyer is employed, returned without permission and engaged in disorderly conduct in Boyer's presence. Boyer effected a citizen's arrest and requested the Philadelphia Police Department to take the suspect into custody.

79.     Upon arrival at the hotel, Philadelphia police officers arrested Boyer and charged him with Simple Assault. The charges were dismissed without a conviction.

80.     On or about October 19, 2021, Boyer appeared to testify in a case at the Criminal Justice Center.

81.     When Boyer arrived at the Criminal Justice Center, Boyer was wearing a full uniform, with a bulletproof vest and a holstered firearm on his person.

82.     Upon entering the Criminal Justice Center, Boyer made a request to deputy sheriffs for permission to deposit his firearm and equipment in the facility's gun locker, and he was permitted to do so.

83.     After completion of his court testimony, and seeking to depart from the Criminal Justice Center, Boyer retrieved his firearm and equipment. At that moment, Lieutenant O'Leary questioned whether Boyer had a permit to carry that firearm. After Boyer responded that he had a Lethal Weapons Act certification, O'Leary seized Boyer's person and confiscated his firearm and equipment.

84.     On April 1, 2022, a Municipal Court judge dismissed the aforementioned charge under 18 Pa.C.S. § 6108 for lack of prosecution.

85.     On April 19, 2022 and at Docket No. MC-51-CR-0031626-2019, the

Commonwealth filed a Notice of Refiling of Criminal Complaint, resuming criminal prosecution based on the arrest from December 6, 2019.

86.     As a result of the Notice of Refiling of Criminal Complaint, Boyer was subjected to an arrest and confiscation of his firearm.

87.     On March 15, 2023, a Municipal Court judge held trial and entered judgment of acquittal for the charge of violating 18 Pa.C.S. § 6108, which terminated the criminal action in favor of Boyer.

88.     Throughout the aforementioned criminal proceedings, Boyer was represented by private counsel and incurred liability for reasonable attorneys' fees for such representation and litigation expenses reasonably related to his defense.

**Motions for Return of Property.**

89.     On September 30, 2021, Boyer filed in the Philadelphia Court of Common Pleas, at Docket No. CP-51-MD-0003928-2021, a motion for return of property and the court granted his request on April 25, 2022.

90.     On December 1, 2021, Boyer filed in the Philadelphia Court of Common Pleas, at Docket Nos. CP-51-MD-0003938-2021, CP-51-MD-0003939-2021, CP-51-MD-0003940-2021 and CP-51-MD-0003941-2021, motions for return of property and the court granted his request on April 25, 2022.

91.     On April 4, 2022, Boyer filed in the Philadelphia Court of Common Pleas, at Docket No. CP-51-MD-0001280-2022, a motion for a return of property and the court

granted his request on April 25, 2022.

92.     On May 31, 2022, Boyer filed in the Philadelphia Court of Common Pleas, at Docket Nos. CP-51-MD-0001787-2022 and CP-51-MD-0001788-2022, motions for return of property, inter alia, requesting that the Philadelphia Police Department return his firearm which was confiscated from Boyer's arrests.

93.     On November 21, 2022, the Philadelphia Court of Common Pleas ordered the Philadelphia Police Department to Comply and return Boyer's firearm and property.

94.     On March 21, 2023, Boyer filed in the Philadelphia Court of Common Pleas, at Docket Nos. CP-51-MD-0001035-2023 and CP-51-MD-0001037-2023, motions for return of property and the court granted relief on April 12, 2023.

95.     The firearm and property were only returned the week of May 8, 2023.

96.     In the aforementioned motions and proceedings, Boyer incurred financial loss, including financial loss for reasonable attorneys' fees where he was represented for some of the proceedings.

**2023 Denial of Application to Carry Firearms.**

97.     Attached as Exhibit E is a true and correct information packet prepared by the Philadelphia Police Department, which contains an Application for a Pennsylvania License to Carry Firearms (the "Application").

98.     The Application in Exhibit E was promulgated by the Pennsylvania State Police, 37 Pa. Code § 33.114.

99. The Application contains Item 28, "Reason for a License to Carry Firearms," and contains a check-the-box response for the following: "Self-Defense," "Employment," "Hunting/Fishing," "Target Shooting," "Gun Collecting," and "Other."

100. In 2023, Boyer completed and submitted an Application for a Pennsylvania License to Carry Firearms, using the same form as shown in Exhibit E.

101. One June 8, 2023, Lt. Wanda Newsome ("Lt. Newsome") signed a notice, a true and correct copy of such notice is shown in Exhibit F.

102. In such notice, Lt. Newsome informed Boyer that his Application for a Pennsylvania License to Carry Firearms was disapproved for the following reasons: "Applicant is an individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety," "Applicant is denied due to good cause," "YOUR CONDUCT on the following date(s) which MAY HAVE resulted in your arrest: DATE(S): 12/6/2019 – VUFA Arrest; 3/12/2021 – Simple Assault; 10/19/2021 – VUFA Arrest," and "Other: 9/7/2017—Common Pleas Court, City Affirmed the Decision of Revocation that occurred on 5/20/2016."

103. "VUFA" is an abbreviation for "Violation of Uniform Firearms Act."

104. Lt. Newsome, by disapproving Boyer's Application, did not rely upon any criminal conviction and acted on a discriminatory animus against Boyer, personally.

105. Lt. Newsome, by disapproving Boyer's Application, relied on allegations of

fact that were not proven before a jury in a court of law.

106.    Boyer has no criminal convictions which would disqualify him from possessing a valid license under the Uniform Firearms Act, 18 <u>Pa.C.S.</u> § 6109(e)(1).

107.    Boyer is not likely to act in a manner dangerous to public safety.

108.    Boyer has a sound mind and has never been committed to a mental institution.

109.    Boyer believes and avers that he is not disqualified from possessing a valid license under any of the provisions of the Uniform Firearms Act, inclusive of 18 <u>Pa.C.S.</u> § 6109(e)(1).

**Opposition to Private Detective License Applications.**

110.    On January 13, 2016, Boyer filed an application in the Philadelphia Court of Common Pleas, at Docket No. CP-51-MD-0000183-2016 (the "First Application"), for a license under The Private Detective Act of 1953, 22 <u>P.S.</u> § 11 et seq. (the "Private Detective Act" or "Act").

111.    At a hearing before the Philadelphia Court of Common Pleas, the Philadelphia District Attorney's Office, at the request and instigation of the Philadelphia Police Department, improperly asserted that Boyer was not qualified under the Private Detective Act because (1) the so-called "Patrolman Exception," where the Act has a requirement of three years of relevant experience, including employment as "a member of a city police department of a rank or grade higher than that of a patrolman," 22 <u>P.S.</u> § 14(a) and (2) while Boyer was employed by the Philadelphia Police

17

Department, he only held the rank of patrolman.

112.     In lodging the foregoing argument, and as an overt act in furtherance of the
foregoing conspiracies against Boyer, the Philadelphia District Attorney's Office
purposefully misstated the law and ignored controlling authority that the Act's
requirement of three years of relevant experience includes being "regularly employed
as a detective," 22 P.S. § 14(a), which embraces "a functional analysis" whether the
nature of the work rationally correlates to "the duties performed by a private detective"
as described in the Act,[1] and where the Patrolman Exception applies only if the "city

---

[1] Under 22 P.S. § 12:

> (a) "PRIVATE DETECTIVE BUSINESS" shall mean and include the business of
> private detective, private detective business, the business of investigator, or the
> business of watch, guard, or patrol agency.
>
> (b) "PRIVATE DETECTIVE BUSINESS" shall also mean and include, separately
> or collectively, the making, for hire, reward, or for any consideration whatsoever,
> of any investigation or investigations for the purpose of obtaining information with
> reference to any of the following matters, notwithstanding the fact that other
> functions and services may also be performed for fee, hire, or reward:
>
>> (1) Crime or wrongs done or threatened against the government of the United
>> States of America or any state or territory of the United States of America.
>>
>> (2) The identity, habits, conduct, movements, whereabouts, affiliations,
>> associations, transactions, reputation, or character, of any person, group of
>> persons, association, organization, society, other groups of persons, partnership,
>> or corporation.
>>
>> (3) The credibility of witnesses or other persons.
>>
>> (4) The whereabouts of missing persons.
>>
>> (5) The location or recovery of lost or stolen property.

patrolmen's duties are limited to the patrol function." *In re* Sentry Secur., Inc., 417

A.2d 190, 194 (Pa. 1980). Under the functional analysis test, a city police officer with

the rank of patrolman, but having the relevant experience, can qualify for a license. Id.

113.    Boyer presented evidence that, notwithstanding his rank as Patrolman, his work

experience in the Philadelphia Police Department included numerous years of

investigative work and training with 5 Square Tactical, which included undercover

and surveillance operations as to illegal trafficking in narcotics.

114.    Additionally, even as a Patrolman enforcing misdemeanor vices (e.g., Theft)

and Vehicle Code offenses (e.g., Driving Under the Influence), Boyer still performed

---

(6) The causes and origin of, or responsibility for, fires, or libels, or losses, or accidents, or damage, or injuries, to real or personal property.

(7) The affiliation, connection, or relation, of any person, partnership, or corporation, with any union, organization, society, or association, or with any official member or representative thereof.

(8) With reference to any person or persons seeking employment in the place of any person or persons who have quit work by reason of any strike.
(9) With reference to the conduct, honesty, efficiency, loyalty, or activities, of employes, agents, contractors and subcontractors.

(10) The securing of evidence to be used before any authorized investigating committee, board of award, board of arbitration, or in the trial of civil or criminal cases.

(11) The furnishing, for hire or reward, of watchmen, or guards, or private patrolmen, or other persons, to protect persons or property, or to prevent the theft or the unlawful taking of goods, wares and merchandise, or to prevent the misappropriation or concealment of goods, wares or merchandise, money, bonds, stocks, choses in action, notes, or other valuable documents, papers, and articles of value, or to procure the return thereof, or the performing of the service of such guard or other person, or any of said purposes.
* * *

the relevant work, as defined under the Act, of investigating "[c]rimes or wrongs done or threatened" against the Commonwealth of Pennsylvania, the "identity, habits, conduct, movements, whereabouts, affiliations, associations, transactions, reputation, or character" of any person or group of persons, the "credibility of witnesses or other persons," the "location or recovery of lost or stolen property," the "causes and origin of, or responsibility for, fires . . . or losses, or accidents, or damage, or injuries, to real or personal property," and the "securing of evidence to be used" in the trial of civil or criminal cases. 22 P.S. § 12(b)(1).

115.    Attached as Exhibit G is a true and correct copy of the City of Philadelphia's Job Class Specifications for "Police Officer 1," the entry-level grade for police officers associated with the rank of Patrolman, and which fairly describes the responsibilities associated with Boyer's employment with the Philadelphia Police Department.

116.    In the Philadelphia Police Department, police officers with the rank of Patrolman are required to secure evidence for the arrest of a person alleged to have committed any crime, to interview suspects, prisoners, complainants, and witnesses, and to testify in court, and are regularly assigned the following investigative matters:

(a)    Investigation into the cause of automobile accidents and related personal injury and property damage.

(b)    Investigation and prosecution for Driving under the Influence, including field sobriety tests.

(c)     Investigation of misdemeanor vice, such as gambling, prostitution, illegal sale of liquors, illicit drugs, and other vice activities.

(d)     Evidence preservation and chain-of-custody requirements.

(e)     Searching and impounding of vehicles for suspected use in criminal activity.

(f)     Investigation and de-escalation of domestic violence and juvenile delinquency.

117.    Police officers holding the rank of Patrolman have, like police officers holding a higher rank, graduated with the same training from an accredited police academy.

118.    Based on the foregoing, the Philadelphia District Attorney's Office had no good faith basis to oppose Andre Boyer's First Application for lack of experience and training, and did so for the purpose of discrimination, as retaliation for his First Amendment rights associated with Serpico News, and as an overt act in furtherance of the foregoing conspiracies against Boyer.

119.    By misstating the law and not disclosing the controlling authority of *In re Sentry Secur., Inc.*, 417 A.2d 190 (Pa. 1980), the Philadelphia District Attorney's Office successfully induced the assigned judge on the Philadelphia Court of Common Pleas, who denied Boyer's application on July 15, 2016 on the sole basis that he only held the rank of Patrolman while employed in the Philadelphia Police Department.

120.    On October 3, 2016, Boyer filed a second application in the Philadelphia Court

of Common Pleas, at Docket No. CP-51-MD-0005279-2016 (the "Second Application"), for a license under the Private Detective Act.

121.   In the proceedings on the Second Application, Boyer intended to provide greater factual support from his relevant experiences with investigative work for the Philadelphia Police Department, including his training with 5 Square Tactical.

122.   On the Second Application, the Philadelphia District Attorney's Office, again, improperly ignored the controlling authority of *In re* Sentry Secur., Inc., 417 A.2d 190 (Pa. 1980) and argued to the Philadelphia Court of Common Pleas that the Second Application was barred by collateral estoppel.

123.   Based on the foregoing, the Philadelphia District Attorney's Office successfully induced the assigned judge on the Philadelphia Court of Common Pleas, who denied Boyer's Second Application on January 10, 2017 on the basis of collateral estoppel.

124.   Boyer filed an appeal from the denial of the Second Application but, due to his procedural default in guarding the certified record on appeal, the Superior Court affirmed the judgment in an unpublished memorandum. *In re* Andre Boyer, No. 935 EDA 2017 (Pa.Super. Sept. 10, 2018).

125.   Based on the foregoing, as applied to licensure applications under the Private Detective Act, Boyer believes and avers that the Philadelphia District Attorney's Office continually misdirects, and will misdirect in future, the judicial focus onto the

"rank or grade" of Patrolman rather than the relevant, qualifying experience regularly gained by persons who hold that rank in the Philadelphia Police Department.

126.    Based on the foregoing, Boyer believes and avers that the police officers employed in a city with the rank of Patrolman are similarly situated as those with a higher rank, and the "Patrolman Exception" in 22 P.S. § 14(a) violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

127.    Under the Private Detective Act, the district attorneys claim authority to petition to revoke a license at any time on the basis that it "had been improperly granted," *In re* Sentry Secur., Inc., 417 A.2d 190, 191 (Pa. 1980), but no corresponding right is given to the applicant to renew an application on the basis that it was improperly denied, which violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

128.    Under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, the doctrines of res judicata and collateral estoppel, as applied to burdening a person's fundamental right to follow a chosen profession that is subject to licensure, cannot extend beyond the term of the license, which is two-years under the Private Detective Act.

129.    Based on the foregoing, Boyer was qualified for a license under the Private Detective Act and Boyer was deprived of his fundamental right to follow a chosen profession free from unreasonable governmental interference, and, as shown below,

Boyer and his LLC have been unfairly exposed to liability under the Act for his referral business.

130.     In the Philadelphia Court of Common Pleas, Boyer intends to file a new application for a license under the Private Detective Act but is chilled by a credible threat whether the Philadelphia District Attorney's Office will, again, oppose on the grounds of the Patrolman Exception, the doctrine of Collateral Estoppel, or both.

131.     On information and belief, the Philadelphia District Attorney's Office has a history of discriminatory enforcement of licensure under the Private Detective Act, including non-opposition to licensure applications of political insiders who are disqualified.

**Subsequent Employment and Referral Business.**

132.     Since approximately 2013, Boyer has been employed as a security guard and internal investigator for a hotel in the City of Philadelphia and has continuously held such employment.

133.     However, Boyer recently learned that he is under an objective threat of prosecution under the Private Detective Act because the licensed activity, "private detective business," includes "the performing of the service of such guard" for the protection of persons and property. 22 P.S. § 12(b).

134.     Boyer believes, and avers, that application of the Act to his employment as a security guard violates the Due Process and Equal Protection clauses of the Fourteenth

Amendment of the U.S. Constitution because the facts and circumstances are similarity situated to a statutory exemption, namely, "any person regularly employed as special agent, detective or investigator exclusively by one employer in connection with the affairs of that employer only," 22 P.S. § 25.

135.    In 2019, Boyer originated a new business model and organized a Pennsylvania limited liability company, called Pennsylvania S.I.T.E.S. Agents, LLC ("the LLC"). Boyer is the sole member of the LLC.

136.    Under Boyer's business model, the LLC operates a website that advertises private detective services, but any leads for investigative work generated from the LLC are referred out to licensed private detectives under a fee-splitting arrangement where the licensed private detective solely performs the requested service without any control by Boyer. Also, any leads for bodyguard services generated from the LLC are performed by Boyer, himself.

137.    However, the LLC is under an objective threat of prosecution under the Private Detective Act because: (1) whether the LLC advertises its services "to be that of detective, or of a detective agency, or investigator, or watch, guard or patrol agency," 22 P.S. § 13(a), and (2) whether every "group of persons" must be licensed, even if one of the parties is already licensed, 22 P.S. § 14.

138.    It is believed, and averred, that the foregoing provisions violate the rights of speech and association of Boyer and Pennsylvania S.I.T.E.S. Agents, LLC under the

First Amendment of the U.S. Constitution.

139.    Boyer, who is chilled and appalled by the aforementioned provisions of the Private Detective Act, has formed an agreement with another licensee under the Private Detective Act, where the latter assumed control of the website for Pennsylvania S.I.T.E.S. Agents, LLC, and has employed Boyer. Boyer has ceased all operations of his website during the pendency of this suit, but desires to resume operations.

140.    Under the Private Detective Act, a license-holder must submit two fingerprint cards for each and every employee upon hire, but the Act does not contain any exception for an employee whose fingerprints are already on file with the Pennsylvania State Police.

141.    Boyer, by reason of his former employment as a police officer of the Philadelphia Police, has already submitted his fingerprints to, and the same are on file with, the Pennsylvania State Police.

142.    The Private Detective Act does not contain any provision where a district attorney must submit a cease-and-desist order as a condition to commencing any criminal prosecution, which is seen in other licensing, commercial, and public welfare statutes. E.g., 3 P.S. § 459-207(A.3) (unlicensed kennel operations under the Dog Law); 70 P.S. § 1-606 (Pennsylvania Securities Act of 1972). Such is a violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

143.    It is believed, and averred, that the foregoing provisions of the Act are unduly

burdensome and not rationally related to a legitimate governmental interest, where failing to exempt employees whose fingerprints were previously submitted to the Pennsylvania State Police.

**Defendants Violated and Intend to Continue Violating Plaintiffs' Rights.**

144.    Within the City of Philadelphia and for self-defense, Boyer desires to openly carry a firearm outside of his home, whether as part of his occupation or not, and his right to do so under the Second Amendment of the U.S. Constitution has been infringed by and, on a continuing basis, chilled by the Defendants or by any of them.

145.    Within the Commonwealth of Pennsylvania and for self-defense, Boyer desires to regularly carry a firearm in any vehicle under circumstances where none of the exceptions in 18 Pa.C.S. § 6106(a)(2) & (b) exist; and his right to do so under the Second Amendment of the U.S. Constitution has been infringed by and, on a continuing basis, chilled by the Defendants or by any of them.

146.    Within the Commonwealth of Pennsylvania and for self-defense, Boyer desires to regularly carry a firearm concealed on or about his person, without a license, and while outside his place of abode and fixed place of business, or both; and his right to do so under the Second Amendment of the U.S. Constitution has been infringed by and, on a continuing basis, chilled by the Defendants or by any of them.

147.    Contrary to the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, the Uniform Firearms Act (18 Pa.C.S. § 6101 et seq.) imposes a prior

restraint on carrying concealed a firearm on or about one's person, namely, licensure, which is an invidious system of individual discrimination through administrative adjudications outside of a court of law and without a jury and which invites subsequent judicial deference to administrative factfinding.

148.    Under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, deprivations of core private rights, including constitutional rights, cannot be adjudicated within an administrative proceeding, but by and through a court of law before a jury. Axon Enters. v. Fed. Trade Comm'n, ___ U.S. ___, 143 S. Ct. 890, 906 (2023) (Thomas, *J.*, concurring, joined by Gorsuch, *J.*).

149.    The United States of America has a long-standing history of racial discrimination against persons of color through licensing statutes, of which Boyer is a member of that class as an African American male.

150.    The text of the Second Amendment of the U.S. Constitution draws no distinction between carrying a firearm openly or concealed, or within or without a city, or keeping a firearm within one's home or vehicle. In Noah Webster's *American Dictionary of the English Language* (1828), the word "bear" means: "To wear," including "*to bear arms in a coat*."

151.    At the time of ratification of the Fourteenth Amendment of the U.S. Constitution: (1) there was no consensus among the States in categorically prohibiting the right to carry a firearm concealed, or outside of the home, without a license and

(2) before and after the passage of the Thirteenth Amendment of the U.S. Constitution, the several States passed licensing statutes which used licensure as a pretext for controlling the freedom of and infringing upon the fundamental rights of African Americans, including the right to bear arms. After the passage of the Thirteenth Amendment, many of these licensing statutes were known as the "Black Codes."

152.    Where States had then prohibited the carrying, or the concealed carrying, of firearms without a license, it was socially understood that even race-neutral laws were to be enforceable against African Americans only. As stated by Mr. Justice Rivers Henderson Buford of the Supreme Court of Florida, in regards to a Florida statute which prohibited the carrying of a firearm without a license:

> I know something of the history of this legislation. The original Act of 1893 was passed when there was a great influx of negro laborers in this State drawn here for the purpose of working in turpentine and lumber camps. The same condition existed when the Act was amended in 1901 and the Act was passed for the purpose of disarming the negro laborers and to thereby reduce the unlawful homicides that were prevent in turpentine and saw-mill camps and to give the white citizens in sparsely settled areas a better feeling of security. The statute was never intended to be applied to the white population and in practice has never been so applied. We have no statistics available, but it is a safe guess to assume that more than 80% of white men living in the rural sections of Florida have violated this statute. It is also a safe guess to say that not more than 5% of the men in Florida who own pistols and repeating rifles have ever applied to the Board of County Commissioners for a permit to have the same in their possession and there has never been, within my knowledge, any effort to enforce the provisions of this statute as to white people, because it has been generally concede to be in contravention to the Constitution and non-enforceable if contested.

<u>Watson v. State</u>, 4 So. 2d 700, 703 (Fla. 1941) (Buford, *J.* concurring).

153.    The Uniform Firearms Act was borrowed from the Model Act by the United States Revolver Association, which pursued licensing under an erroneous premise that the Second Amendment of the U.S. Constitution did not protect the carrying of firearms outside of the home:

> In other words, law-abiding citizens should be perfectly free to obtain and keep in their homes pistols or revolvers, but no persons other than those authorized by law, should be allowed to carry such weapons abroad without express permission granted after necessity has been shown.

154.    *The Argument for a Uniform Revolver Law*, *in* Handbook of the National Conference of Commissioners on Uniform State Laws 719 (1924).

155.    From its inception by the National Conference of Commissioners on Uniform State Laws, the Uniform Firearms Act of 1926 followed an unconstitutional premise that a license to carry a firearm concealed could be had only "if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol or revolver, and that he is a suitable person to be so licensed." A Uniform Act to Regulate the Sale and Possession of Firearms § 6 (1926), *in* HANDBOOK OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS 576-77 (1926).

156.    In context of regulating the concealed carry of a firearm, the interests of the Government of the Commonwealth of Pennsylvania are constitutionally valid through

laws of general applicability, inter alia, (1) prohibiting a person from possessing a firearm as a result of certain criminal convictions which were adjudicated in a court of law, see, e.g., 18 Pa.C.S. § 6105 (criminal conviction); and (2) requiring certain firearms sellers to perform required screenings on the purchaser before completing a sale, 18 Pa.C.S. § 6111.

157.    Within the City of Philadelphia and for self-defense, Boyer desires to openly carry a firearm while traveling to and from a courthouse or government building, intending to surrender possession of his firearm to government authority while entering a courthouse or government building and retrieving the same upon exiting a courthouse or government building, and his right to do so under the Second Amendment of the U.S. Constitution has been infringed by and, on a continuing basis, chilled by the Defendants or by any of them.

158.    Where possessing a firearms certification under the Lethal Weapons Training Act (22 P.S. § 41 et seq.), Boyer and other persons like him are similarly-situated to other persons exempt from licensure under the Uniform Firearms Act, but the Defendants, or any of them, have prosecuted Boyer and persons like him and intend to continue such prosecutions by reason of not possessing a license to carry under the Uniform Firearms Act.

159.    Based on the foregoing averments taken in their entirety, Defendants have violated and intend to continue violating Boyer's constitutional rights to keep and bear

arms under the Second Amendment of the U.S. Constitution, made applicable to the States under the Fourteenth Amendment. N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111, 2143 (2022); McDonald v. City of Chicago, 561 U.S. 742, 791 (2010); District of Columbia v. Heller, 554 U.S. 570, 635 (2008).

160.    The Defendants, or any of them, have enforced Pennsylvania's Uniform Firearms Act, in whole or in part, with intentional or reckless disregard of the U.S. Supreme Court's decisions in N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111, 2143 (2022), McDonald v. City of Chicago, 561 U.S. 742, 791 (2010) and District of Columbia v. Heller, 554 U.S. 570, 635 (2008) and intend to continue enforcing such statute with intentional or reckless disregard for those decisions.

161.    The Defendants, or any of them, have violated and intend to continue violating the Due Process and Equal Protection clauses of the Fourteenth Amendment through a discriminatory enforcement of the Uniform Firearms Act as applied to persons who are duly-licensed under the Private Detective Act of 1953 (22 P.S. § 11 et seq.) and possess a firearms certification under the Lethal Weapon Training Act (22 P.S. § 41 et seq.), such persons being similarly-situated to other persons exempt from licensure under the Uniform Firearms Act.

162.    Based on the foregoing averments taken in their entirety, Defendants have repeatedly violated Plaintiffs' rights under the First and Second amendments of the U.S. Constitution through retaliatory actions and intend to continue such retaliatory

actions against him.

163.    The City of Philadelphia, the Philadelphia District Attorney's Office, Philadelphia District Attorney Lawrence S. Krasner, the Philadelphia Office of the Sheriff, Philadelphia Sheriff Rochelle Bilal, and the Commonwealth Officers have an official policy for committing, or recklessly disregarding, or ratifying or acquiescing into, the foregoing constitutional violations.

164.    Defendants, or any of them, have formed one or more agreements and have committed substantial acts in furtherance of an object of violating the foregoing constitutional rights of Boyer and to inflict tortious injury on Boyer.

165.    The Individual Defendants, or any of them, have acted with malice towards, or with a reckless or callous disregard of, or indifference to, the rights of Plaintiffs.

166.    At all material times, Defendants acted under color of state law.

167.    Based on the foregoing averments taken in their entirety, Defendants, or any of them, have violated and intend to continue violating the aforementioned constitutional rights of Plaintiffs.

## COUNT 1:  DECLARATORY AND INJUNCTIVE RELIEF — UNIFORM FIREARMS ACT (42 U.S.C. § 1983)

168.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

169.    Based on the foregoing averments in their totality, the Uniform Firearms Act

(18 <u>Pa.C.S.</u> § 6101 <u>et seq.</u>) is unconstitutional, in whole or in part, and whether on its face or as applied to the facts and circumstances of this case:

(a)     Under 18 <u>Pa.C.S.</u> § 6108, in respect of carrying a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class while unlicensed.

(b)     Under 18 <u>Pa.C.S.</u> § 6106(a), in respect of criminalizing the open carry of a firearm in any vehicle while unlicensed.

(c)     In respect of imposing a prior restraint on carrying concealed a firearm on or about one's person, namely, licensure, which is an invidious system of individual discrimination through administrative adjudications outside of a court of law and without a jury and which invites judicial deference to administrative factfinding.

(d)     In respect of permitting the licensing authority to deny, or revoke, an application for a license to carry firearms based on allegations that are not first adjudicated within a court of law before a jury.

(e)     In respect of excluding persons from licensure on grounds other than a criminal conviction or mental health adjudication.

(f)     In respect of excluding persons who have a firearms certification under the Lethal Weapons Training Act (22 P.S. § 41 et seq.) from the scope of exclusion from licensure, where such persons are similarly-situated as other persons exempt

from licensure.

170.    Relief under 42 U.S.C. § 1983 in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against the City of Philadelphia, the Philadelphia District Attorney's Office, Philadelphia District Attorney Lawrence S. Krasner, the Philadelphia Office of the Sheriff, Philadelphia Sheriff Rochelle Bilal, Pennsylvania Attorney General Michelle Henry, and Pennsylvania State Police Commissioner Christopher L. Paris, specifically, as follows:

(A)    Declare unconstitutional, in whole or in part, and whether on its face or as applied to the facts of this case, the Uniform Firearms Act (18 Pa.C.S. § 6101 et seq.) on the following grounds:

(1)    Under 18 Pa.C.S. § 6108, in respect of carrying a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class.

(2)    Under 18 Pa.C.S. § 6106(a), in respect of criminalizing the open carry of a firearm in any vehicle while unlicensed.

(3)    In respect of imposing a prior restraint on carrying concealed a firearm on or about one's person, namely, licensure, which is an invidious system of individual discrimination through administrative adjudications outside of a court of law and without a jury and which invites judicial deference to administrative

35

factfinding.

(4)     In respect of permitting the licensing authority to deny, or revoke, an application for a license to carry firearms based on allegations that are not adjudicated within a court of law before a jury.

(5)     In respect of excluding persons from licensure on grounds other than a criminal conviction or mental health adjudication.

(6)     In respect of excluding persons who have a firearms certification under the Lethal Weapons Training Act (22 P.S. § 41 et seq.) from the scope of exclusion from licensure, where such persons are similarly-situated as other persons exempt from licensure.

(B)     Permanently enjoin such Defendants from enforcing under any of the foregoing circumstances.

(C)     Award costs and reasonable attorneys' fees.

(D)     Award such other relief as the Court deems necessary, just, or appropriate.

### COUNT 2: DECLARATORY AND INJUNCTIVE RELIEF — UNIFORM FIREARMS ACT (42 U.S.C. § 1983)

171.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

172.    Based on the foregoing averments in their totality, the uniform Application for a License to Carry Firearms, as promulgated by the Pennsylvania State Police, is

unconstitutional as applied to inquiring into an applicant's reasons for seeking a license to carry firearms.

173.     Relief under 42 U.S.C. § 1983 in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against Pennsylvania State Police Commissioner Christopher L. Paris, specifically, declaring unconstitutional the Application for a License to Carry Firearms promulgated under Pennsylvania's Uniform Firearms Act to the extent of inquiring into an applicant's reasons for seeking a license to carry firearms; and permanently enjoining such Defendants from enforcing the same under those facts and circumstances; together with costs, reasonable attorneys' fees, and such other relief as the Court deems necessary, just, or appropriate.

## COUNT 3: DECLARATORY AND INJUNCTIVE RELIEF — CRIMES CODE (42 U.S.C. § 1983)

174.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

175.    Based on the foregoing averments in their totality, the statute of 18 Pa.C.S. § 913, is unconstitutional, in whole or in part, and whether on its face or as applied to the facts and circumstance of this case: Discriminatory enforcement and refusal to make available, at or within the building containing a court facility, lockers or similar facilities at no charge or cost for the temporary checking of firearms by persons who

openly carry a firearm and outside the scope of 18 Pa.C.S. §§ 6106(b) and 6109.

176. Relief under 42 U.S.C. § 1983 in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against City of Philadelphia, Philadelphia District Attorney's Office, Philadelphia District Attorney Lawrence S. Krasner, Philadelphia Office of the Sheriff and Philadelphia Sheriff Rochelle Bilal, specifically, declaring unconstitutional the discriminatory enforcement and refusal to make available, at or within the building containing a court facility, lockers or similar facilities at no charge or cost for the temporary checking of firearms by persons who openly carry a firearm and outside the scope of 18 Pa.C.S. §§ 6106(b) and 6109; and permanently enjoining such Defendants from enforcing the same under those facts and circumstances; together with costs, reasonable attorneys' fees, and such other relief as the Court deems necessary, just, or appropriate.

## COUNT 4: DECLARATORY AND INJUNCTIVE RELIEF — PRIVATE DETECTIVE ACT (42 U.S.C. § 1983)

177. The foregoing paragraphs are incorporated by reference as though fully set forth herein.

178. Based on the foregoing averments in their totality, The Private Detective Act of 1953 (22 P.S. § 11 et seq.) is unconstitutional, in whole or in part, and whether on its face or as applied to the facts and circumstances of this case:

(a)     On the face of 22 P.S. § 14(a), in respect of excluding from the licensure eligibility of the service of police officers employed by a city and having the rank of patrolman.

(b)     Permitting a denial, revocation, suspension, or non-renewal of a license without a jury.

(c)     On its face or as enforced, permitting district attorneys a right to petition the Court of Common Pleas to revoke a license on the basis that it was improperly granted without an equal, corresponding right of the applicant to petition the Court of Common Pleas on the basis that an application was improperly denied.

(d)     On its face or as enforced, application of the doctrine of res judicata, or collateral estoppel, in excess of two years, i.e., the term of a license.

(e)     The enforcement of licensure on a former member of law enforcement hired as a security guard employee, which is similarly-situated to the statutory exemption of "any person regularly employed as special agent, detective or investigator exclusively by one employer in connection with the affairs of that employer only," 22 P.S. § 25.

(f)     The enforcement of the statutory requirement for employees of a license-holder to provide their fingerprints to the Court of Common Pleas, to be forwarded to the Pennsylvania State Police, in circumstances where their fingerprints are already on file with the Pennsylvania State Police.

179. Relief under 42 U.S.C. § 1983 in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against the Philadelphia District Attorney's Office and Philadelphia District Attorney Lawrence S. Krasner, specifically, as follows:

(A)    Declare unconstitutional, in whole or in part and whether on its face or as applied to the facts of this case, The Private Detective Act of 1953 (22 P.S. § 11 et seq.) on the following grounds:

(1)    On the face of 22 P.S. § 14(a), in respect of excluding from the licensure eligibility of the service of police officers employed by a city and having the rank of patrolman.

(2)    Permitting a denial, revocation, suspension, or non-renewal of a license without a jury.

(3)    On its face or as enforced, permitting district attorneys a right to petition the Court of Common Pleas to revoke a license on the basis that it was improperly granted without an equal, corresponding right of the applicant to petition the Court of Common Pleas on the basis that an application was improperly denied.

(4)    On its face or as enforced, application of the doctrine of res judicata, or collateral estoppel, in excess of two years, i.e., the term of a license.

(5)    The enforcement of licensure on a former member of law enforcement

hired as a security guard employee, which is similarly-situated to the statutory exemption of "any person regularly employed as special agent, detective or investigator exclusively by one employer in connection with the affairs of that employer only," 22 P.S. § 25.

(6)     The enforcement of the statutory requirement for employees of a license-holder to provide their fingerprints to the Court of Common Pleas, to be forwarded to the Pennsylvania State Police, in circumstances where their fingerprints are already on file with the Pennsylvania State Police.

(B)     Permanently enjoin such Defendants from enforcing under any of the foregoing circumstances.

(C)     Award costs and reasonable attorneys' fees.

(D)     Award such other relief as the Court deems necessary, just, or appropriate.

## COUNT 5: DECLARATORY AND INJUNCTIVE RELIEF — PRIVATE DETECTIVE ACT (42 U.S.C. § 1983)

180.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

181.    Based on the foregoing averments in their totality, The Private Detective Act of 1953 (22 P.S. § 11 et seq.) is unconstitutional, in whole or in part, and whether on its face or as applied to the facts and circumstances of this case:

(a)     The Private Detective Act prohibits, for compensation, the advertising of

private detective services under a referral system where leads from the advertising agency are referred to independent contractors who are license-holders.

(b) The Private Detective Act imposes licensure on a "group of persons," outside of any corporation, partnership, or association, by reason of acting under a referral system where leads from advertising are referred to independent contractors who are license-holders.

(c) The Private Detective Act defines the licensed activity, "private detective business," under the presumption of non-exhaustive "include," but does not contain any provision where a district attorney must submit a cease-and-desist order as a condition to commencing any criminal prosecution, which is seen in other licensing, commercial, and public welfare statutes.

182. Relief under 42 U.S.C. § 1983 in favor of Andre Boyer and Pennsylvania S.I.T.E.S. Agents, LLC are warranted.

**WHEREFORE**, Andre Boyer and Pennsylvania S.I.T.E.S. Agents, LLC respectfully request this Honorable Court render judgment and grant relief in their favor and against the Philadelphia District Attorney's Office and Philadelphia District Attorney Lawrence S. Krasner, specifically, as follows:

(A) Declare unconstitutional, in whole or in part, and whether on its face or as applied to the facts of this case, The Private Detective Act of 1953 (22 P.S. § 11 et seq.) on the following grounds:

(1)     The Private Detective Act prohibits, for compensation, the advertising of private detective services under a referral system where leads from the advertising agency are referred to independent contractors who are license-holders.

(2)     The Private Detective Act imposes licensure on a "group of persons," outside of any corporation, partnership, or association, by reason of acting under a referral system where leads from advertising are referred to independent contractors who are license-holders.

(3)     The Private Detective Act defines the licensed activity, "private detective business," under the presumption of non-exhaustive "include," but does not contain any provision where a district attorney must submit a cease-and-desist order as a condition to commencing any criminal prosecution, which is seen in other licensing, commercial, and public welfare statutes.

(B)     Permanently enjoin such Defendants from enforcing under any of the foregoing circumstances.

(C)     Award costs and reasonable attorneys' fees.

(D)     Award such other relief as the Court deems necessary, just, or appropriate.

## COUNT 6:  DECLARATORY RELIEF (PENNSYLVANIA LAW)

183.   The foregoing paragraphs are incorporated by reference as if set forth at length herein.

184.   Based on the foregoing averments in their totality, the Court should declare,

under Pennsylvania law which follows Restatement (Second) of Judgments § 28, that Plaintiffs are not collaterally estopped from applying for a license under the Private Detective Act based on Boyer's experience as a police officer with the Philadelphia Police Department.

185. Declaratory relief under Pennsylvania law and in favor of Plaintiffs are warranted.

**WHEREFORE**, Andre Boyer and Pennsylvania S.I.T.E.S. Agents, LLC respectfully request this Honorable Court render judgment and grant relief in their favor and against the Philadelphia District Attorney's Office and Philadelphia District Attorney Lawrence S. Krasner, specifically, as follows: declare that Plaintiffs are not collaterally estopped from applying for a license under the Private Detective Act based on Boyer's experience as a police officer with the Philadelphia Police Department, together with costs and such other relief as the Court deems necessary, just, or appropriate.

### COUNT 7: FIRST AMENDMENT RETALIATION
### (42 U.S.C § 1983)

186. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

187. Based on the foregoing, Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos,

44

Anthony Glaviano, and Wanda Newsome, or any of them, acted in retaliation of Boyer's viewpoints and in violation of his rights under the First Amendment of the U.S. Constitution, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

188.    Relief under 42 U.S.C. § 1983 in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against the Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome for damages (and punitive damages as applied to Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT 8: SECOND AMENDMENT VIOLATION
### (42 U.S.C § 1983)

189.    The foregoing paragraphs are incorporated by reference as if set forth at length herein.

190.    Based on the foregoing, the actions or omissions of Defendants City of

Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome, or any of them, or any of their failure to intervene, violated Boyer's rights under the Second Amendment of the U.S. Constitution, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

191. Relief under 42 U.S.C. § 1983 in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against the Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome for damages (and punitive damages as applied to Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT 9: FOURTH AMENDMENT VIOLATION
### (42 U.S.C. § 1983)

192. The foregoing paragraphs are incorporated by reference as though fully set forth

herein.

193.   Based on the foregoing, Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano unlawfully seized and continued to seize Boyer's firearm, in violation of the Fourth Amendment of the U.S. Constitution, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

194.   Relief under 42 U.S.C. § 1983 in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against the Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano for damages (and punitive damages as applied to Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano, and Wanda Newsome), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT 10: MALICIOUS PROSECUTION
### (42 U.S.C § 1983)

195.   The foregoing paragraphs are incorporated by reference as if set forth at length

herein.

196.   Based on the foregoing, Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano initiated criminal proceedings which ended in Boyer's favor, and such proceedings were initiated without probable cause; the Defendants, or any of them, acted maliciously or for a purpose other than bringing Boyer to Justice; and Boyer suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

197.   Based on the foregoing, Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

198.    Relief under 42 U.S.C. § 1983 in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against the Defendants City of Philadelphia, Philadelphia Office of the Sheriff, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, Anthony Glaviano for damages (and punitive damages as applied to Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano), as well as for costs and attorney's fees, and for such other

relief as this Honorable Court may deem just and necessary.

## COUNT 11: MALICIOUS PROSECUTION
## (PENNSYLVANIA LAW)

199. The foregoing paragraphs are incorporated by reference as if set forth at length herein.

200. Based on the foregoing, and under Pennsylvania law, the Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano instituted criminal proceedings against Boyer, without probable cause, with malice, and such proceedings terminated in favor of Boyer, or any of those defendants conspired to do the same and acted in furtherance of such conspiracy, or both.

201. Relief in the nature of damages under Pennsylvania law and in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against the Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano for damages (including punitive damages), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT 12: FAILURE TO TRAIN, DISCIPLINE, AND SUPERVISE
## (42 U.S.C. § 1983)

202.   The foregoing paragraphs are incorporated by reference as if set forth at length herein.

203.   The City of Philadelphia, the Philadelphia District Attorney's Office, and the Philadelphia Office of the Sheriff, have failed to train, discipline, or supervise their respective officers, employees or agents under circumstances evidencing a reckless indifference to the rights of others.

204.   Relief under 42 U.S.C. § 1983 in favor of Andre Boyer is warranted.

   **WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against the City of Philadelphia, Philadelphia District Attorney's Office, and Philadelphia Office of the Sheriff for damages, including punitive damages, as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT 13: TRESPASS TO CHATTELS AND ITS CONSPIRACY
## (PENNSYLVANIA LAW)

205.   The foregoing paragraphs are incorporated by reference as if set forth at length herein.

206.   A firearm, ammunition, and cell phone were property of Boyer.

207.   By seizing and detaining Boyer's firearm, ammunition, and cell phone, Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus

O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano, or any of them, interfered with Boyer's continued possession, ownership, and enjoyment of his property.

208. The foregoing Defendants intended to interfere in Boyer's ownership, possession, and enjoyment of his property by seizing and detaining it.

209. As the seizure was not authorized by a constitutional statute, the foregoing Defendants were without privilege to interfere in Boyer's continued possession, ownership, and enjoyment of his property.

210. Based on the foregoing, the foregoing Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

211. Relief in the nature of damages under Pennsylvania law and in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against the Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano, or any of them, for damages (including punitive damages), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT 14: ASSAULT AND BATTERY AND ITS CONSPIRACY
## (PENNSYLVANIA LAW)

212.   The foregoing paragraphs are incorporated by reference as if set forth at length herein.

213.   Based on the foregoing, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano, or any of them, are liable to Boyer for the torts of assault and battery under Pennsylvania law, having placed Boyer in apprehension of harmful or offensive contact and did, in fact, engage in harmful or offensive contact.

214.   Based on the foregoing, such Defendants were not privileged as a matter of law.

215.   Based on the foregoing, such Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

216.   Relief in the nature of damages under Pennsylvania law and in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano for damages (including punitive damages), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

## COUNT 15: FALSE IMPRISONMENT AND ITS CONSPIRACY
## (PENNSYLVANIA LAW)

217.   The foregoing paragraphs are incorporated by reference as if set forth at length herein.

218.   Based on the foregoing, Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano, or any of them, are liable to Boyer for the tort of false imprisonment under Pennsylvania law, having caused detentions of Boyer and such detentions were unlawful.

219.   Based on the foregoing, the foregoing Defendants were not privileged as a matter of law.

220.   Based on the foregoing, the foregoing Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

221.   Relief in the nature of damages under Pennsylvania law and in favor of Andre Boyer is warranted.

**WHEREFORE**, Andre Boyer respectfully requests this Honorable Court render judgment and grant relief in his favor and against Defendants Philadelphia Lodge No. 5, Fraternal Order of Police, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Detective Long, James Poulos, and Anthony Glaviano for damages (including punitive damages), as well as for costs and attorney's fees, and for such other relief as this Honorable Court may deem just and necessary.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: August 21, 2023          By:   /s/ Joel A. Ready
                                      Joel A. Ready, Esquire
                                      Attorney I.D. #321966
                                      8500 Allentown Pike, Suite 3
                                      Blandon, PA 19510
                                      (610) 926-7875
                                      joel@cornerstonelaw.us
                                      *Counsel for Plaintiffs*