# EXHIBIT 1

Case 5:23-cv-02885-JLS Document 21-1 Filed 11/16/23 Page 2 of 11

Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)
107 Fed. R. Evid. Serv. 430

2018 WL 4252378
United States District Court, E.D. Pennsylvania.

Andre BOYER, Plaintiff,
v.
The CITY OF PHILADELPHIA, Commissioner Charles Ramsey, Two Jane or John Does, Captain Rollin Lee, Lieutenant Karyn Baldini, and Officer Angel Ortiz, Defendants.

CIVIL ACTION NO. 13-6495
|
Signed 09/05/2018
|
Filed 09/06/2018

**Attorneys and Law Firms**

Stephen Thomas O'Hanlon, The O'Hanlon Law Firm PC, Philadelphia, PA, for Plaintiff.

Andre Boyer, Philadelphia, PA, pro se.

Melissa T. Knight, Bunker & Ray, Nicole S. Morris, City of Philadelphia Solicitor's Office, Benjamin Richard Patchen, City of Philadelphia Law Department, Philadelphia, PA, for Defendants.

## MEMORANDUM

DuBois, District Judge

### I. INTRODUCTION

*1 Plaintiff, Andre Boyer, is an African-American who was employed by the City of Philadelphia (the "City") as a police officer from 1997 until his termination in September 2013. Plaintiff alleges that, in terminating his employment, the City of Philadelphia, former Police Commissioner Charles Ramsey ("Ramsey"), Captain Rollin Lee ("Lee"), and Lieutenant Karyn Baldini ("Baldini"), and two Jane or John Does (collectively, the "City Defendants") violated his rights under the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

Presently before the Court is City Defendants' Motion in Limine to exclude evidence relating to: (i) plaintiff's vocational report; (ii) plaintiff's prior lawsuit against the City of Philadelphia and defendant Baldini; (iii) plaintiff's arrest of James Singleton; (iv) plaintiff's commendations and awards; (v) plaintiff's religious affiliation and position in his church; and (vi) plaintiff's proposed comparator evidence. For the reasons set forth below, the City Defendants' Motion in Limine is granted in part and denied in part.

### II. BACKGROUND [1]

Plaintiff's claims in this case stem from a series of events, beginning in September of 2011, leading to his termination as a police officer with the Philadelphia Police Department. On September 6, 2011, plaintiff and Officer Angel Ortiz ("Ortiz") conducted a traffic stop while on patrol as police officers in Philadelphia. During this stop, plaintiff confiscated money from an occupant of the vehicle, Wurlin Graham. Graham was never charged with a crime in connection with the traffic stop. On September 26, 2011, Graham submitted a complaint of police misconduct to the Philadelphia Police Department, alleging that his money had not been returned to him and that plaintiff had, in sum, "stolen" his money.

On October 5, 2011, Graham's complaint was received by the Internal Affairs Division ("IAD") of the Philadelphia Police Department. On October 12, 2011, Lieutenant Michael Craigshead was assigned to investigate Graham's complaint. As part of the investigation, Lieutenant Craigshead interviewed, among others, Ortiz on April 12, 2012, and June 11, 2012, and plaintiff on May 11, 2012, and June 21, 2012.

At the conclusion of the IAD investigation, Inspector H. Robert Snyder determined that the "investigation could neither prove nor disprove" Graham's allegations that plaintiff had confiscated Graham's money, other than that which plaintiff had recorded on a property receipt and which was returned to Graham by the Police Department. However, Inspector Snyder also determined that the investigation revealed several departmental violations, including the fact that plaintiff "was deliberately untruthful" during the investigation with respect to suspected narcotics and other evidence that plaintiff allegedly recovered during the Graham stop but did not document, in violation of departmental procedures.

*2 The IAD investigation report was sent to the Police Board of Inquiry ("PBI"), which held a hearing on July 23, 2013. After the hearing, at which Ortiz and others testified, the PBI found plaintiff guilty of four departmental violations arising from the IAD investigation. The four violations were: (1) "Conduct Unbecoming–Lying or attempting to

Case 5:23-cv-02885-JLS   Document 21-1   Filed 11/16/23   Page 3 of 11

Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)
107 Fed. R. Evid. Serv. 430

deceive regarding a material fact during the course of any Departmental investigation;" (2) "Conduct Unbecoming–Abuse of authority;" (3) "Disobedience–Failure to follow Departmental procedures for the handling of evidence, personal effects, and all other property taken into custody [with certain exceptions];" and (4) "Disobedience–Failure to follow Departmental procedure for the handling of narcotics, money, explosives, firearms, hazardous materials or forensic evidence." The "Penalty Range" for the first violation was "Dismissal," for the second and fourth violations "5 Day Suspension to Dismissal," and for the third violation "Reprimand to 5 Days Suspension." Based on these findings, the PBI recommended that plaintiff be dismissed. Ramsey approved the recommendation on July 30, 2013, and plaintiff was dismissed from the Philadelphia Police Department on September 2, 2013. Through his union, plaintiff filed a grievance and participated in arbitration proceedings. After arbitration hearings on May 23, 2014, and June 26, 2014, at which Ortiz testified, on August 28, 2014, plaintiff's grievance was denied and his dismissal was upheld.

Plaintiff's original Complaint in this case was filed on November 7, 2013 (ECF No. 1), and alleged that the City, Ramsey, and five Jane and John Does discriminated against him based on his race and retaliated against him for opposing this discrimination in violation of Title VII, the First and Fourteenth Amendments pursuant to § 1983, the Pennsylvania Human Relations Act ("PHRA"), and the Pennsylvania Constitution. Since then, plaintiff has amended his complaint twice, with the Second Amended Complaint deemed to have been filed as of April 8, 2016 (ECF No. 46). Plaintiff's Second Amended Complaint contains two counts: (Count One) violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against the City, Ramsey, Lee, Baldini, and two John and Jane Doe defendants and (Count Two) violations of the Pennsylvania Whistleblower Law against the City, Ramsey, and Angel Ortiz ("Ortiz").

Both defendant Ortiz and City Defendants filed motions for summary judgment. By Order and Memorandum dated July 14, 2017, the Court granted defendant Ortiz's motion and granted in part and denied in part the City Defendants' motion (ECF No. 65). After that ruling, plaintiff's only remaining claims are the claims in Count One of the Second Amended Complaint for violations of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Ramsey, Lee, Baldini, and two John and Jane Does, and the claim in Count One against the City of Philadelphia with respect to the alleged custom of using different disciplinary proceedings for police officers based on their race.

Presently before the Court is City Defendants' Motion in Limine ("Motion in Limine") (ECF No. 90, filed Oct. 13, 2017). Plaintiff filed a Response to the Motion in Limine on August 14, 2018 ("Response") (ECF No. 114). [2] The Motion is thus ripe for review.

### III. APPLICABLE LAW

The Court has discretion to rule on evidentiary issues in limine to ensure that the jury is not exposed to confusing, irrelevant, or unfairly prejudicial evidence. *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) (citing *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ). Ruling in limine can serve the interests of efficiency; however, where the "context of trial would provide clarity, the Court may defer the issues until trial." *Fritner*, 892 F. Supp. 2d at 707.

### IV. DISCUSSION

#### a. Vocational Report and Expert Testimony

Defendants seek to exclude a vocational report and any testimony related to the report. The vocational report was prepared in connection with Mr. Boyer's lawsuit by Sonya M. Mocarski, M.S. ("Mocarski"), a vocational rehabilitation counselor, on September 13, 2016. *See* Pl.'s Resp. to Defs. Mot. in Limine, ECF No. 114, Ex. A1. The report covers Mocarski's opinions on plaintiff's reduced earning capacity as a result of his termination. *Id.*

*3 Defendants argue (i) that the report is irrelevant and should be excluded under Federal Rule of Evidence ("F.R.E.") 401; (ii) that the report's probative value is substantially outweighed by a danger of confusing the issues or misleading the jury and should be excluded under F.R.E. 403; and (iii) that the report and any expert testimony from Mocarski would fail to meet the requirements for admission under F.R.E. 702 and 703. Defs. Mot. in Limine, ECF No. 90, at 2-6. In his Response, the plaintiff argues that the report is relevant to his damages, would not confuse or mislead a jury, and that a vocational expert can testify to the reasonable effects of a termination. Pl. Resp. at 4-6.

Case 5:23-cv-02885-JLS   Document 21-1   Filed 11/16/23   Page 4 of 11

Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)
107 Fed. R. Evid. Serv. 430

As an initial matter, the Court concludes that the report itself is hearsay evidence that must be excluded at trial. Hearsay is an out-of-court statement offered into evidence for the truth of the matter asserted. Fed. R. Civ. P. 801(c). Defendants assume the report would be offered in evidence to prove exactly what it discusses, plaintiff's damages. Therefore, although defendants failed to raise this objection, the Court excludes from evidence the vocational report itself. However, except as noted below, the Court will not bar Mocarski from testifying as an expert witness regarding Mr. Boyer's damages based on what she states in her report.

First, Mocarski meets the requirements under F.R.E. 702 and 703 for the admission of expert testimony. F.R.E. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under F.R.E. 702, the trial judge must ensure that all expert testimony is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Third Circuit, however, has interpreted the specialized knowledge requirement liberally finding that "[t]he basis of this specialized knowledge 'can be practical experience as well as academic training and credentials,' " *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327–28 (3d Cir. 2002) (citation omitted). However, " 'at a minimum, a proffered expert witness ... must possess skill or knowledge greater than the average layman....' " *Id.* (citation omitted).[3]

Mocarski's curriculum vitae states that she has worked as a Vocational and Rehabilitation Specialist for the last thirty-three years. Pl. Resp. Ex. A1 at 24. Prior to that she spent ten years working as a social security vocational expert. *Id.* Additionally, Mocarski has a master's degree in Psychological Services from the University of Pennsylvania and a certification from the American Board of Vocational Experts. *Id.* Through her education and substantial work experience Mocarski has "specialized knowledge" regarding vocation and earning capacity that is certainly "greater than the average layman." *Betterbox Commc'ns*, 300 F.3d at 328.

Furthermore, this specialized knowledge will be useful to the jury in assessing any damages sustained by plaintiff as a result of the alleged discriminatory conduct of the defendants. In preparing her report, Mocarski states that she interviewed plaintiff, reviewed records including performance evaluations and tax documents, analyzed plaintiff's job history, and performed case research to ascertain the level of media coverage Mr. Boyer's termination had received. Pl. Resp. Ex. A1. Although Mocarski did not conduct any specific "vocational testing," based on Mr. Boyer's extensive work history, vocational testing was likely unnecessary to determine his capacity to work in a field similar to police work. Therefore, Mocarski's testimony will not be excluded under F.R.E. 702.

*4 F.R.E. 703 provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Defendants argue that Mocarski's report is not based on the "facts or data in the case," as required by F.R.E. 703, and that Mocarski "attempts to offer an opinion and expected testimony regarding jobs plaintiff applied to and reasons why he was not hired." Defs. Mot. in Lim. at 5. Mocarski is not permitted to speculate as to why plaintiff was not hired by

Case 5:23-cv-02885-JLS   Document 21-1   Filed 11/16/23   Page 5 of 11

Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)
107 Fed. R. Evid. Serv. 430

potential employers after his termination. She can, however, testify to claimed reduced earning capacity as a direct result of plaintiff's termination.

Next, Mocarski's testimony regarding Mr. Boyer's damages is relevant. F.R.E. 401 states "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Testimony regarding a change in Mr. Boyer's earning capacity as a direct result of his termination is relevant to the issue of damages.

Finally, the probative value of Mocarski's testimony is not substantially outweighed by the danger of confusing the issues or misleading the jury. Under F.R.E. 403, courts may exclude relevant evidence if its probative value is substantially outweighed by the danger of "confusing the issues" or "misleading the jury." Fed. R. Evid. 403. Defendants argue that the testimony may be confusing or misleading because "it attributes [p]laintiff's loss of earnings capacity to factors other than the actions of the Defendants alleged in the Amended Complaint." Defs. Mot. in Lim. at 3. In advancing this argument, defendants point to Mocarski's discussion of plaintiff's Act 120 Certification, Conceal and Carry Permit, and the plaintiff's application for a Private Investigator's License. *Id.* Any testimony about unconnected damages is inadmissible. However, Mocarski will be permitted to testify to any reduction in plaintiff's earning capacity that arose as a direct consequence of plaintiff's termination from the police force provided she can do so with a reasonable degree of certainty in her capacity as a vocational rehabilitation specialist.

The Court thus grants that part of defendants' motion seeking to exclude plaintiff's vocational report. That part of defendants' motion seeking to exclude Mocarski's testimony is denied, as limited by this Memorandum.

### b. Prior Lawsuit Against the City of Philadelphia and Defendant Baldini

The defendants ask the Court to preclude the plaintiff from offering evidence regarding his previous discrimination lawsuit (Doc. No. 12-cv-2826), subsequent settlement agreement and any allegations of retaliation by the defendants. Defs. Mot. in Lim. at 6.

**\*5** Defendants state they believe, based on the plaintiff's prior submissions, that plaintiff will attempt to introduce evidence of retaliation and harassment. They argue that any evidence of retaliation is irrelevant in light of the Court's Memorandum and Order, dated July 14, 2017, which, inter alia, granted summary judgment as to plaintiff's whistleblower claims.

Furthermore, defendants note that although plaintiff raised retaliation claims in his original Complaint and first Amended Complaint, the Second Amended Complaint omitted the retaliation claims altogether. Defendants argue that "plaintiff clearly made a strategic decision to not bring a retaliation claim in his Second Amended Complaint." Defs. Mot. in Lim. at 7. "He should not, therefore, be allowed to gain a tactical advantage, negating [d]efendants' ability to move for summary judgment on that claim, only to suddenly revive the claim just prior to trial." *Id.*

In his Response to defendants' Motion in Limine plaintiff does not address the dismissal of his whistleblower claims or his omission of retaliation claims from his Second Amended Complaint. Instead, plaintiff reiterates the argument that he raised in his 2012 Complaint and asserts that Baldini retaliated against him. He argues that this information is relevant and should be admitted because his claims of retaliation are factually intertwined with the issues in the present lawsuit. Pl. Resp. at 7.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Plaintiff's only remaining claims are Equal Protection claims under 42 U.S.C. § 1983. These include claims: (i) that he was treated more harshly that similarly situated white police officers because of his race; and (ii) that there was a municipal practice of using different disciplinary processes for police officers based on their race. Evidence of retaliation against plaintiff for making a protected complaint about illegal conduct by his colleagues does not make it more or less probable that defendant was discriminated against because of his race. *See Chislum v. Dep't of Corr.*, No. 01-4901, 2005 WL 1827950, at \*2 (D.N.J. Aug. 2, 2005) (finding evidence for the purpose of proving dismissed claims to be irrelevant and unduly prejudicial).

The Court thus grants defendants' motion seeking to exclude evidence regarding plaintiff's previous lawsuit, subsequent settlement agreement, and any allegations of retaliation by

Case 5:23-cv-02885-JLS   Document 21-1   Filed 11/16/23   Page 6 of 11

Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)
107 Fed. R. Evid. Serv. 430

the defendants. To the extent that plaintiff believes that such evidence is relevant to his remaining claims, he must seek reconsideration of this Memorandum and Order before referring to the evidence at trial in the presence of the jury.

### c. Arrest of James Singleton

Defendants argue that evidence related to James Singleton's arrest is not relevant to plaintiff's claims and should be excluded under F.R.E. 401, or, in the alternative, under F.R.E. 403 because testimony or exhibits regarding Singleton "would only serve to distract the jury" from the issues in the case. Defs. Mot. in Lim. at 7.

Plaintiff argues that Singleton's arrest is relevant because "[p]laintiff was a whistleblower and reported Angel Ortiz and another officer to the DA's office for police corruption" related to Singleton's arrest. Pl. Resp. at 9. Plaintiff claims that Ortiz then retaliated against him for reporting Ortiz's misconduct by testifying against plaintiff in a separate investigation into the alleged misconduct for which plaintiff was terminated.

**\*6** As discussed above, plaintiff's whistleblower claims have been removed from the case by the granting of City Defendants' Motion for Summary Judgment on those issues and plaintiff's retaliation claims were not raised in his Second Amended Complaint and are not at issue in the present litigation. Consequently, evidence of the Singleton arrest that is irrelevant to plaintiff's current Equal Protection claims is inadmissible.

The Court thus grants that part of defendants' motion seeking to exclude evidence related to James Singleton's arrest. To the extent that plaintiff believes that such evidence is relevant to his remaining claims, he must seek reconsideration of this Memorandum and Order before referring to the evidence at trial in the presence of the jury.

### d. Commendations and Awards

Defendants seek to exclude evidence of plaintiff's commendations or awards at trial. Defendants argue that such awards are inadmissible character evidence under F.R.E. 404(a). Plaintiff argues that his commendations and awards *are* admissible to show that he would have "acted in accordance with the character or trait." Pl. Resp. at 10. Plaintiff misrepresents the law. [4]

In a civil case, F.R.E. 404 prohibits evidence of a person's character or character trait for the purpose of proving action in conformity therewith on a particular occasion. *Thompson v. Mancuso*, No. 08-3638, 2009 WL 2616713, at \*3 (E.D. Pa. Aug. 25, 2009). In this case plaintiff seeks to introduce his awards and commendations to bolster his reputation as a law abiding police officer. Such evidence is inadmissible for that purpose.

If, however, the defendants attack the plaintiff's credibility or truthfulness he may be able to introduce this evidence, if plaintiff's commendations or awards relate to his credibility or truthfulness. "Pursuant to Federal Rules of Evidence 404, 607 and 608, character evidence may only be introduced to attack a witness's credibility or to address a witness's truthfulness or lack thereof (after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise)." *Leahy v. Salem*, No. CV 10-3933, 2011 WL 13263541, at \*4 (E.D. Pa. Feb. 4, 2011).

The Court thus grants that part of defendants' motion seeking to exclude plaintiff's commendations or awards. This ruling is without prejudice to plaintiff's right to seek reconsideration of this part of the Memorandum and Order if defendants attack plaintiff's credibility or truthfulness at trial and plaintiff establishes that the commendations or awards are evidence of his credibility or truthfulness.

### e. Religious Affiliation

Defendants seek to exclude any evidence of plaintiff's religious beliefs and position in his church. Defendants argue that the plaintiff's religious beliefs and position in his church are not relevant to his claims and should be excluded under F.R.E. 401.

Plaintiff argues that his religious beliefs and his position as a deacon in his church are relevant to his claims. He states that "being a deacon in his church has some material facts such as to his character.... The Court should allow [p]laintiff any testimony about or reference to his position as a deacon as part of his character testimony." Pl. Resp. at 11.

**\*7** It appears that plaintiff seeks to introduce his position as a deacon in his church solely to demonstrate that he is a man of

Case 5:23-cv-02885-JLS Document 21-1 Filed 11/16/23 Page 7 of 11

Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)
107 Fed. R. Evid. Serv. 430

good character. This evidence is irrelevant to plaintiff's claims under F.R.E. 401 and is impermissible character evidence under F.R.E. 404. See *supra* section IV(d).

The Court thus grants that part of defendants' motion seeking to exclude the plaintiff's religious affiliation and position in his church.

**f. Proposed Comparator Evidence**

Defendants seek to exclude comparator evidence regarding "Captain John McCloskey, Detective Rossiter, and Jeffrey Cujdik" arguing that these individuals are not "similarly situated" to plaintiff. Defs. Mot. in Lim. at 11. Plaintiff's Response states that "each comparator is similarly situated in all relevant respects." Pl. Resp. at 12. Additionally, plaintiff references Officer Angel Ortiz as a comparator for the first time in his Response to City Defendants Motion in Limine. Defendants have not replied to plaintiff's Response in which Ortiz is identified as a comparator. [5]

A similarly situated analysis is a fact intensive inquiry. Courts must look to the circumstances of the case before them instead of rote application of an inflexible test. *See Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004). In response to a motion in limine a court can exclude comparator evidence where the individuals are not "similarly situated" and thus are either irrelevant or create a serious risk of confusing or misleading the jury. *See* F.R.E. 401, 403; *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 128 S.Ct. 1140, 1146 (2008) ("[Q]uestions of relevance and prejudice are for the District Court to determine in the first instance"). "Which factors are relevant is determined by the context of each case, but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009); *see also Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) (stating that the relevant inquiry includes "factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in."). Similarly situated does not mean identically situated. *Opsatnik,* 335 F. App'x at 222 – 23. Nonetheless, the plaintiff must be "similar in all relevant respects." *Id.*; *see also Wilcher,* 441 F. App'x at 882.

*i. Captain John McCloskey*

This Court previously held that Captain John McCloskey was sufficiently "similarly situated" for the plaintiff's claims to survive summary judgment based on the limited evidence provided regarding McCloskey in City Defendants Motion for Summary Judgment. *See* Mem. and Order, ECF 65, at 8 – 9, and 66. According to plaintiff's deposition testimony, McCloskey, a white police officer, was charged with the same offense as plaintiff, and disciplined by the same individual but they had different outcomes. Both were charged with "conduct unbecoming, Section 1009 – 10, ... lying or attempting to deceive an investigator during the course of a departmental investigation." Pl.'s Resp. to City Defs. Mot. for Summ. J., Ex. 3 ("Boyer Dep.") at 69:1-9, 69:21-70:2, 79:6-10. Although the "Penalty Range" for this offense is dismissal, in contrast to plaintiff, McCloskey was not terminated for his conduct. *Id.*; PBI Hr'g at 1.

**\*8** In defendants' Motion for Reconsideration of the Court's Summary Judgment Ruling, defendants argue for the first time that McCloskey was subject to different standards as "a supervisor of an entire police district" in contrast to plaintiff who "did not have any supervisory responsibilities." Defs. Mot. for Recons., ECF No. 68, at 8. Specifically, "plaintiff was a line officer and McCloskey was a Captain." Defs. Mot. for Recons. at 5. The Court denied defendants' Motion for Reconsideration stating that defendants may not use a motion for reconsideration "to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Romero v. Allstate Ins. Co.*, 170 F. Supp. 3d 779, 783 (E.D. Pa. 2016).

In their Motion in Limine, City Defendants argue that McCloskey, like the other comparators, is not similarly situated to plaintiff in all relevant respects and that plaintiff "offers no comparator evidence of other similar rank police officers, that were involved in similar conduct, namely who mishandled narcotics, abused their authority and [were] accused of lying during the course of an investigation into stolen money." Defs. Mot. in Lim. at 12. Defendants draw the test too narrowly.

Rank or job title has been recognized as a relevant factor in certain cases when making a determination that two individuals are similarly situated. *See Wilcher,* 441 F. App'x at 882 (finding the difference in job responsibilities between a temporary supervisor, letter carriers, and a postmaster

to be relevant where the letter carriers were charged with different types of misconduct than the temporary supervisor and the postmaster was at the discretion of a different supervisor). Notwithstanding this authority, the Court will not exclude comparator evidence based on a difference in rank where rank is irrelevant to the seriousness of the misconduct and the proposed comparator was disciplined by the same supervisor as the plaintiff. It would be manifestly unfair to exclude evidence of individuals who committed comparable misconduct and were disciplined by the same supervisor simply because they have a different job title or rank.

The Third Circuit has focused not on whether the purported comparators are identical, but on whether they "committed offenses of comparable seriousness." *Opsatnik v. Norfolk S. Corp.*, 335 F.App'x. 220, 223 (3d Cir. 2009) (internal quotation marks and citations omitted). In this case, both McCloskey and plaintiff were charged with "lying or attempting to deceive an investigator during the course of a departmental investigation" and both were disciplined by Ramsey. In their Motion in Limine, defendants fail to show the relevance of McCloskey's rank in differentiating between McCloskey and Plaintiff's misconduct. Boyer Dep. at 69:1-9, 69:21-70:2, 79:6-10. Furthermore, defendants' fail to provide sufficient detail for the Court to determine whether plaintiff and McCloskey's offenses were of "comparable seriousness."[6]

Given the lack of evidence, the Court defers ruling on that portion of defendants' motion seeking to exclude evidence relating to Captain McCloskey as a comparator in this Memorandum and Order.

### ii. Detective Rossiter[7]

**\*9** According to plaintiff's deposition, Detective Rossiter was a "homicide detective that Ramsey accused of stealing time from the City by being home working," was terminated by Ramsey through direct action, but "got his job back," even though he had not yet participated in arbitration proceedings. Boyer Dep. 128:2-14, 130:23–132:21.

Defendants' argument to exclude testimony regarding Detective Rossiter as a comparator consists primarily of conclusory assertions that "each alleged comparator is not at all similarly situated to [p]laintiff in all relevant respects." Defs. Mot. In Lim. at 12. Plaintiff does not respond to defendants' argument regarding Detective Rossiter and only identifies Captain McCloskey and Angel Ortiz as his alleged comparators.

In spite of the lack of specificity in defendants' motion, there appear to be relevant differences between plaintiff and Detective Rossiter. In addition to a difference in the job responsibilities of a homicide detective and a line officer, the plaintiff's alleged misconduct is notably different in nature than that of Detective Rossiter. Detective Rossiter was found guilty of stealing overtime while plaintiff's alleged misconduct included lying during an investigation and a failure to follow procedures for handling evidence including money and narcotics. These offenses are different in nature and are not of "comparable seriousness." *See Opsatnik*, 335 F.App'x. at 223. Based on the difference in job responsibilities and the nature of the alleged misconduct, the Court concludes that Detective Rossiter is not similarly situated in all relevant respects.

The Court thus grants that part of defendants' motion seeking to exclude evidence relating to Detective Rossiter as a comparator.

### iii. Jeffrey Cujdik

Defendants' Motion in Limine references Jeffrey Cujdik as a proposed comparator.[8] However, defendants provide no detail as to the way in which Jeffrey Cujdik is not similarly situated to the plaintiff or the nature of Cujdik's misconduct except a generalized reference to "a falsification of an arrest warrant and unauthorized business relationship with a confidential informant." Def. Mot. in Lim. at 13. Plaintiff omits any mention of Jeffrey Cujdik in his Response.

The Court is unable to assess whether Jeffrey Cujdik is, or is not, similarly situated to plaintiff without specific details as to Jeffrey Cujdik's position in the police department, job responsibilities, the nature and seriousness of his misconduct, and the process through which he was disciplined. Defendants' evidence that Jeffrey Cujdik engaged in different misconduct than plaintiff, without evidence of the details of his misconduct, is insufficient to demonstrate that he is not similarly situated. *See Opsatnik*, 335 F.App'x. at 223.

Given the lack of evidence, the Court defers ruling on that portion of defendants' motion seeking to exclude evidence relating to Jeffrey Cujdik as a comparator in this Memorandum and Order.

Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)
107 Fed. R. Evid. Serv. 430

Case 5:23-cv-02885-JLS   Document 21-1   Filed 11/16/23   Page 9 of 11

### iv. Angel Ortiz

Defendants did not identify Angel Ortiz as a proposed comparator in their Motion in Limine. In plaintiff's Response to defendants' Motion in Limine, plaintiff named Ortiz as a proposed comparator. Under those circumstances, the Court defers ruling on the sufficiency of the evidence of Ortiz as a comparator.

### g. New Evidence Offered in Plaintiff's Response to Defendants' Motion in Limine

**\*10** In plaintiff's Response to defendants' Motion in Limine, plaintiff includes a section entitled "New Matter Newly Discoverable Evidence to be Admissible at Trial." Defendants have not responded to plaintiff's submission. In this section, plaintiff references two attached documents: (i) a memorandum relating a conversation between plaintiff and an investigator with the District Attorney's Office; and (ii) a set of documents regarding Ortiz's disciplinary proceedings sent to plaintiff "by ADA Peter Car from the Philadelphia District Attorney's Office Appeals and Civil Litigation Unit in the mail after the discovery time had ended." Pl. Resp. at 13.

First, the memorandum, dated October 24, 2014, details a conversation between plaintiff and Claude Thomas, an investigator with the Philadelphia Office of District Attorney. Pl. Resp. Ex. A2. Plaintiff asserts that this document shows that he "made a good faith effort to report police corruption to the Philadelphia District Attorney's officer...." This evidence, although it might have been relevant to a retaliation claim, is irrelevant to the plaintiff's remaining Equal Protection claims.

The second set of documents identified by plaintiff includes a "Police Misconduct Review Committee Spread Sheet" entry for Angel Ortiz. The entry discloses that a PBI found Ortiz guilty, on March 8, 2017, of misconduct committed in 2011. Plaintiff argues that Ortiz's charges of misconduct were essentially identical to his own. Pl. Resp. at 13. Although Ortiz was not found guilty of the same four violations as plaintiff, both plaintiff and Ortiz were found guilty of "[f]ailure to follow [d]epartmental procedure for the handling of narcotics, money, explosives, firearms, hazardous materials or forensic evidence." *See supra* section II; Pl. Resp. Ex. A3. Ortiz, however, received only a five-day suspension and reprimand for his conduct while plaintiff was terminated.

Pl. Resp. Ex. A3. To the extent that plaintiff seeks to introduce Ortiz as a comparator, these documents might be relevant. However, the documents themselves may be excluded at trial unless the plaintiff lays a proper foundation, the documents are properly authenticated, and any inadmissible hearsay is excluded.

The Court defers a decision on the admissibility of these documents until trial when the way in which plaintiff seeks to offer the documents becomes clear and defendants have an opportunity to respond. *See Fritner*, 892 F. Supp. 2d at 707 (holding that where the "context of trial would provide clarity, the Court may defer the issues until trial.").

### V. CONCLUSION

For the foregoing reasons, City Defendants' Motion in Limine is granted in part and denied in part.

The Court grants:

- that part of defendants' motion seeking to exclude plaintiff's vocational report.

- that part of defendants' motion seeking to exclude evidence relating to plaintiff's previous lawsuit, subsequent settlement agreement, and any allegations of retaliation by the defendants. To the extent that plaintiff believes that such evidence is relevant to his remaining claims, he must seek reconsideration of this Memorandum and Order before referring to the evidence at trial in the presence of the jury.

- that part of defendants' motion seeking to exclude evidence related to the James Singleton arrest. To the extent that plaintiff believes that such evidence is relevant to his remaining claims, he must seek reconsideration of this Memorandum and Order before referring to the evidence at trial in the presence of the jury.

- that part of the defendants' motion seeking to exclude evidence of plaintiff's commendations or awards. This ruling is without prejudice to plaintiff's right to seek reconsideration of this part of this Memorandum and Order if defendants attack plaintiff's credibility or truthfulness at trial and plaintiff establishes that the commendations or awards are evidence of his credibility or truthfulness.

Case 5:23-cv-02885-JLS Document 21-1 Filed 11/16/23 Page 10 of 11

Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)
107 Fed. R. Evid. Serv. 430

**\*11**
- that part defendants' motion seeking to exclude evidence of plaintiff's religious affiliation and position in his church.

- that part of defendants' motion seeking to exclude evidence of Detective Rossiter as a comparator.

The Court denies:

- that part of defendants' motion seeking to exclude the testimony of Mocarski, as limited by this Memorandum and Order.

The Court defers ruling on:

- that part of defendants' motion seeking to exclude evidence of Captain McCloskey as a comparator.

- that part of defendants' motion seeking to exclude evidence of Jeffrey Cujdik as a comparator.

- that part of plaintiff's Response seeking to include evidence of Angel Ortiz as a comparator.

- the admissibility of plaintiff's "new evidence" submitted in his Response to City Defendants' Motion in Limine.

The rulings in this Memorandum and attached Order are without prejudice to the right of the parties to seek reconsideration at trial if warranted by the evidence and the law as stated in this Memorandum.

An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4252378, 107 Fed. R. Evid. Serv. 430

## Footnotes

1   All facts are adopted from the Court's Memorandum and Order ruling on City Defendants' Motion for Summary Judgment, dated July 14, 2017 (ECF No. 65).

2   On October 16, 2017, Boyer's attorney, Stephen O'Hanlon moved to withdraw as counsel (ECF No. 91). After a hearing on the matter, the motion to withdraw was granted. The case was then placed in civil suspense for over six months while the Court attempted to obtain counsel for plaintiff under the Attorney Panel for *Pro Se* Plaintiffs in Employment Cases Program. That effort was unsuccessful.

3   "Case law since *Daubert* has shown that 'rejection of expert testimony is the exception rather than the rule.' " *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2017 WL 5177757, at \*4 (E.D. Pa. Nov. 7, 2017) (*citing* Fed. R. Evid. 702, advisory cmte. note (2000) ).

4   "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).

5   Because this issue was raised for the first time after the close of discovery, defendants are granted leave to seek any necessary additional discovery with respect to Ortiz as a comparator.

6   City Defendants' Motion in Limine briefly mentions "a concealment of an arrest by a captain," presumably in reference to McCloskey. Defs. Mot. in Lim. at 13. However, they fail to provide additional details that would allow the Court to find that such an action is not of comparable seriousness to plaintiff's alleged misconduct. Furthermore, defendants do not provide any evidence of mitigating circumstances that would warrant a less severe punishment.

**Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)**
107 Fed. R. Evid. Serv. 430

Case 5:23-cv-02885-JLS   Document 21-1   Filed 11/16/23   Page 11 of 11

**Boyer v. City of Philadelphia, Not Reported in Fed. Supp. (2018)**
107 Fed. R. Evid. Serv. 430

Case 5:23-cv-02885-JLS   Document 21-1   Filed 11/16/23   Page 11 of 11

7   The Court notes a discrepancy in the parties' discussion of "Detective Rossiter." City Defendants' Motion in Limine references a "Detective Rossiter," however, no Detective Rossiter is mentioned in plaintiff's Second Amended Complaint, plaintiff's deposition testimony, or plaintiff's Response to City Defendants' Motion for Summary Judgment. Instead plaintiff references an individual named "Detective Rutherford." Both names appear to refer to the same person. For the sake of consistency this Memorandum will use the name Detective Rossiter as used by defense counsel. However, the Court notes the discrepancy for the record.

8   Previous submissions by the plaintiff have referenced both Jeffrey and Richard Cujdik but the defendants do not mention Richard Cujdik as a proposed comparator in their Motion in Limine. Therefore, the Court will only address Jeffrey Cujdik in this Memorandum.

**End of Document**                                                                 © 2023 Thomson Reuters. No claim to original U.S. Government Works.