## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDRE BOYER and PENNSYLVANIA S.I.T.E.S. AGENTS, LLC,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CITY OF PHILADELPHIA, et al.,**<br><br>**Defendants.** | **Civil Action No. 5:23-02885-JLS** |

## ORDER

**AND NOW**, this _____ day of _____, 20___, upon consideration of Defendants City of Philadelphia, Sheriff Rochelle Bilal, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Lieutenant Long, James Poulos, Anthony Glaviano, and Wanda Newsome's Motion to Dismiss, and any response thereto, it is ORDERED that Plaintiffs' Second Amended Complaint is dismissed with prejudice against these Defendants.

BY THE COURT:

_____ **J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDRE BOYER and PENNSYLVANIA S.I.T.E.S. AGENTS, LLC,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 5:23-02885-JLS** |
| **CITY OF PHILADELPHIA, et al.,** | |
| **Defendants.** | |

### CITY DEFENDANTS' MOTION TO DISMISS

Defendants City of Philadelphia, Sheriff Rochelle Bilal, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Lieutenant Long, James Poulos, Anthony Glaviano, and Wanda Newsome ("City Defendants"), by their undersigned attorneys, move for an order dismissing Plaintiffs' Second Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants respectfully submit that such relief is warranted for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

Dated: December 18, 2023

CITY OF PHILADELPHIA LAW DEPARTMENT
KRISTIN BRAY, Acting City Solicitor

*/s/ Danielle B. Rosenthal*
Danielle B. Rosenthal (PA 329676)
Deputy City Solicitor, Civil Rights Unit
Jennifer MacNaughton (PA 88424)
Senior Attorney, Appeals
Aimee D. Thomson (PA No. 326328)
Deputy City Solicitor, Affirmative & Special Litigation
City of Philadelphia Law Department

1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(215) 683-5448
danielle.rosenthal@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE BOYER and PENNSYLVANIA S.I.T.E.S. AGENTS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>Defendants. | Civil Action No. 5:23-02885-JLS |

**MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

ORDER .............................................................................................................. 1

CITY DEFENDANTS' MOTION TO DISMISS............................................................. 1

MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO
     DISMISS .................................................................................................... i

TABLE OF AUTHORITIES ................................................................................... iv

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND .......................................................................................... 1

     A.     Relevant Factual Allegations ............................................................ 1

     B.     Procedural History ......................................................................... 4

III.    LEGAL STANDARD .................................................................................... 5

IV.    ARGUMENT ............................................................................................. 6

     A.     Individual City Defendants are immune from state law claims under the
          Pennsylvania Political Subdivision Tort Claims Act (Counts 10, 12-14). ............ 7

     B.     Many of Boyer's allegations are time-barred. ....................................... 9

     C.     Counts 1, 2, and 7 (pertaining to the UFA, state law barring guns from
          courthouses, and the Second Amendment) should be dismissed....................... 10

          1.     Boyer's facial challenges in Counts 1 and 2 fail because shall-issue
               licensing and sensitive places laws, such as Pennsylvania's, are
               facially constitutional. ............................................................. 11

          2.     Boyer's as-applied Second Amendment challenges must fail
               because the City Defendants acted properly to enforce valid laws. ......... 15

          3.     Boyer's Due Process and Equal Protection allegations are legally
               insufficient. ......................................................................... 17

     D.     Boyer has failed to state a claim for First Amendment retaliation (Count
          6). .................................................................................................. 20

     E.     Boyer has failed to state a claim under the Fourth Amendment (Count 8). ......... 22

     F.     Boyer has failed to state a claim for malicious prosecution or false
          imprisonment (Counts 9, 10, and 14).................................................... 24

     G.     Boyer has failed to state a claim for *Monell* liability (Count 11). ...................... 28

     H.     Boyer has failed to state a claim for trespass to chattels (Count 12). ................ 29

     I.     Boyer has failed to state a claim for assault and battery (Count 13). .................. 32

     J.     Boyer's derivative conspiracy claims fail as a matter of law (Counts 12-
          14). ................................................................................................. 33

     K.     The Individual City Defendants have qualified immunity (Counts 6-9). ............. 34

V.      CONCLUSION .......................................................................................................... 35

CERTIFICATE OF SERVICE ...................................................................................... 35

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boyer v. City of Phila. Bd. of License & Inspection Rev.*,
18 WL 6836112 (Pa. Cmwlth. Dec. 31, 2018) ........................................................ 2

*Algrant v. Evergreen Valley Nurseries Ltd. P'ship*,
126 F.3d 178 (3d Cir. 1997)............................................................................... 9

*Allen v. N.J. State Police*,
974 F.3d 497 (3d Cir. 2020)............................................................................ 25

*Alvin v. Suzuki*,
227 F.3d 107 (3d Cir. 2000)............................................................................ 18

*Anspach v. City of Phila.*,
503 F.3d 256 (3d Cir. 2007).............................................................................. 6

*Antonyuk v. Chiumento*,
-- F.4th --, 2023 WL 8518003 (2d Cir. Dec. 8, 2023) ................................. 11, 12, 17

*Armstrong v. Sch. Dist. of Phila.*,
597 F. Supp. 1309 (E.D. Pa. 1984) ................................................................ 34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................... passim

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
598 U.S. 175 (2023)...................................................................................... 18

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,
520 U.S. 397 (1997)......................................................................... 21, 23, 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................... 6

*Beswick v. City of Phila.*,
185 F. Supp. 2d 418 (E.D. Pa. 2001) ............................................................. 28

*Boyd v. City of Phila.*,
No. 17-3195, 2020 WL 1531454 (E.D. Pa. Mar. 31, 2020) ................................. 28

*Brockington v. City of Phila.*,
354 F. Supp. 2d 563 (E.D. Pa. 2005) .............................................................. 26

*C.C.H. v. Phila. Phillies, Inc.*,
  940 A.2d 336 (Pa. 2008) ............................................................... 32

*Castillo-Perez v. City of Elizabeth*,
  No. 11-6958, 2014 WL 1614845 (D.N.J. Apr. 21, 2014) ....................................... 29

*Chimel v. California*,
  395 U.S. 752, 763 (1969) ............................................................... 24

*City v. Tuttle*,
  471 U.S. 808 (1985) ............................................................... 28

*Com. v. Bigelow*,
  399 A.2d 392 (Pa. 1979) ............................................................... 16, 22, 27, 31

*Com. v. Romero*,
  673 A.2d 374 (Pa. 1996) ............................................................... 31

*Commonwealth v. Anderson*,
  169 A.3d 1092 (Pa. Super. 2017) ............................................................... 20

*Cortlessa v. Cnty of Chester*,
  No. 04-1039, 2006 WL 1490145 (E.D. Pa. May 24, 2006) ................................... 21, 23, 25, 27

*Davis v. City of Apopka*,
  78 F.4th 1326 (11th Cir. 2023) ............................................................... 27

*Deems v. Phillips*,
  No. 18-2035, 2018 WL 6574184 (E.D. Pa. Dec. 12, 2018) ....................................... 34

*Devine v. Middletown Twp.*,
  No. 14-1072, 2016 WL 4159436 (E.D. Pa. Aug. 4, 2016) ....................................... 32

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ............................................................... 15

*Dwyer v. Farrell*,
  475 A.2d 257 (Conn. 1984) ............................................................... 13

*Fine v. Checcio*,
  870 A.2d 850 (Pa. 2005) ............................................................... 9

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ............................................................... 6

*Gallo v. City of Phila.*,
  161 F.3d 217 fn.2 (3d Cir. 1998) ............................................................... 26

*George v. Rehiel,*
   738 F.3d 562 (3d Cir. 2013)..................................................................... 20, 22

*Great W. Mining & Min. Co. v. Fox Rothschild LLP,*
   615 F.3d 159 (3d Cir. 2010)............................................................................ 33

*Greenberg v. Lehocky,*
   81 F.4th 376 (3d Cir. 2023) ........................................................................... 14

*Groman v. Twp. of Manalapan,*
   47 F.3d 628 (3d Cir. 1995).............................................................................. 29

*Halsey v. Pfeiffer,*
   750 F.3d 273 (3d Cir. 2014)............................................................................ 26

*Harper v. Cty. of Delaware,*
   779 F. App'x 143 (3d Cir. 2019) .................................................................... 29

*Harvard v. Cesnalis,*
   973 F.3d 190 (3d Cir. 2020)............................................................................ 19

*Horton v. California,*
   496 U.S. 128 (1990)................................................................... 16, 23, 24, 31

*Hugee v. Pa. R. Co.,*
   101 A.2d 740 (Pa. 1954) ................................................................................. 25

*In re Highway Truck Drivers & Helpers Loc. Union No. 107,*
   888 F.2d 293 (3d Cir. 1989)............................................................................. 2

*In re Mushroom Transp. Co., Inc.,*
   382 F.3d 325 (3d Cir. 2004)............................................................................. 9

*In re Orthopedic Bone Screw Prod. Liab. Litig.,*
   193 F.3d 781 (3d Cir. 1999)............................................................................ 34

*J.H. v. City of Phila.,*
   No. 06-2220, 2008 WL 3983269 (E.D. Pa. Aug. 19, 2008) .................... 28

*Jarzyna v. Home Props., L.P.,*
   114 F. Supp. 3d 243 (E.D. Pa. 2015) ........................................................... 33

*Johnson v. City of Phila.,*
   975 F.3d 394 (3d Cir. 2020)............................................................................ 28

*Jutrowski v. Twp. of Riverdale,*
   904 F.3d 280 (3d Cir. 2018)............................................................................ 33

*Kach v. Hose*,
   589 F.3d 626 (3d Cir. 2009) ............................................................ 9, 10

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993) ...................................................................... 5

*Kuzel v. Krause*,
   658 A.2d 856 (Pa. Cmwlth. 1995) ......................................................... 8

*Madero v. Luffey*,
   439 F.Supp.3d 493 (W.D. Pa. 2020) .................................................... 31

*Madero v. Luffey*,
   549 F. Supp. 3d 435 (W.D. Pa. 2021) .................................................... 8

*Mills v. City of Phila.*,
   No. CV 14-593, 2023 WL 6520488 (E.D. Pa. Oct. 5, 2023) ................. 33

*Montgomery v. De Simone*,
   159 F.3d 120 (3d Cir. 1998) ................................................................ 29

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) ....................................................................... passim

*Nieves v. Bartlett*,
   139 S. Ct. 1715 (2019) .................................................................. 20, 22

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ........................................................................... 35

*Pestco, Inc. v. Associated Prod., Inc.*,
   880 A.2d 700 (Pa. Super. 2005) .......................................................... 30

*Petit v. Namie*,
   931 A.2d 790 (Pa. Cmwlth. 2007) ......................................................... 8

*PG Pub. Co. v. Aichele*,
   705 F.3d 91 (3d Cir. 2013) ............................................................ 18, 19

Postie v. Frederick,
   No. 14-317, 2016 WL 4521855 (M.D. Pa. Aug. 8, 2016) ..................... 33

*Reichle v. Howards*,
   566 U.S. 658 (2012) ........................................................................... 35

*Renk v. City of Pittsburgh*,
   641 A.2d 289 (Pa. 1994) ........................................................ 8, 25, 32

*Riley v. California*,
 573 U.S. 373 (2014) ......................................................................... 30

*Robinson v. McCorkle*,
 462 F.2d  (3d Cir. 1972) ................................................................... 33

*Rode v. Dellarciprete*,
 845 F.2d 1195 (3d Cir. 1988) ..................................................... passim

*Rosemont Taxicab Co. v. Philadelphia Parking Auth.*,
 327 F. Supp. 3d 803 (E.D. Pa. 2018) ............................................... 30

*Russell v. City of Phila.*,
 428 Fed. Appx. 174 (3d Cir. 2011) ..................................................... 4

*Santiago v. Warminster Twp.*,
 629 F.3d 121 (3d Cir. 2010) ............................................................... 6

*Saucon Valley Manor, Inc. v. Miller*,
 392 F. Supp. 3d 554 (E.D. Pa. 2019) ............................................... 34

*Sauers v. Borough of Nesquehoning*,
 905 F.3d 711 (3d Cir. 2018) ....................................................... 34, 35

*Schmidt v. Skolas*,
 770 F.3d 241 (3d Cir. 2014) ............................................................... 9

*Scott v. Twp. of Bristol*,
 No. 90-cv-1412, 1990 WL 178556 (E.D. Pa. Nov. 14, 1990) ........... 33, 34

*Simmons v. City of Phila.*,
 947 F.2d 1042 (3d Cir. 1991) ........................................................... 28

*Talbert v. Dep't of Corr.*,
 No. 23-2255, 2023 WL 4873643 (E.D. Pa. July 31, 2023) ................... 21

*Tarr v. City of Pittsburgh*,
 800 Fed. App'x 131 (3d Cir. 2020) ................................................... 27

*Thunder Basin Coal Co. v. Reich*,
 510 U.S. 200 (1994) ......................................................................... 18

*Tirado v. Montgomery Cty.*,
 No. 12-00552, 2013 WL 1285487 (E.D. Pa. Mar. 29, 2013) ............... 29

*United States v. Bond*,
 173 Fed. App'x 144 (3d Cir. 2006) ......................................... 16, 22, 27

*United States v. Menon*,
   24 F.3d 550 (3d Cir. 1994).................................................................. 16, 23, 24, 31

*United States v. Mitchell*,
   652 F.3d 387 (3d Cir. 2011)......................................................................... 11

*United States v. Shakir*,
   616 F.3d 315 (3d Cir. 2010)............................................................... 16, 23, 24

*York v. Kanan*,
   298 A.3d 533 (Pa. Cmwlth. 2023) ................................................................. 8

**Statutes**

18 Pa. C.S. § 913 ........................................................................................ passim

18 Pa. C.S. § 6101 ............................................................................................ 4

18 Pa. C.S. § 6105 .......................................................................................... 14

18 Pa. C.S. § 6106 ..................................................................................... passim

18 Pa. C.S. § 6108 ..................................................................................... passim

18 Pa. C.S. § 6109 ................................................................................ 12, 13, 14, 17

18 Pa. C.S. § 6122 .......................................................................................... 16

22 P.S. § 42 ................................................................................................... 19

22 P.S. § 44 ............................................................................................... 2, 19

22 P.S. § 47 ..................................................................................................... 2

42 Pa. C.S. § 5524 ...................................................................................... 9, 10

42 Pa. C.S. § 8542 ........................................................................................... 7

42 Pa. C.S. § 8541 ........................................................................................... 7

430 Ill. Comp. Stat. Ann. 66/10 (West) ............................................................. 13

53 P.S. § 16257 ................................................................................................ 4

Ala. Code § 13A-11-75(c)(11)........................................................................... 13

Colo. Rev. Stat. Ann. § 18-12-203(2).................................................................. 13

Conn. Gen. Stat. § 29–28(b)............................................................................... 13

Minn. Stat. Ann. § 624.714 (West) .................................................................. 13

Mont. Code Ann. § 45-8-321(2) .................................................................. 13

N.Y. Penal Law § 400.00 (McKinney) .................................................................. 12

U.S. Const. art. IV. A .................................................................. 23

Wyo. Stat. Ann. § 6-8-104 .................................................................. 13

**Rules**

Fed. R. Civ. P. 8 .................................................................. 5

Fed. R. Civ. P. 12(b) .................................................................. 5, 9

**Other Authorities**

Restatement (Second) of Torts § 266 (1965) .......................................... 30, 31

Restatement (Second) of Torts § 217 (1965) .......................................... 30

Restatement (Second) of Torts § 265 (1965) .......................................... 30, 31, 32

# I.    INTRODUCTION

Andre Boyer has had repeated run-ins with law enforcement due to his poor choices in how he carries a firearm. He lost his license to carry in 2016 for bringing a firearm into a courthouse, which is prohibited by law. Undeterred, he continued to illegally carry a firearm in Philadelphia. This resulted in his arrests in December 2019 and October 2021. Unsurprisingly, as a result the City rejected his 2023 application for a new license to carry.

Now Boyer has filed this lawsuit attempting to invalidate several core provisions of Pennsylvania firearms law and alleging various constitutional and common-law torts against a long list of defendants, including the City of Philadelphia ("City"), Sheriff Rochelle Bilal, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Lieutenant Long, James Poulos, Anthony Glaviano, and Wanda Newsome (collectively, the "City Defendants"). In framing his claims, he summarily alleges that his legal troubles were not the consequences of his own actions, but instead were the product of a vast conspiracy against him due to his publication of a web page critical of the Philadelphia Police Department ("PPD").

As demonstrated below, Boyer fails to state any viable claims against any of the City Defendants. The Court should dismiss his Second Amended Complaint ("SAC").

# II.    BACKGROUND

## A.    Relevant Factual Allegations[1]

Boyer works as an internal investigator and security guard for a private hotel in the City. SAC ¶ 123. Boyer is the sole member of Plaintiff Pennsylvania S.I.T.E.S. Agents, LLC, which operates a referral website for private detectives. *Id.* ¶¶ 126-27. Boyer and his LLC are involved in private detective and security work, including conducting citizens arrests, investigating

---

[1] The City Defendants accept the truth of Boyer's well-pleaded factual allegations for purposes of this pleading only.

complaints, and protecting employees and guests at the hotel. *Id.* ¶¶ 42-43, 123, 126-27. Boyer holds a lethal weapons training certification, otherwise known as an Act 235 certification, under the Lethal Weapons Training Act. *Id.* ¶ 41; *see* 22 P.S. §§ 44, 47.

*Serpico News***.** In 2013, Boyer created "an online news service dedicated to the subject of police corruption" called *Serpico News.* SAC ¶¶ 44-47. Because of his involvement with *Serpico News*, Boyer claims that the PPD, the Philadelphia Office of the Sheriff, and the Fraternal Order of Police Lodge No. 5 ("FOP") view him as "a political enemy." *Id.* ¶¶ 45, 47. Boyer alleges summarily that the FOP "has requested of, and formed agreements with, the Defendants (or with any of them) to engage in a pattern of personal animus against Boyer and . . . to repeatedly look for any pretext to violate his rights." *Id.* ¶ 47.

*2016 License Revocation***.** Prior to 2016, Boyer held a license to carry firearms under the Pennsylvania Uniform Firearms Act ("UFA"). SAC ¶ 49. The City revoked this license in 2016 after Boyer unlawfully carried his firearm into a courthouse. *Id.* ¶ 50 & Ex. D. Although Boyer challenged the revocation, the Philadelphia Board of License & Inspection Review, the Philadelphia Court of Common Pleas, and the Commonwealth Court affirmed the revocation, making it a final order.[2] *Id.* ¶¶ 51, 93; *Boyer v. City of Phila. Bd. of License & Inspection Rev.*, 1773 C.D. 2017, 2018 WL 6836112 (Pa. Cmwlth. Dec. 31, 2018). Boyer concedes he has not been re-issued a UFA firearm license. Even so, Boyer has continued to carry firearms in public. *See, e.g.*, SAC ¶¶ 74-77, 80.

*December 2019 Incident***.** On December 5, 2019, Boyer went to the 35th Police District

---

[2] Boyer takes issue with the evidence presented in that hearing, the Board's findings, and the manner in which the hearing was conducted, however, such allegations are a collateral attack on those state court proceedings and improperly raised in this venue. *See, e.g.*, *In re Highway Truck Drivers & Helpers Loc. Union No. 107*, 888 F.2d 293, 298-99 (3d Cir. 1989) (valid state court judgment entitled to full faith and credit).

Headquarters to "surrender property," then began to record a *Serpico News* video in the lobby. *Id.* ¶ 60. At that time, Defendant PPD Sgt. O'Shaughnessy saw Boyer with a gun in his holster. *Id.* ¶¶ 61-62. In response, Sgt. O'Shaughnessy or "someone acting on his behalf" obtained an arrest warrant, executed on December 6, 2019, by Defendants PPD Lt. Long and PPD Det. Wallace, who also seized Boyer's cell phone. *Id.* ¶¶ 62, 64-66. Defendants PPD Detectives Glaviano and Poulos executed a search warrant for Boyer's home, also based on Sgt. O'Shaughnessy's affidavit. *Id.* ¶ 69. Boyer does not allege they seized any property.

On December 7, 2019, Boyer was charged with violating 18 Pa. C.S. § 6108, prohibiting persons from carrying a firearm on the public streets or any public property in Philadelphia without a license. SAC ¶ 70. After a municipal court judge dismissed this charge for lack of prosecution, the Philadelphia District Attorney's Office ("DAO") refiled charges, at which point unnamed officers arrested Boyer and confiscated his firearm. *Id.* ¶¶ 78-80. On March 15, 2023, a municipal court judge entered judgment in Boyer's favor for unstated reasons. *Id.* ¶ 81.

***March 2021 Arrest.*** On March 12, 2021, unknown officers arrested Boyer after a dispute with a member of a public at the Boyer's place of employment, and he was charged with simple assault. *Id.* ¶¶ 72-73. The charges were dismissed for unstated reasons. *Id.* ¶ 73.

***October 2021 CJC Incident.*** On October 19, 2021, Boyer went to the Criminal Justice Center ("CJC") to testify in a case. *Id.* ¶ 74. Boyer arrived at the CJC with a holstered firearm, which he checked in the CJC gun locker. *Id.* ¶¶ 75-76. When Boyer went to retrieve his firearm, Defendant O'Leary, a Philadelphia Sheriff's Office lieutenant, asked whether Boyer had a license to carry. *Id.* ¶ 77. When Boyer responded that he had only an Act 235 certification, Lt. O'Leary arrested Boyer and seized his firearm. *Id.* ¶ 77. It is unclear from Boyer's allegations if he was prosecuted as a result.

*2023 Application Denial.* In 2023, Boyer applied for a UFA firearm license, which was denied pursuant to a notice signed by Defendant PPD Lt. Newsome with the Gun Permit Unit. *Id.* ¶¶ 91-92 & Ex. E. The stated reason for denial was that Boyer's "character and reputation [was] such that the individual would be likely to act in a manner dangerous to public safety." *Id.* ¶ 93. The notice cited Boyer's multiple arrests for violating the UFA, his arrest for simple assault, and the 2016 affirmance of his license revocation by the Court of Common Pleas. *Id.*

### B.    Procedural History

Boyer initially filed the instant suit on July 27, 2023, against the City, the DAO, DA Lawrence S. Krasner, the Office of the Sheriff, Sheriff Rochelle Bilal, Pennsylvania Attorney General Michelle A. Henry, State Police Commissioner Robert Evanchick, the FOP, Marcus O'Shaughnessy, Lloyd O'Leary, Frank T. Wallace, Lieutenant Long, James Poulos, Anthony Glaviano, and Wanda Newsome. Boyer amended his complaint twice, in the process adding, changing, and removing parties. *See* ECF Nos. 9, 18. The operative SAC is brought on behalf of Boyer and Pennsylvania S.I.T.E.S. Agents, LLC against the City of Philadelphia, the Office of the Sheriff,[3] Sheriff Rochelle Bilal, Marcus O'Shaughnessy, William O'Leary, Frank T. Wallace, Lieutenant Long, James Poulos, Anthony Glaviano, Wanda Newsome, the DAO, DA Krasner, and the FOP. The lawsuit seeks declaratory and injunctive relief, as well as damages.

The following claims in the SAC are brought against one or more of the City Defendants:

- **Counts 1 & 2**: Boyer brings these § 1983 claims for declaratory and injunctive relief against the City and Sheriff Bilal, challenging the constitutionality of certain provisions of the UFA (18 Pa. C.S. §§ 6101 et seq.) and 18 Pa. C.S. § 913.

- **Count 6:** Boyer brings a § 1983 claim for damages against the City, Sgt. O'Shaughnessy,

---

[3] Boyer named the Philadelphia Sheriff's Office as a defendant, but the Sheriff's Office is a department of the City and not a separate legal entity subject to suit. *See* 53 P.S. § 16257; *Russell v. City of Phila.*, 428 Fed. Appx. 174, 177 (3d Cir. 2011). The Sheriff's Office should accordingly be dismissed as a defendant.

Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, Det. Glaviano, and Lt. Newsome for allegedly violating his right to be free from retaliation under the First Amendment to the U.S. Constitution.

- **Count 7**: Boyer brings a § 1983 claim for damages against City, Sgt. O'Shaughnessy, Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, Det. Glaviano, and Lt. Newsome for allegedly violating his rights under the Second Amendment to the U.S. Constitution.

- **Count 8**: Boyer brings a § 1983 claim for damages against the City, Sgt. O'Shaughnessy, Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, Det. Glaviano, and Lt. Newsome for allegedly violating his right to be free from unreasonable seizures under the Fourth Amendment to the U.S. Constitution.

- **Counts 9 & 10:** Boyer brings § 1983 and state-law malicious prosecution claims for damages against the City (§ 1983 claim only), Sgt. O'Shaughnessy, Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, and Det. Glaviano.

- **Count 11**: Boyer brings a § 1983 *Monell* claim against the City for alleged constitutional violations based on theories of a failure to train, supervise, and discipline.

- **Counts 12-14:** Boyer brings state-law trespass-to-chattels, assault-and-battery, and false imprisonment claims for damages against Sgt. O'Shaughnessy, Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, and Det. Glaviano.

The City Defendants move to dismiss these claims under Fed. R. Civ. P. 12(b)(1) and (b)(6).

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the allegations contained in a Complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where a complaint fails to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6) permits dismissal of the complaint.

When considering such a motion, the Court examines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is insufficient to allege "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Instead, a

plaintiff must provide fair notice of the nature of the claim and the grounds on which the claim or entitlement to relief rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* Put differently, the Court should not credit a plaintiff's "bald assertions" or "legal conclusions." *Anspach v. City of Phila.*, 503 F.3d 256, 260 (3d Cir. 2007).

The U.S. Court of Appeals for the Third Circuit has distilled the *Twombly* and *Iqbal* standards into a three-part analysis. First, "the court must take note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121,130 (3d Cir. 2010) (cleaned up). Second, "the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* In analyzing a complaint, a court should accept all well-pled factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## IV.   ARGUMENT

Boyer's voluminous complaint alleges numerous constitutional and state tort violations against the City Defendants in Counts 1, 2, and 6-14, all of which fail as a matter of law. *First*, the individual City Defendants are immune from the state law tort claims (Counts 10, 12-14) under the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"). *Second*, many of Boyer's allegations fall outside the two-year statute of limitations. *Third*, Boyer's challenges to the UFA and 18 Pa. C.S. § 913 (Counts 1, 2, and 7) fail because both statutes are facially constitutional under recent Second Amendment precedent; the City Defendants properly exercised their authority to enforce these statutes; and Boyer has not adequately pled Equal Protection or Due Process violations. *Fourth*, Boyer fails to state a First Amendment retaliation

claim (Count 6) because he cannot plausibly allege that his protected activity was the but-for cause of the claimed retaliation. *Fifth*, Boyer cannot plead a Fourth Amendment claim (Count 8) because the alleged seizures were consistent with well-established exceptions to the warrant requirement. *Sixth*, Boyer fails to state a claim for malicious prosecution or false imprisonment (Counts 9, 10, 14) because none of the individual City Defendants is a prosecutor and probable cause existed for all arrests and prosecutions. *Seventh*, Boyer fails to plead a municipal policy or custom as required to hold the City liable under *Monell* (Count 11). *Eighth*, Boyer fails to state a claim for trespass to chattels (Count 12) because all seizures were pursuant to lawful authority. *Ninth*, Boyer fails to plead any facts relevant to his claim for assault and battery (Count 13). *Tenth*, Boyer's derivative conspiracy claims fail for lack of any concrete allegations of conspiracy. *Finally*, the individual City Defendants have qualified immunity from any constitutional claims because at all times alleged, there was no precedent holding the UFA unconstitutional.

### A.    Individual City Defendants are immune from state law claims under the Pennsylvania Political Subdivision Tort Claims Act (Counts 10, 12-14).

The Court should dismiss Counts 10 and 12-14 because the individual City Defendants have absolute immunity to liability under the Tort Claims Act, 42 Pa. C.S. §§ 8541-64.

Under the Tort Claims Act, a municipality is absolutely immune from civil tort liability except for nine enumerated categories of negligence not relevant here. 42 Pa. C.S. §§ 8541, 8542. A municipal employee acting within the scope of her duties generally shares the same immunity from civil tort liability as her employing municipality, unless "it is judicially determined that the act of the employee caused the injury and that such act constituted crime, actual fraud, actual malice, or willful misconduct." *Id.* §§ 8545, 8550. In "cases involving police conduct, a jury verdict that a police officer committed an intentional tort, by itself, is insufficient

to establish 'willful misconduct.'" *Petit v. Namie*, 931 A.2d 790, 801 (Pa. Cmwlth. 2007). Instead, "the question of tort liability and willful misconduct must be posed and answered separately." *York v. Kanan*, 298 A.3d 533, 546 (Pa. Cmwlth. 2023). As a result, willful misconduct under the Tort Claims Act functionally "means 'willful misconduct aforethought'": did the municipal employee *intend* to commit a wrongful act. *Petit*, 931 A.2d at 801; *accord Kuzel v. Krause*, 658 A.2d 856, 860 (Pa. Cmwlth. 1995).

Here, Boyer alleges that Defendants Sgt. O'Shaughnessy, Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, and Det. Glaviano are liable for malicious prosecution under Pennsylvania law (Count 10), trespass to chattels (Count 12), assault and battery (Count 13), and false imprisonment (Count 14). But all allegations naming these Defendants involve conduct taken within the scope of their duties. *See* SAC ¶¶ 61-62, 64-65, 69-70, 77. Moreover, even though all four counts concern intentional torts, Boyer has not made any plausible allegation that these Defendants engaged in willful misconduct by *intending* to commit these torts. *See Renk v. City of Pittsburgh*, 641 A.2d 289, 293-94 (Pa. 1994) (holding that assault and battery and false imprisonment are not *per se* willful misconduct); *York*, 298 A.3d at 546 (same, for malicious prosecution); *Madero v. Luffey*, 549 F. Supp. 3d 435, 448 (W.D. Pa. 2021) (same, for trespass to chattels). Instead, Boyer makes only conclusory and vague allegations of animus insufficient to allege an intent by each named Defendant to act without legal authority. *See, e.g.*, *Renk*, 641 A.2d at 293-94 (explaining that willful misconduct for false arrest requires proving that the officer "deliberately arrest[ed] a person knowing that he lacked probable cause to do so"). Indeed, to the extent Boyer's SAC presents any relevant allegation, it demonstrates that the named Defendants had legal authority for each of their interactions with Boyer.

Because Boyer has not alleged that the Defendants named in Counts 10 and 12-14 took

action outside the scope of their duties or engaged in willful misconduct, the Court should dismiss those Counts as barred by the Tort Claims Act.

**B.      Many of Boyer's allegations are time-barred.**

Many of the allegations presumably implicated by Counts 1, 2, 6-8, and 11-14 are barred on their face by the relevant statute of limitations.

A statute of limitations defense may be raised by a Rule 12(b)(6) motion if the untimeliness is apparent on the face of the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The "statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose"—which is two years in Pennsylvania. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing 42 Pa. C.S. § 5524(2)). This limitations period applies to claims for damages and claims for declaratory and injunctive relief. *See Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 184-85 (3d Cir. 1997) (declaratory relief); *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 337 (3d Cir. 2004) (injunctive relief). A § 1983 cause of action accrues "when the plaintiff knew or should have known of the injury upon which its action is based," which is "usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634. The Pennsylvania statute of limitations for assault, battery, false imprisonment, and trespass to chattels is also two years. 42 Pa. C.S. § 5524(1), (7). In Pennsylvania, a "statute of limitations begins to run as soon as the right to institute and maintain a suit arises," which is generally the date the injury is inflicted. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005).

Because Boyer first filed his complaint on July 27, 2023, any event preceding July 27, 2021, is outside the statute of limitations. These events are: (1) the 2016 revocation of Boyer's UFA license, SAC ¶¶ 50-51; (2) the December 6, 2019, arrest of Boyer and seizure of his cell phone by Det. Wallace and Lt. Long, *id.* ¶¶ 61-65; (3) the 2019 search of Boyer's home by Det. Glaviano and Det. Poulos, *id.* ¶ 69; and (4) the March 12, 2021, arrest of Boyer by unnamed

officers, *id.* ¶¶ 72-73. These events cannot support constitutional claims (Counts 1, 2, 6-8) or state claims for trespass to chattels, assault and battery, or false imprisonment (Counts 11-14). The Court should dismiss Boyer's claims premised on these events as time barred. *See Kach*, 589 F.3d at 634; 42 Pa. C.S. § 5524(1), (7).

### C.     Counts 1, 2, and 7 (pertaining to the UFA, state law barring guns from courthouses, and the Second Amendment) should be dismissed.

Although Counts 1, 2, and 7 are not clearly drafted, they appear to primarily raise Second Amendment challenges under § 1983, while potentially incorporating other constitutional issues mentioned elsewhere in the SAC. Count 1 alleges both facial and as-applied challenges (without specifying what constitutional provision is at issue) to the UFA licensing requirements, the grounds for denying or revoking a license, and the (alleged) lack of a procedure to restore one's license after a prior revocation. *Id.* ¶ 161. Count 2 challenges 18 Pa. C.S. § 913, which prohibits firearms in courthouses. *Id.* ¶ 164. And Count 7 generally claims that the City, the FOP, and the individual defendants violated Boyer's Second Amendment rights. *Id.* ¶ 180.

Below, City Defendants first address the Second Amendment challenges (both facial and as-applied), and then address Boyer's other potential constitutional allegations. The facial challenges fail because the Supreme Court's recent decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) expressly held that licensing and sensitive places laws like those Boyer challenges here are presumptively constitutional. In addition, his allegation that the UFA provides no means to restore one's license once revoked is an incorrect reading of that law. The as-applied challenges fail because some of the incidents alleged are time-barred, and the remainder were valid enforcement actions justified by facts pled in the Complaint itself.[4]

---

[4] These are sufficient reasons to dismiss his claims without undertaking the extensive historical analysis called for under *Bruen*, which would likely require expert analysis regarding

      1.      **Boyer's facial challenges in Counts 1 and 2 fail because shall-issue licensing and sensitive places laws, such as Pennsylvania's, are facially constitutional.**

The City Defendants join and expand upon the DAO's argument that Pennsylvania's licensing requirements and sensitive spaces law are presumptively lawful post-*Bruen*. *See* ECF No. 21 at 9-13. "A party asserting a facial challenge must establish that no set of circumstances exists under which the Act would be valid." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (internal quotation marks omitted). Here, the Supreme Court has expressly upheld shall-issue licensing requirements such as Pennsylvania's, as well as laws barring guns in courthouses. Thus, Boyer's facial attack on the UFA and 18 Pa. C.S. § 913 fail as a matter of law.

*First*, regarding Count I's challenge to the UFA, the *Bruen* Court carefully noted that its decision was not intended to cast doubt on the constitutionality of shall-issue licensing regimes such as Pennsylvania's, which are "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *See* 597 U.S. at 38 n.9 ("To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes[.]"); *see also id.* at 72 (Alito, J., concurring); *id.* at 79 (Kavanaugh, J., concurring).

Recently, the U.S. Court of Appeals for the Second Circuit rejected a facial challenge to New York's firearms licensing regime, finding that *Bruen*'s clear support for shall-issue licensing laws such as New York's (and Pennsylvania's) obviated the need for a full historical analysis. *Antonyuk v. Chiumento*, -- F.4th --, 2023 WL 8518003, at *22 (2d Cir. Dec. 8, 2023). At issue was New York's requirement that licensees possess "good moral character," which state law defined as "having the essential character, temperament and judgement necessary to be

---

historical laws and context. Nonetheless, in the event that these claims are allowed to proceed, the City is prepared to present a full defense.

entrusted with a weapon and to use it only in a manner that does not endanger oneself or others."
*Id*. at *21 (quoting N.Y. Penal Law § 400.00 (McKinney)). Examining *Bruen*'s discussion of
shall-issue licensing regimes, the court noted there was "widespread agreement . . . that
restrictions forbidding dangerous individuals from carrying guns comport with 'this Nation's
historical tradition of firearm regulation[.]'" *Id*. at *23 (quoting *Bruen*, 597 U.S. at 17). Finding
that New York's "character" requirement was a proxy for dangerousness, the Second Circuit
concluded that it was constitutional on its face because "at least some possible applications of the
character requirement would not violate the Constitution[.]" *Id*. at 24.

Like New York's "good moral character" requirement, the UFA's "character and
reputation" requirement is plainly intended to prevent dangerous individuals from obtaining a
firearms license. *See* 18 Pa. C.S. § 6109 (requiring investigation whether "the applicant's
character and reputation are such that the applicant will not be likely to act in a manner
dangerous to public safety"). Although Boyer takes issue with certain aspects of Pennsylvania's
licensing law—such as the requirement of a license to carry in Philadelphia or a vehicle, the fact
that the UFA does not exclude holders of an Act 235 certificate from its licensing requirement,
SAC ¶ 161(a), (b), (c), (g)—the discussion in *Bruen* makes clear that licensure requirements are
not per se unlawful, and that shall-issue states are free to set reasonable conditions on the
issuance of firearms licenses to ensure that dangerous individuals are not allowed to carry. 597
U.S. at 389 n.9; *see also id*. at 80 (Kavanaugh, J., concurring) (noting that "constitutionally
permissible" shall-issue regimes "may require a license applicant to undergo fingerprinting, a
background check, a mental health records check, and training in firearms handling and in laws
regarding the use of force, among other possible requirements"). None of the aspects that Boyer
challenges represent the kind of unusual burden on Second Amendment rights that would

differentiate Pennsylvania's licensure rules from other presumptively lawful shall-issue states.

In particular, though Boyer argues that the criteria for revoking a license should be limited to conduct resulting in a criminal conviction (and not "merely" conduct indicating that an individual poses a public safety risk), SAC ¶ 161(d)-(f), Pennsylvania's standard is by no means an outlier. Many of the shall-issue jurisdictions listed in *Bruen* footnote 1 allow a licensing authority to deny a gun permit if an applicant's past conduct demonstrates they are likely to pose a danger to themselves or others.[5] For example, the Supreme Court approved of Connecticut's "suitable person" requirement, Conn. Gen. Stat. § 29–28(b), which has been interpreted by state courts as allowing denial of a license only to "individuals whose conduct has shown them to be lacking the essential character of temperament necessary to be entrusted with a weapon." *Dwyer v. Farrell*, 475 A.2d 257, 260 (Conn. 1984) (quoted in *Bruen*, 597 U.S. at 13 n.1). This standard is closely analogous to the UFA's prohibition on issuing a license to "[a]n individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety," 18 Pa. C.S. § 6109(e)(1)(i) & (i). Pennsylvania's run-of-the-mill, "shall-issue"

---

[5] *See, e.g.*, Ala. Code § 13A-11-75(c)(11) (allowing denial if applicant "[c]aused or causes justifiable concern for public safety"); Colo. Rev. Stat. Ann. § 18-12-203(2) (sheriff may deny application if "documented previous behavior by the applicant makes it likely the applicant will present a danger to self or others"); 430 Ill. Comp. Stat. Ann. 66/10 (West) (allowing issuance of license only to applicant who "does not pose a danger to himself, herself, or others, or a threat to public safety"); Minn. Stat. Ann. § 624.714 (West) (allowing denial where "there exists a substantial likelihood that the applicant is a danger to self or the public"); Mont. Code Ann. § 45-8-321(2) (allowing denial where "the sheriff has reasonable cause to believe that the applicant… may be a threat to the peace and good order of the community[.]"); N.D. Cent. Code Ann. § 62.1-04-03 (West) (allowing denial if authority "has reasonable cause to believe that the applicant or license holder has been or is a danger to self or others as demonstrated by evidence[.]"); Wyo. Stat. Ann. § 6-8-104 (allowing denial if "applicant has been or is reasonably likely to be a danger to himself or others, or to the community at large… as demonstrated by a past pattern or practice of behavior[.]").

licensing regime is presumptively lawful under *Bruen*.[6]

Lastly, although Boyer alleges in Count 1 that the UFA provides no means to restore one's license after a revocation, he misstates the law. SAC ¶ 161(h). Nothing in the UFA prevents an individual from reapplying for a license after having one revoked. Indeed, Boyer's own Complaint reflects that he was able to reapply and the City processed his application in the normal course. *See* SAC ¶¶ 91-93 & Ex. E. Further, nothing in the UFA precludes a licensing authority from issuing a license to someone with a prior revocation, provided that the revocation was not for one of the permanently disqualifying offenses listed in 18 Pa. C.S. § 6105. *See id.* § 6109 (listing grounds for denial). Boyer does not plead facts showing a policy of denials based solely on previous revocations. Indeed, his own license denial was not based solely on the prior revocation; rather, the notice cited his 2019 and 2021 "VUFA Arrest[s]" and his 2021 arrest for assault, in addition to the fact that the earlier revocation had been affirmed on appeal. *See* SAC Ex. E. Accordingly, Boyer fails to state a claim based on this allegation.

*Second*, though Count 2 pleads a facial challenge to the state law making it illegal to carry a firearm into a courthouse, 18 Pa. C.S. § 913, Boyer lacks standing to challenge that law, and further, *Bruen* endorsed sensitive-places laws like § 913. As a threshold matter, Boyer lacks standing, as he does not allege that he intends to violate that law again. A plaintiff raising a pre-enforcement challenge must allege that "he intends to do something arguably protected by the Constitution, but arguably barred by the regulation, and that he faces a credible threat of prosecution under the regulation." *Greenberg v. Lehocky*, 81 F.4th 376, 385 (3d Cir. 2023). Although Boyer had his UFA license revoked for violating § 913 in 2016 (well beyond the

---

[6] The Supreme Court is expected to give further guidance on the standards for disarming dangerous individuals in *United States v. Rahimi*, No. 22-915 (U.S.), which was argued on November 7, 2023.

statute of limitations), he does not allege that he intends to do so in the future. On the contrary, the SAC alleges that he "intend[s] to surrender possession of his firearm to government authority while entering a courthouse or government building[.]" ¶ 149.

But further, the *Bruen* Court also expressly reaffirmed *Heller*'s discussion of "longstanding" laws barring firearms from sensitive places "such as schools and government buildings," which laws *Heller* described as "presumptively lawful." *Bruen*, 597 U.S. at 30 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)); *see also Heller*, 554 U.S. at 626-27 & n.26. Indeed, while the *Bruen* Court noted that "the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited," it expressly identified courthouses as one of those historically recognized places. 597 U.S. at 30. The Court then concluded: "We therefore can assume it settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment." *Id.* This crystal-clear holding is binding and dispositive of Boyer's facial challenge to § 913 in Count 2.

> **2.      Boyer's as-applied Second Amendment challenges must fail because the City Defendants acted properly to enforce valid laws.**

Because the City Defendants were merely enforcing presumptively lawful statutes, and because (as shown below) they did so in a lawful manner, Boyer's as-applied challenges are similarly doomed. Although Counts 1, 2, and 7 do not specify the conduct at issue (and Counts 1 and 2 do not cite the applicable constitutional right(s)), presumably these claims involve City Defendants' roles in enforcing the UFA and § 913 against Boyer. *See* SAC ¶ 152.

Boyer alleges four firearms-related incidents: (1) the City's decision in 2016 to revoke Boyer's UFA license, *id.* ¶ 50; (2) Sgt. O'Shaughnessy, Lt. Long, and Det. Wallace's roles in Boyer's 2019 arrest for carrying a firearm without a license, *id.* ¶¶ 61-65; (3) Lt. O'Leary's

October 2021 arrest of Boyer and seizure of his firearm at the CJC, *id.* ¶ 77; and (4) Lt. Newsome's denial of Boyer's 2023 firearms permit application, *id.* ¶¶ 91-93. Only the latter two are not time barred, *see supra* Part III.B; these two remaining allegations involve legitimate enforcement efforts.

*First*, in a § 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."). Sgt. O'Shaughnessy, Lt. Long, Det. Wallace, Det. Glaviano, and Det. Poulos are implicated only in events outside the limitations period, and the latter two are not alleged to have affected Boyer's ability to keep and bear arms. The Court should dismiss Count 7 as to all five of these defendants.

*Second*, Lt. O'Leary's arrest of Boyer and seizure of his firearm at the CJC in October 2021 were valid enforcement actions based on a valid statute, the UFA. It is undisputed that Boyer was carrying a firearm that day despite having lost his license to carry in 2016, and he failed to produce a firearms license when Lt. O'Leary asked. SAC ¶¶ 50, 77. Under the UFA, both open and concealed carry in Philadelphia without a license are prohibited, and failure to produce a license when asked creates a rebuttable presumption of nonlicensure. 18 Pa. C.S. §§ 6106, 6108, 6122. Under the facts as alleged, Lt. O'Leary had probable cause to arrest Boyer for a UFA violation. *See Com. v. Bigelow*, 399 A.2d 392, 396 (Pa. 1979); *United States v. Bond*, 173 Fed. App'x 144, 146 (3d Cir. 2006). Lt. O'Leary also had authority to seize Boyer's firearm under either the plain view exception or the search incident to lawful arrest exception to the Fourth Amendment. *See United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990) (plain view)); *United States v. Shakir*, 616 F.3d 315,

317 (3d Cir. 2010) (search incident to lawful arrest); *see also infra* Part III.E.

> *Finally*, Lt. Newsome's denial of Boyer's 2023 firearms license application did not violate Boyer's Second Amendment rights. Pennsylvania's shall-issue statute, 18 Pa. C.S. § 6109, prohibits the City from issuing a license to anyone who "would be likely to act in a manner dangerous to public safety." The notice of denial cites Boyer's pattern of erratic and unlawful behavior—namely, his repeated and willful violations of the UFA by carrying without a license; the fact that his prior revocation for unlawfully carrying a firearm inside a courthouse was affirmed on appeal; and his 2021 arrest for assault. These incidents illustrate Boyer's clear disdain for Pennsylvania's firearms safety laws, as well as his lack of good judgment regarding proper use of force and where and how he carries a deadly weapon. In light of the "widespread agreement" that the Second Amendment is no bar to disarming individuals who pose a threat to public safety, *Antonyuk*, 2023 WL 8518003 at *24, the City's denial of Boyer's 2023 license application was not unconstitutional.

### 3.   Boyer's Due Process and Equal Protection allegations are legally insufficient.

> In addition to the Second Amendment, Counts I and II could be liberally construed to incorporate earlier allegations citing Due Process (SAC ¶¶ 141-42, 153) and Equal Protection (*id.* ¶¶ 136-38, 153), as these allegations relate to enforcement of the UFA and § 913. However, Boyer has not pled a plausible Due Process or Equal Protection claim.

> For his Due Process allegations, although Boyer vaguely pleads that his 2016 license revocation violated Due Process, the two-year statute of limitations has long since run on that claim. *See supra* Part III.B. But further, for both the 2016 revocation and the 2023 denial of his new application, Boyer received all the process he was due. "Procedural due process requires notice and an opportunity to be heard. A due process violation is "not complete unless and until

the State fails to provide due process." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). The SAC alleges that Boyer was given notice of his license revocation and the opportunity to be heard before the Board of License and Inspection Review. SAC ¶¶ 51-58. Likewise, for his 2023 application, the notice attached to the SAC states the specific reasons for denial and informs him of his right to appeal. *See Id.* Ex. E. Boyer's own admissions are fatal to any Due Process claim.

Boyer also claims it is a Due Process violation for "constitutional rights" to be adjudicated by an administrative body, *Id.* ¶¶ 141-42, but he cites only a concurring opinion in *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 196 (2023) (Thomas, J., concurring), which is a non-controlling, minority viewpoint. The question in *Axon* was not whether administrative bodies could adjudicate core constitutional rights, but whether federal courts have jurisdiction to hear collateral constitutional challenges to administrative agency enforcement schemes. *Id.* at 180-85. The unanimous Court held that federal courts could hear these challenges. But the Court also cited the law of the land holding that Congress may give agencies exclusive jurisdiction to adjudicate certain matters, including those that involve monetary fines, which would touch on the constitutional right to property just as the permitting decision here touched on Boyer's right to bear arms. *Axon*, 598 U.S. at 185-87 (discussing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 205, 212-13 (1994)).

For Equal Protection, despite summarily blaming all of his difficulties with law enforcement on a grand conspiracy against him, Boyer fails to plead the required elements of a selective enforcement claim. To state a claim for selective enforcement, a plaintiff must allege: (1) that he was treated differently than similarly situated individuals, and (2) "that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right." *PG Pub. Co. v. Aichele*,

705 F.3d 91, 115 (3d Cir. 2013) (alteration in original). The plaintiff must allege intentional discrimination, not merely unequal treatment. *Id.*

Here, Boyer does not plausibly allege that similarly situated individuals were treated differently than him. To be similarly situated, the comparators must be alike "in all relevant respects" but need not be identical. *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020). Boyer's allegations do not satisfy this fundamental requirement. For instance, although he alleges he was arrested in October 2021 when Lt. O'Leary observed him carrying a firearm without a license inside the CJC, SAC ¶¶ 74-77, he does not point to any similarly-situated individuals who engaged in equivalent conduct and were not arrested.[7] Without any comparators, Boyer cannot plausibly allege unequal treatment.

The closest Boyer comes to alleging disparate treatment is to allege that holders of an Act 235 certificate are similarly situated to others who are exempted from licensure under the UFA, SAC ¶ 153. This comparison is inapt. The UFA includes certain narrow exceptions, such as for law enforcement or armed forces members, individuals engaged "in the business of manufacturing, repairing, or dealing in firearms," and individuals employed as private security agents—which apply <u>only</u> while the individual is engaged in their relevant duties. *See* 18 Pa. C.S. § 6106(b)(1), (2), (6), (7). By contrast, an Act 235 certificate certifies that an individual employed as a private agent has undergone the requisite firearms training. *See* 22 P.S. §§ 42(b), 44. Act 235 and a UFA license are "separate and complimentary requirements" that serve

---

[7] Similarly, although his claim for "discriminatory enforcement" of 18 Pa. C.S. § 913 (prohibiting firearms in courthouses) based on his 2016 arrest is time-barred, he also fails to identify any similarly situated comparators who were not arrested for similar conduct. SAC ¶ 164. And his complaint about a lack of gun lockers for individuals carrying a firearm without a license (*id.* ¶ 164) is both (a) factually inapposite (he alleges he was able to use the locker, see *id.* ¶ 76), and (b) essentially a dispute with the UFA's requirement of a license to carry rather than with Section 913. The as-applied claim under Count 2 should be dismissed.

different purposes: the UFA to protect public safety, and Act 235 to ensure that private agents

are trained in weapons handling to avoid accidents. *Commonwealth v. Anderson*, 169 A.3d 1092,

1102 (Pa. Super. 2017); *see* DAO Brief, at 5 & n.3, 11 (ECF 21). An Act 235 certificate says

nothing about a person's character and judgment to carry a firearm without creating a public

safety risk. Accordingly, Boyer has not adequately pled an Equal Protection claim.

**D.**     **Boyer has failed to state a claim for First Amendment retaliation (Count 6).**

In Count 6, Boyer claims First Amendment retaliation by the City, Sgt. O'Shaughnessy,

Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, Det. Glaviano, and Lt. Newsome. SAC ¶ 177.

Boyer claims that the named Defendants retaliated against him due to his *Serpico News* website,

where he claims to expose police corruption. *Id.* ¶¶ 44, 47. The only retaliatory action Boyer

alleges is a vague reference to "pretextual arrests" *Id.* ¶ 71. But this allegation fails because, on

the face of the complaint, there was probable cause for all arrests within the limitations period.

"In order to establish a First Amendment retaliation claim, a plaintiff must prove (1) that

he engaged in constitutionally protected activity; (2) that the government responded with

retaliation; and (3) that the protected activity caused the retaliation." *George v. Rehiel,* 738 F.3d

562, 585 (3d Cir. 2013) (internal quotation marks omitted). To prove causation, "a plaintiff must

establish a causal connection between the government defendant's retaliatory animus and the

plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation

marks omitted). It is "not enough to show that an official acted with a retaliatory motive and that

the plaintiff was injured—the motive must *cause* the injury." *Id.* In addition, the motive "must be

a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken

absent the retaliatory motive." *Id.* If a plaintiff alleges a retaliatory arrest, he "must plead and

prove the absence of probable cause for the arrest." *Id.* at 1724.

Boyer's SAC alleges four arrests: (1) on December 6, 2019, by Lt. Long and Det.

Wallace, after Sgt. O'Shaughnessy saw Boyer carrying a firearm after his license was revoked, SAC ¶¶ 61-64, 68; (2) on March 12, 2021, by unnamed officers, *id.* ¶ 73; (3) on October 19, 2021, by Lt. O'Leary after Boyer admitted he did not have a license while carrying a firearm in Philadelphia, *id.* ¶ 77; and (4) in April 2022, by unnamed officers in response to the refiling of the criminal complaint against Boyer based on the December 2019 incident, *id.* ¶¶ 78-80. Only the latter two are within the statute of limitations. *See supra* Part III.B. Neither is sufficient to make out a claim for retaliatory arrest.

*First*, Boyer has not alleged that Det. Glaviano, Det. Poulos, or Lt. Newsome had any involvement in these four arrests. In addition, Sgt. O'Shaughnessy, Lt. Long, and Det. Wallace are implicated only by the time-barred December 2019 arrest. The Court should dismiss Count 6 as to these defendants. *See Iqbal*, 556 U.S. at 676; *Rode*, 845 F.2d at 1207; *Cortlessa v. Cnty of Chester*, No. 04-1039, 2006 WL 1490145, at *7 (E.D. Pa. May 24, 2006). Boyer has also not alleged any custom or policy of retaliatory arrests and so cannot state a claim against the City either. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

*Second*, Boyer has not alleged that any of the named Defendants was responsible for the April 2022 arrest, *Iqbal*, 556 U.S. at 676, or that any of the unnamed officers arrested him because of contemporaneous protected activity on behalf of *Serpico News*, *see Talbert v. Dep't of Corr.*, No. 23-2255, 2023 WL 4873643, at *10 (E.D. Pa. July 31, 2023) (dismissing First Amendment retaliation claim against unnamed persons for failure to show how any "protected activity substantially motivated" retaliation). Nor has Boyer alleged that the unnamed officers lacked probable cause; to the contrary, he pleads that he was arrested pursuant to the refiling of a criminal complaint against him for carrying a firearm in Philadelphia without a license. SAC ¶¶ 78-80; *see* 18 Pa. C.S. § 6108. Accordingly, any First Amendment activity was not a but-for

cause of his arrest. *Nieves*, 139 S. Ct. at 1724.

      *Finally*, Boyer has failed to allege that protected First Amendment activity was the but-for cause of the October 2021 arrest. Boyer does not allege that he was doing anything related to *Serpico News* when he visited the CJC; instead, he was appearing to testify in a case. *Cf.* SAC ¶¶ 74-77. Boyer cannot make out a claim based on retaliation for protected activity if he has not alleged that he was engaging in any protected activity. *See George*, 738 F.3d at 585 ("The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." (internal quotation marks omitted)). Nor does Boyer allege any causal connection between any protected constitutional activity and his arrest by Lt. O'Leary. *See Nieves*, 139 S. Ct. at 1722. Indeed, the SAC does not even allege that Lt. O'Leary, who works for the Sheriff's Office, had any knowledge of *Serpico News* or Boyer's involvement with it. Nor has Boyer alleged that Lt. O'Leary lacked probable cause. *See id.* at 1724. To the contrary, Boyer concedes that he was carrying a firearm without a license and did not provide a license to Lt. O'Leary when asked. SAC ¶¶ 50, 77. The UFA requires a license to carry openly or concealed in Philadelphia, and failure to produce a license when asked creates a rebuttable presumption of nonlicensure. 18 Pa. C.S. §§ 6106, 6108, 6122. Therefore, Boyer has alleged that Lt. O'Leary had probable cause to arrest him, defeating any claim for retaliatory arrest. *Bond*, 173 Fed. App'x at 146; *Bigelow*, 399 A.2d at 396.

      In sum, Boyer has failed to plead that any of the named Defendants arrested him to retaliate against any protected First Amendment activity. Count 6 should be dismissed.

      **E.**     **Boyer has failed to state a claim under the Fourth Amendment (Count 8).**

      In Count 8, Boyer alleges a Fourth Amendment violation by the City, Sgt. O'Shaughnessy, Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, and Det. Glaviano, as well as Lt. Newsome for punitive damages only. SAC ¶ 183 & Wherefore Clause. Boyer claims the

named Defendants "unlawfully seized and continued to seize Boyer's firearm." *Id.* ¶ 183. The Court should dismiss Count 8 because the named Defendants conducted seizures consistent with the Fourth Amendment's exceptions to the warrant requirement.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. art. IV. A seizure "deprives the individual of dominion over his or her person or property." *Horton*, 496 U.S. at 133. Although the general rule is that warrantless seizures are unreasonable, a warrantless seizure of evidence in plain view is constitutional if (1) the officer has not "violated the Fourth Amendment in 'arriving at the place from which the evidence could be plainly viewed'"; (2) "the incriminating character of the evidence" is "immediately apparent"; and (3) the officer has "a lawful right of access to the object itself." *Menon*, 24 F.3d at 559 (quoting *Horton*, 496 U.S. at 136-37). In addition, a warrantless seizure of evidence discovered during a search incident to lawful arrest is constitutional if the evidence is discovered on the arrested person or from the area within his immediate control. *Shakir*, 616 F.3d at 317.

Boyer alleges two seizures of his firearm: (1) on October 19, 2021, after Lt. O'Leary arrested Boyer for carrying without a license, SAC ¶ 77; and (2) in April 2022, after unnamed officers arrested Boyer in response to the refiling of an earlier criminal complaint against him for carrying without a license, *id.* ¶¶ 78-80. Neither seizure violated the Fourth Amendment.

*First*, Boyer has not alleged that Sgt. O'Shaughnessy, Det. Wallace, Lt. Long, Det. Poulos, Det. Glaviano, or Lt. Newsome seized any firearm from Boyer. The Court should dismiss Count 8 as to these defendants. *See Rode*, 845 F.2d at 1207; *Cortlessa*, 2006 WL 1490145, at *7. Boyer has also not alleged any custom or policy of unconstitutional seizures and so also cannot state a claim against the City. *See Brown*, 520 U.S. at 403.

*Second*, the October 2021 seizure of Boyer's firearm was subject to the plain view

exception. Boyer does not allege that Lt. O'Leary was not authorized to be in the CJC or that he did not have lawful view of Boyer's firearm. *See Menon*, 24 F.3d at 559. To the contrary, Boyer pleads that he went to the CJC with "a holstered firearm," checked that firearm "in the facility's gun locker," and later "retrieved his firearm." SAC ¶¶ 75-77. Boyer further concedes that he did not provide a license to Lt. O'Leary when asked. *Id.* ¶¶ 50, 77. Carrying without a license is a criminal offense, and failure to produce a license when asked creates a rebuttable presumption of nonlicensure. 18 Pa. C.S. §§ 6106, 6108, 6122. In this circumstance, the incriminating nature of the firearm is obvious. *See Menon*, 24 F.3d at 559, *Horton*, 496 U.S. at 136-37. As a result, Boyer has failed to allege that Lt. O'Leary's seizure of Boyer's firearm was unconstitutional.

*Finally*, Boyer provides no details about how unnamed officers seized his firearm in April 2022, but it is reasonable to infer that the seizure occurred incident to the arrest mentioned in the same paragraph. *See* SAC ¶ 80. Boyer does not allege that this arrest was unlawful; to the contrary, he pleads that he was arrested due to the refiling of the criminal complaint. *Id.* ¶¶ 78-80; *see* 18 Pa. C.S. § 6108. Pursuant to this lawful arrest, the unnamed officers were entitled to conduct a warrantless search of Boyer's person for weapons and evidence—of which the firearm constitutes both. *See Shakir*, 616 F.3d at 317; *Chimel v. California*, 395 U.S. 752, 763 (1969).

In sum, Boyer has failed to allege that any of the named Defendants unconstitutionally seized his firearms. The Court should dismiss Count 8 against all named Defendants.

### F.   Boyer has failed to state a claim for malicious prosecution or false imprisonment (Counts 9, 10, and 14).

In Counts 9, 10, and 14, Boyer brings malicious prosecution and false imprisonment claims against the City of Philadelphia (Count 9 only), Sgt. O'Shaughnessy, Lt. O'Leary, Det. Wallace, Lt. Long, Det. Glaviano, and Det. Poulos. To bring either a federal or state malicious prosecution claim, however, a plaintiff must allege that each defendant initiated a criminal

proceeding without probable cause. *See, e.g.*, *Allen v. N.J. State Police*, 974 F.3d 497, 504 (3d Cir. 2020) (federal); *Hugee v. Pa. R. Co.*, 101 A.2d 740, 742 (Pa. 1954) (state). Similarly, a state law claim for false imprisonment fails unless a plaintiff can likewise establish that the arresting officers acted without probable cause. *See Renk*, 641 A.2d at 293. Because Boyer has failed to allege that the defendant law enforcement officers (as opposed to a prosecutor) "initiated" a criminal proceeding against him, and because it is evident that probable cause supported Boyer's arrests for carrying in Philadelphia without a license, Boyer's claims must fail as a matter of law.

Boyer alleges four arrests: (1) on December 6, 2019, by Lt. Long and Det. Wallace, pursuant to an arrest warrant based on Sgt. O'Shaughnessy seeing Boyer carry a firearm at the 35th Police District Headquarters, SAC ¶¶ 61-64, 68; (2) on March 12, 2021, by unnamed officers, *id.* ¶ 73; (3) on October 19, 2021, by Lt. O'Leary after Boyer admitted he did not have a UFA license while carrying a firearm in Philadelphia, *id.* ¶ 77; and (4) in April 2022, by unnamed officers in response to the refiling of the criminal complaint against Boyer based on the December 2019 incident, *id.* ¶¶ 78-80. Only the latter two are within the statute of limitations. *See supra* Part III.B. Boyer alleges one criminal prosecution, a single count of 18 Pa. C.S. § 6108 based on the December 2019 arrest for carrying a firearm without a license. SAC ¶¶ 70, 78-81.

*First*, Boyer has not alleged that Det. Glaviano or Det. Poulos had any involvement in any arrests. In addition, Sgt. O'Shaughnessy, Lt. Long, and Det. Wallace were involved in only the December 2019 arrest, which is time-barred. The Court should dismiss Count 14 as to these defendants. *See Iqbal*, 556 U.S. at 676; *Rode*, 845 F.2d at 1207; *Cortlessa*, 2006 WL 1490145, at *7. Boyer has also not alleged any municipal custom or policy of malicious prosecutions or false imprisonments and so cannot state a claim against the City, either. *See Brown*, 520 U.S. at 403.

*Second*, Boyer has not adequately pled a malicious prosecution claim against the named

Defendants because it is the prosecutor, not police, who alone decides whether to initiate a criminal prosecution. Although the decision to bring criminal charges rests solely within the prosecutor's discretion, other individuals may be liable if they "influenced or participated in the decision to institute criminal proceedings." *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014). One way that officers might influence that decision is by supplying false or misleading information such that the officer "interfered with the prosecutor's informed discretion." *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005) (citation and quotation marks omitted); *Gallo v. City of Phila.*, 161 F.3d 217, 220 fn.2 (3d Cir. 1998). Though Boyer alleges that Sgt. O'Shaughnessy obtained an arrest warrant, and Lt. Long and Det. Wallace carried out that warrant, the SAC is devoid of any allegation that these defendants supplied false information to the DAO that caused the prosecutor to bring criminal charges. SAC ¶¶ 59-81. The Court should dismiss Counts 9 and 10 as against the City Defendants.[8]

*Third*, the malicious prosecution claim arising out of the December 2019 arrest fails because, on the face of the complaint, probable cause existed for a 18 Pa. C.S. § 6108 violation. Boyer's conclusory assertion that criminal "proceedings were initiated without probable cause" after his arrest, *see, e.g.*, SAC ¶ 186, does not change that. As Boyer concedes, his license to carry firearms had been revoked years prior, *see id.* ¶ 50, and Sgt. O'Shaughnessy obtained an arrest warrant because he "saw a gun" on Boyer's person, *id.* ¶ 68. Under the UFA, carrying a firearm in Philadelphia without a license is illegal. 18 Pa. C.S. §§ 6106, 6108. That Sgt. O'Shaughnessy did not "inquir[e] whether the item seen was in fact a firearm, whether it was operable as a weapon, or whether Boyer had a license or authorization to carry it," SAC ¶ 62,

---

[8] Boyer alleges that Det. Wallace "made a charging decision and commenced a criminal action against Boyer," SAC ¶ 70, but this is implausible on its face, as Det. Wallace is not a prosecutor and cannot initiate criminal proceedings.

does not change the probable cause analysis. The Pennsylvania Supreme Court has held that the possession of a license is not an element of a § 6108 violation, but rather an affirmative defense that may later be raised by the defendant and which does not vitiate probable cause. *See, e.g.*, *Bond*, 173 Fed. App'x at 146 ("The Pennsylvania courts have interpreted this statute as not requiring the prosecution to prove that the defendant did not have a license for the firearm.") (citing *Bigelow*, 399 A.2d at 396); *see also, e.g.*, *Tarr v. City of Pittsburgh*, 800 Fed. App'x 131, 135 (3d Cir. 2020). To the extent Boyer alleges that the statute is unconstitutional, the unconstitutionality of a criminal statute is also an affirmative defense that does not negate probable cause to arrest. *See, e.g.*, *Davis v. City of Apopka*, 78 F.4th 1326, 1340 (11th Cir. 2023).

*Fourth*, Boyer cannot bring a false imprisonment claim based on the October 2021 arrest. *See* SAC ¶¶ 74-77. As already argued repeatedly above, Boyer concedes that he was carrying a firearm in Philadelphia without a license and did not provide a UFA license to Lt. O'Leary when asked, *id.* ¶¶ 50, 77, which constitutes probable cause of a UFA violation, 18 Pa. C.S. §§ 6106, 6108, 6122; *Bond*, 173 Fed. App'x at 146; *Bigelow*, 399 A.2d at 396. Any malicious prosecution claim based on this incident would similarly fail because probable cause supported the arrest and because Boyer fails to allege that criminal proceedings were in fact initiated.

*Finally*, to the extent that Boyer intends to bring a malicious prosecution claim for the March 12, 2021, arrest, Boyer's allegations are too scant to survive dismissal. *See* SAC ¶¶ 72-73. Boyer has not alleged that any named Defendants participated in the arrest, which is fatal. *See Iqbal*, 556 U.S. at 676; *Rode*, 845 F.2d at 1207; *Cortlessa*, 2006 WL 1490145, at *7. Boyer also fails to allege sufficient facts to understand the contours of the incident, let alone facts raising a plausible inference that he was charged maliciously and without probable cause.

In sum, Boyer has failed to plead that the City Defendants are liable for malicious

prosecution or false imprisonment, and the Court should dismiss Counts 9, 10, and 12.

       **G.**       **Boyer has failed to state a claim for *Monell* liability (Count 11).**

In Count 11, Boyer alleges in a conclusory fashion that the City of Philadelphia "ha[s] failed to train, discipline, or supervise their respective officers, employees or agents under circumstances evidencing a reckless indifference to the rights of others." SAC ¶ 193. It is well established, however, that "[f]or municipal liability to attach, the plaintiff must prove *both*" (1) an underlying violation of his or her constitutional rights *and* (2) "that municipal liability is warranted under a *Monell* analysis." *J.H. v. City of Phila.*, No. 06-2220, 2008 WL 3983269, at *8 (E.D. Pa. Aug. 19, 2008) (emphasis added). To satisfy the second prong, the plaintiff must prove that his rights "were 'violated as a result of a municipal policy or custom of deliberate indifference' to the rights of its citizens." *Beswick v. City of Phila.*, 185 F. Supp. 2d 418, 427 (E.D. Pa. 2001) (quoting *Simmons v. City of Phila.*, 947 F.2d 1042, 1064 (3d Cir. 1991)). To establish deliberate indifference, a plaintiff must demonstrate considerably more proof than a single incident. *See Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

*First*, Boyer has failed to set forth even a single other instance in which an individual was subjected to the same constitutional harms as him, let alone under similar circumstances. *See, e.g., Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (affirming dismissal of a *Monell* claim where the "[a]ppellant d[id] not allege a history of similar problems at the fire department" to those that the appellant faced); *Boyd v. City of Phila.*, No. 17-3195, 2020 WL 1531454, at *16 (E.D. Pa. Mar. 31, 2020) (dismissing *Monell* claim where the plaintiff's allegations were "unsupported by any specific examples of similar conduct that would suggest such a pattern or practice"). Boyer does not identify any other individual who was (allegedly) subjected to false arrest or malicious prosecution under similar circumstances to him. He does not identify similar alleged violations of other individuals' First or Fourth Amendment rights. Absent any allegations

indicating a pattern of deliberate indifference, dismissal of Boyer's municipal-liability claim is warranted. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).

*Second*, although Boyer also recites boilerplate language regarding failures to "train," "supervise," and/or "discipline," this cannot save Boyer's claim from dismissal. To start, Boyer's "conclusory allegations of failure to train are deficient . . . because [Boyer has] alleged nothing suggesting a failure to train," *Harper v. Cty. of Delaware*, 779 F. App'x 143, 147 (3d Cir. 2019), and Boyer has failed to "specify the particular manner in which such training supposedly fell short," *Castillo-Perez v. City of Elizabeth*, No. 11-6958, 2014 WL 1614845, at *7 (D.N.J. Apr. 21, 2014). The same is true with respect to Boyer's allegations regarding a failure to supervise or discipline or to enact unspecified policies. *See, e.g.*, *Tirado v. Montgomery Cty.*, No. 12-00552, 2013 WL 1285487, at *8 (E.D. Pa. Mar. 29, 2013) (dismissing failure-to-supervise claim where "the Complaint contains no facts related to the supervision of [particular employees] other than the conclusory statements that Montgomery County did not properly train or supervise"). Nor does he allege the requisite showing of patterns of constitutional misconduct sufficient to put the policymaker on notice of the alleged training, supervision, or discipline deficiencies. *See, e.g.*, *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998).

Accordingly, Boyer's *Monell* claim based on these theories is legally flawed and the Court should dismiss Count 11.

### H.    Boyer has failed to state a claim for trespass to chattels (Count 12).

In Count 12, Boyer alleges that Sgt. O'Shaughnessy, Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, and Det. Glaviano are liable for trespass to chattels because they seized Boyer's firearm, ammunition, and cell phone. SAC ¶ 197. The Court should dismiss Count 12 because Boyer has failed to allege the elements of this claim against the named Defendants.

The elements of trespass to chattel are "intentionally: (a) dispossessing another of the

chattel or (b) using or intermeddling with a chattel in the possession of another." *Rosemont Taxicab Co. v. Philadelphia Parking Auth.,* 327 F. Supp. 3d 803, 828 (E.D. Pa. 2018) (quoting Restatement (Second) of Torts § 217 (1965)) (citing *Pestco, Inc. v. Associated Prod., Inc.*, 880 A.2d 700, 708 (Pa. Super. 2005)). A person is "privileged to commit an act which would otherwise be a trespass to a chattel" if acting pursuant to a valid court order or to authority created by law. Rest.2d Torts §§ 265, 266.

Boyer alleges three seizures of property: (1) his cell phone on December 6, 2019, by Lt. Long and Det. Wallace, incident to executing an arrest warrant, SAC ¶¶ 61-66, 68; (2) his firearm on October 19, 2021, by Lt. O'Leary after Boyer admitted he did not have a UFA license while carrying a firearm in Philadelphia and Lt. O'Leary arrested him, *id.* ¶ 77; and (3) his firearm in April 2022, by unnamed officers who arrested Boyer in response to the refiling of a criminal complaint against Boyer for carrying a firearm in Philadelphia without a UFA license, *id.* ¶¶ 78-80. Boyer concedes that all property was returned to him on May 8, 2023. *Id.* ¶ 89. As a result, Boyer can only pursue tort liability for the temporary dispossession of his property. But the SAC fails to allege the elements of liability for any of the incidents.

*First*, Boyer has not alleged that Sgt. O'Shaughnessy, Det. Poulos, or Det. Glaviano seized anything. The Court should dismiss Count 12 as to those defendants.

*Second*, Boyer has not alleged any facts to suggest that Det. Wallace and Lt. Long lacked legal authority to seize Boyer's cell phone in December 2019. To the contrary, Boyer concedes that Det. Wallace and Lt. Long arrested Boyer pursuant to an arrest warrant, *id.* ¶¶ 62-65, and law enforcement are permitted to seize cell phones incident to a lawful arrest, *Riley v. California*, 573 U.S. 373, 403 (2014). Boyer does not allege any facts to suggest that the arrest warrant lacked probable cause or was otherwise unlawful; to the contrary, he pleads that Sgt.

O'Shaughnessy or another unnamed person obtained the arrest warrant "on the basis of briefly viewing a firearm in a holster," and Det. Wallace and Lt. Long executed that warrant. SAC ¶¶ 62, 64; *see also* 18 Pa. C.S. § 6108; *Bigelow*, 399 A.2d at 396; *Com. v. Romero*, 673 A.2d 374, 377 (Pa. 1996). As a result, Det. Wallace and Lt. Long are subject to the exception permitting trespass to chattel when acting with legal authority. Rest.2d Torts §§ 265, 266.

The same analysis governs the alleged seizure of Boyer's firearm by unnamed officers in April 2022, which by inference was incidental to Boyer's arrest following the refiling of criminal charges for the December 2019 violation of § 6108. SAC ¶ 80. Boyer has not alleged that any of the named Defendants participated in the seizure, which is fatal.

*Third*, Boyer has not alleged facts to suggest Lt. O'Leary lacked legal authority to seize his firearm in October 2021. Boyer concedes that he was carrying a firearm in the CJC without a license and that he did not provide a license to Lt. O'Leary when asked. SAC ¶¶ 50, 77. As established above, these facts confirm that Lt. O'Leary had probable cause to arrest Boyer. 18 Pa. C.S. §§ 6106, 6108, 6122; *Bigelow*, 399 A.2d at 396; *Romero*, 673 A.2d at 377. Lt. O'Leary further had authority to seize the firearm under the plain view exception to the Fourth Amendment. *See Menon*, 24 F.3d at 559, *Horton*, 496 U.S. at 136-37. And, this alleged trespass was subject to the exception for legal authority. Rest.2d Torts § 265.

*Finally*, Boyer argues that because "the seizure was not authorized by a constitutional statute, the foregoing Defendants were without privilege to interfere in Boyer's continued possession, ownership, and enjoyment of his property." SAC ¶ 199. This legal argument merely repackages his arguments in Count 1. Moreover, the UFA was constitutional at all times during the events covered by Boyer's complaint. The named Defendants cannot have committed a tort when operating pursuant to lawful statutory authority. *See Madero v. Luffey*, 439 F.Supp.3d 493,

31

517 (W.D. Pa. 2020), *clarified on denial of reconsideration*, No. 19-700, 2020 WL 9815453 (W.D. Pa. Mar. 13, 2020) (citing Rest.2d Torts, § 265).

In sum, Boyer has failed to allege that any of the named Defendants trespassed on his chattels. The Court should dismiss Count 12 against all named Defendants.

## I.  Boyer has failed to state a claim for assault and battery (Count 13).

In Count 13, Boyer alleges that Sgt. O'Shaughnessy, Lt. O'Leary, Det. Wallace, Lt. Long, Det. Poulos, and Det. Glaviano are liable for assault and battery for "having placed Boyer in apprehension of harmful or offensive contact and did, in fact, engage in harmful or offensive contact." SAC ¶ 203. As Boyer has failed to allege any facts of assault and battery against any of these individuals, this Count should be dismissed in full.

Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk*, 641 A.2d at 293; *see also, e.g.*, *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) ("A battery is defined as a 'harmful or offensive contact' with the person of another."). Boyer does not allege that Sgt. O'Shaughnessy, Det. Poulos, or Det. Glaviano had *any* physical contact with Boyer whatsoever. *See, e.g.*, SAC ¶ 69 (alleging that Det. Poulos and Det. Glaviano searched Boyer's home and personal effects); *id.* ¶¶ 62, 69 (alleging that Sgt. O'Shaughnessy did not himself place Boyer under an arrest but rather executed an affidavit of probable cause). While Boyer alleges that Det. Wallace, Lt. Long, and Lt. O'Leary arrested him, Boyer does not allege that any force was used or that he sustained any injury. Where officers effectuating an arrest "d[o] not utilize excessive force," let alone *any* force at all, a "[p]laintiff's assault and battery claim fails under Pennsylvania law." *Devine v. Middletown Twp.*, No. 14-1072, 2016 WL 4159436, at *9 (E.D. Pa. Aug. 4, 2016); *see also Renk*, 641 A.2d at 293 (holding that where there is "no finding of

excessive force by the officers . . . there can be no claim for liability for assault and battery");
*Postie v. Frederick*, No. 14-317, 2016 WL 4521855, at *7 (M.D. Pa. Aug. 8, 2016) ("Postie's
assault and battery claim against Sinton fails because there are no allegations in the second
amended complaint that he was actually injured during the arrest."). Accordingly, Boyer's
assault and battery claim should be dismissed in full against the City Defendants.

> **J.**    **Boyer's derivative conspiracy claims fail as a matter of law (Counts 12-14).**

In Counts 12-14, Boyer seeks to hold one or more of the City Defendants liable not only
for directly violating his constitutional and civil rights, but also for allegedly participating in a
conspiracy to do so. To prove a claim for conspiracy under § 1983, a plaintiff must establish (1)
the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in
furtherance of the conspiracy by a party to the conspiracy. *Jutrowski v. Twp. of Riverdale*, 904
F.3d 280, 295 (3d Cir. 2018). Likewise, to bring a state conspiracy claim, a plaintiff must allege
"(1) a combination of two or more persons acting with a common purpose to do an unlawful act
or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in
pursuance of the common purpose; and (3) actual legal damage." *Mills v. City of Phila.*, No. CV
14-593, 2023 WL 6520488, at *15 (E.D. Pa. Oct. 5, 2023) (quoting *Jarzyna v. Home Props.,
L.P.*, 114 F. Supp. 3d 243, 278 (E.D. Pa. 2015)). Because Boyer fails to do so with respect to
either his federal or state law claims, dismissal of his conspiracy claims is warranted.

*First*, "[t]o survive a motion to dismiss, a plaintiff must plead facts which support
allegations of a conspiracy." *Scott v. Twp. of Bristol*, No. 90-cv-1412, 1990 WL 178556, at *5
(E.D. Pa. Nov. 14, 1990) (citing *Robinson v. McCorkle*, 462 F.2d 113 (3d Cir. 1972)). This
requires a plaintiff to do more than merely allege "in general terms the approximate time when
the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy,
or the object of the conspiracy." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d

159, 179 (3d Cir. 2010); *see also, e.g.*, *Scott*, 1990 WL 178556, at *5 (allegations must

minimally include a description of the conspiracy's membership, formulation and purpose (citing

*Armstrong v. Sch. Dist. of Phila.*, 597 F. Supp. 1309, 1313 (E.D. Pa. 1984))).

Boyer fails to allege facts showing how, why, or when the alleged conspiracies came into

existence, let alone sufficient factual allegations to discern who was a party of such conspiracy.

Boyer instead relies on conclusory allegations that the defendants "conspired . . . and acted in

furtherance of such conspiracy, or both." SAC ¶¶ 177, 180, 183, 187, 190, 200, 205, 210. But

"[u]nder *Twombly*, 'an allegation of parallel conduct will not suffice and mere conclusory

allegations are not enough.'" *Deems v. Phillips*, No. 18-2035, 2018 WL 6574184, at *3 (E.D. Pa.

Dec. 12, 2018) (internal quotation marks and citation omitted).

*Second*, for the reasons discussed with respect to each count above, Boyer has failed to

allege viable underlying violations to support each of his conspiracy claims. It is a matter of

black letter law that "[a] section 1983 civil conspiracy requires a predicate federal violation."

*Saucon Valley Manor, Inc. v. Miller*, 392 F. Supp. 3d 554, 586 n.7 (E.D. Pa. 2019). Likewise, for

a state law conspiracy claim, "[t]he established rule is that a cause of action for civil conspiracy

requires a separate underlying tort as a predicate for liability." *In re Orthopedic Bone Screw*

*Prod. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999). Because Boyer has failed to establish any

underlying violations of his civil rights, his conspiracy claims fail as a matter of law.

### K.    The Individual City Defendants have qualified immunity (Counts 6-9).

Finally, even if Boyer has alleged claims against the City Defendants in Counts 6-9, the

individual City Defendants have qualified immunity because any constitutional violation was not

clearly established at the time. "Qualified immunity protects government officials from civil

damages for conduct that 'does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Sauers v. Borough of Nesquehoning*, 905 F.3d

711, 716 (3d Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "A right is clearly established when the law is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* at 719 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate" when applied to the established facts. *Id.* (citation omitted)). Precedent that would satisfy this standard must be from the relevant jurisdiction or a "robust consensus of persuasive authority" in the appellate courts. *Id.* (citation omitted).

Here, the underlying premise of Counts 6-9 is that the City Defendants did not have authority under the UFA to arrest Boyer, seize his firearms, or deny him a license. But Boyer in this lawsuit is alleging, for the first time, that the UFA violates the Second Amendment. He can cite no Third Circuit precedent holding that the UFA's licensing provisions are unconstitutional, because none exists. Nor can he cite a consensus of decisions from other appellate courts examining similar firearms licensing laws, as none exists there, either. Because the UFA was constitutional at all times alleged in the SAC, the City Defendants have qualified immunity.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Boyer's Second Amended Complaint as against City Defendants, with prejudice.

<div style="margin-left:40%;">

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
KRISTIN BRAY, Acting City Solicitor

*/s/ Danielle B. Rosenthal*
Danielle B. Rosenthal (PA 329676)
Deputy City Solicitor, Civil Rights Unit
Jennifer MacNaughton (PA 88424)
Senior Attorney, Appeals
Aimee D. Thomson (PA No. 326328)

</div>

Dated: December 18, 2023

35

Deputy City Solicitor, Affirmative & Special
Litigation
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(215) 683-5448
danielle.rosenthal@phila.gov

CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I filed, via the Court's ECF system, a

true and correct copy of the attached Defendants' Motion and Memorandum of Law in Support

of Defendants' Motion to Dismiss, which will accomplish service on all parties.


Date:   December 18, 2023                        */s/ Danielle B. Rosenthal*
                                                 Danielle B. Rosenthal (PA 329676)
                                                 City of Philadelphia Law Department
                                                 1515 Arch Street, 14th Floor
                                                 Philadelphia, PA 19102
                                                 (215) 683-5448
                                                 danielle.rosenthal@phila.gov