## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                              |   |                            |
|------------------------------|---|----------------------------|
| Andre Boyer, *et al.*,       | : |                            |
|                              | : | Case No. 5:23-cv-02885-JLS |
|                  Plaintiff,  | : |                            |
|                              | : |                            |
|              v.              | : |                            |
|                              | : |                            |
|                              | : |                            |
| City of Philadelphia, *et al.*, | : |                        |
|                              | : |                            |
|                 Defendants.  | : |                            |
|                              | : |                            |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE DEFAULT FILED ON BEHALF OF DEFENDANT, PHILADELPHIA LODGE NO. 5, FRATERNAL ORDER OF POLICE

**AND NOW**, comes Defendant, Philadelphia Lodge No. 5, Fraternal Order of Police (hereinafter "the FOP" or "Defendant"), by and through its undersigned counsel, and submits this Memorandum of Law in Support of Defendant's Motion to Vacate Default.

## I.    History and Procedural Background

Plaintiff, Andre Boyer (hereinafter "Plaintiff"), is a former City of Philadelphia Police Officer.  Following his termination from the Police Department, Plaintiff filed a lawsuit against the FOP in the Philadelphia Court of Common Pleas, alleging claims for breach of duty of fair representation.  That matter resulted in a jury verdict in favor of the FOP on October 5, 2017.  While that case was pending, the incident upon which Plaintiff's claims against the FOP in this matter occurred.

On May 20, 2016, while that matter was pending, Plaintiff appeared in a courtroom during selection for an unrelated trial involving the FOP.  John McGrody, the FOP's Vice President, contacted court staff to inquire whether Plaintiff was permitted to be present with the potential jurors.  Subsequently, an issue arose between Plaintiff, the court staff, and a Sheriff deputy

regarding whether Plaintiff was carrying a firearm in the courtroom.  As a result of that issue, Plaintiff's permit to carry a firearm was revoked.  On December 20, 2016, Mr. McGrody appeared and testified at a hearing on Plaintiff's appeal at that revocation.

On July 18, 2018, Plaintiff filed a lawsuit in this Court (Docket No. 2:18-cv-03048-PBT) against the FOP and Mr. McGrody arising from the same facts as Plaintiff's current claim against the FOP.[1]  On August 23, 2018, Plaintiff withdrew that lawsuit.[2]

On July 27, 2023, Plaintiff initiated this action, alleging claims against the FOP that arise from the same facts as the 2018 lawsuit.  A copy of the original Complaint was served on the FOP on August 3, 3023, by handing a copy to Willie Sierra, an employee who was sitting at the FOP's desk on that day.  However, Mr. Sierra did not give a copy of that Complaint to Mr. McGrody, who was on vacation at the time.  On August 21, 2023, Plaintiff filed an Amended Complaint.[3] However, Plaintiff never served a copy of the Amended Complaint on the FOP, and never filed a certificate of service attesting that any service had been made.  On October 19, 2023, Plaintiff filed a Second Amended Complaint.[4]  Once again, Plaintiff never served the FOP with a copy of the Second Amended Complaint and never filed a certificate of service attesting that service had been made.

On December 8, 2023, Plaintiff filed a Request for Default pursuant to FED. R. CIV. P. 55.[5] In that Request for Default, Plaintiff relies on the service of the original Complaint, but ignores that fact that Plaintiff had twice amended his Complaint without providing any service to the FOP.[6]

---

[1] Complaint, attached hereto as Exhibit "A".
[2] Notice of Voluntary Dismissal, attached hereto as Exhibit "B".
[3] Docket Item No. 9.
[4] Docket Item No. 18.
[5] Docket Item No. 26.
[6] *Id.*

Plaintiff's Request for Default did not include any affidavit showing the amount due, as required by FED. R. CIV. P. 55(b)(1).  On December 20, 2023, the Clerk of Courts entered the default.[7]  Plaintiff has never filed any motion for default, as required by FED. R. CIV. P. 55(b)(2).  On the same day, an attorney for the City of Philadelphia reached out to Mr. McGrody to notify him that the default had been entered.[8]

## II.      Legal Argument'

### a.      *Plaintiff's Request for Default was Procedurally Improper*

As Plaintiff never served the FOP with the Amended Complaint or Second Amended Complaint, and because Plaintiff improperly sought a default pursuant to FED. R. CIV. P. 55(b)(1) instead of Rule 55(b)(2), the default should be vacated as improperly entered.

Initially, as Plaintiff never served the operative pleading, his request for a default on that pleading was improper.  "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading."  *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3rd Cir. 2019).  In this case, when Plaintiff filed the Amended Complaint on August 21, 2023 (before any Answer was due),[9] Plaintiff rendered the initial pleading a nullity.  Pursuant to FED. R. CIV. P. 5(a)(1)(B), Plaintiff then had a burden to serve the FOP with the Amended Complaint.  Plaintiff failed to do so, and failed to file any certificate of service pretending that service had been made.  By failing to serve either of the amended pleadings, Plaintiff deprived the FOP of the ability to respond to the operative pleadings.  Under such circumstances, Plaintiff's request for a default was improper, and the Clerk's entry of default should be stricken.

---

[7] Docket Item No. 34.
[8] *See* Affidavit of John R. McGrody, attached hereto as Exhibit "C".
[9] The FOP was not in default at the time of the filing of the Amended Complaint.  *See* FED. R. CIV. P. 5(a)(2).

Second, Plaintiff cannot rely on the entry of a default by the Clerk of Courts, except where the damages sought are for a sum certain, which they are not in this case.  Pursuant to FED. R. CIV. P. 55(b):

> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.

In this case, Plaintiff's Second Amended Complaint seeks unidentified damages.[10]  Plaintiff also failed to attach an affidavit of damages, which would have been required if Rule 55(b)(1) were appropriate.  Instead, Plaintiff should have utilized the procedure set forth in Rule 55(b)(2), which requires that the Court rule on the issue.  Generally, any such submission to the Court would entail the issuance of a rule to show cause before a default judgment could be entered.  In any case, as Plaintiff did not follow the Rules of Civil Procedure, but instead sought to bypass the Court's review of the case, the default entered pursuant to FED. R. CIV. P. 55(b)(1) must be vacated.

**b.      There is Good Cause to Vacate the Default**

Even ignoring, *arguendo*, the significant procedural deficiencies involved in Plaintiff's application for a default, there is good cause for the Court to vacate the default.[11]

As the claims raised by Plaintiff are woefully untimely, because the FOP is not a state actor for purposes of claims under 42 U.S.C. § 1983, and because the Second Amended Complaint is

---

[10] *See e.g.*, Docket Item No. 18, at p. 44, Prayer for Relief.

[11] Pursuant to FED. R. CIV. P. 55(c), requests to set aside a default should be made pursuant to FED. R. CIV. P. 60(b). This motion is filed within one (1) year of the entry of default and is, therefore, timely.  *See* FED. R. CIV. P. 60(c)(1).

silent as to any factual allegation of wrongdoing by the FOP, it is proper for the Court to vacate the default. As noted by the Third Circuit:

> The applicable factors that the district court must consider are: (1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions.

*Emcaso Insurance Co. v. Sambrick*, 834 F.2d 71, 73 (3rd Cir. 1987). These factors weigh heavily in favor of vacating the default.

First, there would be no prejudice to Plaintiff by having to litigate the case on the merits. "Prejudice exists if circumstances have changed since entry of the default such that plaintiff's ability to litigate its claim is now impaired in some material way or if relevant evidence has become lost or unavailable." *Accu-Weather, Inc. v. Reuters, Inc.*, 779 F.Supp. 801, 802 (M.D. Pa. 1991). "Detriment in the sense that plaintiff will be required to establish the merit of its claims does not constitute prejudice in this context." *Ibid.* Motions to Dismiss filed by other parties remain pending, and the pleading stage of the litigation has not yet closed. Plaintiff cannot show that there is any risk of destruction of evidence or degradation of the witnesses' memories as a result of this short delay. Instead, Plaintiff waited over seven (7) years before filing this lawsuit. As such, any prejudice due to the passage of time is solely the product of Plaintiff's own lack of diligence in prosecuting his claims.

Second, there is no evidence of culpable behavior by the FOP. Lawsuits such as this generally are handled by Mr. McGrody, who was away on vacation when the original Complaint was served. When Mr. McGrody returned from vacation, he was not notified that the Complaint had been filed. This type of organizational negligence is insufficient to deny the opening of a default. "A defendant's conduct is culpable where its delay in responding is willful or in bad faith."

*Griffen v. Alpha Phi Alpha, Inc.*, 2006 WL 3302438, *3 (E.D. Pa. November 9, 2006). "Even where neglect is inexcusable, and even where the Court cannot condone a defendant's failure to respond to a lawsuit for an extended period of time, culpable conduct warranting the refusal to set aside default must rise to the level of flagrant bad faith, and callous disregard of responsibility." *Id.* at *4 (*internal formatting omitted*). As set forth in Mr. McGrody's affidavit, the failure to respond to the original Complaint resulted from organization dysfunction, not from any bad faith or callous disregard. When Mr. McGrody learned of the action, the FOP took prompt action to file this motion and is prepared to proceed with its defenses on the merit.

Third, there are alternative sanctions that could be imposed. Even though Plaintiff's counsel secured a default through improper means, the Court could require that Plaintiff be reimbursed for costs and attorneys' fees associated with filing the Request for Default. This would ensure that Plaintiff was not prejudiced monetarily, while avoiding the extreme sanction of a default judgment.

Finally, the FOP has strong defenses to Plaintiff's claims. Plaintiff's claims against the FOP are untimely; the FOP is not a state actor for purposes of a claim under 42 U.S.C. § 1983; and there are no facts pled to show any improper conduct by any member of the FOP. These issues will be addressed *seriatim*.[12]

### 1.    *Statute of Limitations*

As the Second Amended Complaint does not allege any action by the FOP within a six and one-half (6½) year period prior to the filing of this lawsuit, any such claims are barred by the statute of limitations.

Plaintiff's Second Amended Complaint alleges claims against the FOP for:

---

[12] Assuming that this Motion is granted, each of these defenses will be set forth in greater detail as part of a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6). *Carter*

- Count Six – First Amendment Retaliation pursuant to 42 U.S.C. § 1983;

- Count Seven – Second Amendment claim pursuant to 42 U.S.C. § 1983;

- Count Eight – Fourth Amendment claim pursuant to 42 U.S.C. § 1983;

- Count Nine – Malicious Prosecution pursuant to 42 U.S.C. § 1983;

- Count Ten – Malicious Prosecution (state law);

- Count Twelve – Trespass to Chattels (state law);

- Count Thirteen – Assault and Battery (state law);

- Count Fourteen – False Imprisonment (state law).

Each of these claims is subject to a two (2) year statute of limitations. *See e.g. Garrett*, *supra* at 84 n.19 (holding that Pennsylvania's two (2) year statute of limitations applies to claims under 42 U.S.C. § 1983); 42 Pa. C.S. 5524(1) and (3) (two (2) years statute of limitations applies to claims for "assault, battery, false imprisonment, false arrest, malicious prosecution" and "taking, detaining or injuring personal property"). According to the Second Amended Complaint, the last act by any employee of the FOP took place in December 2016, when Mr. McGrody testified at the Firearms Appeals Hearing.[13] The Second Amended Complaint is devoid of any factual allegations against the FOP after this date. As such, the latest possible date on which Plaintiff should have filed any action regarding these actions was December 20, 2018. Plaintiff did file an action, but then withdrew it. This lawsuit, on the other hand, was filed over four (4) years after the relevant statute of limitations expired. As such, the FOP has a meritorious and complete defense to Plaintiff's claims based on the statute of limitations.

---

[13] Docket Item No. 18, at ¶ 52; Exhibit "D".

### 2.     *The FOP is not a State Actor under Section 1983*

Second, the FOP is not a state actor for purposes of claims under 42 U.S.C. § 1983.  Section

1983 is limited to claims against "state actors."  Under that section:

> Every person who, **under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia**, subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or immunities secured by
> the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress…

(*emphasis added*).  "Careful adherence to the "state action" requirement preserves an area of

individual freedom by limiting the reach of federal law and federal judicial power."  *Lugar v.*

*Edmondson Oil Co., Inc.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

> In order to determine whether the conduct of a private party should
> be attributed to the federal government, courts apply the "state
> action" analysis set forth by the Supreme Court in *Lugar* …  The
> Supreme Court succinctly summarized the two-part test of *Lugar* in
> its decision in *Edmonson v. Leesville Concrete*, 500 U.S. 614, 620,
> 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).  There, the Court stated
> that *Lugar* requires courts to ask "first whether the claimed
> constitutional deprivation resulted from the exercise of a right or
> privilege having its source in federal authority ... and second,
> whether the private party charged with the deprivation could be
> described in all fairness as a federal actor."

*Brown v. Phillip Morris Inc.* 250 F.3d 789, 801 (3rd Cir. 2001).

Here, Plaintiff affirmatively asserts that the FOP is "a nonprofit corporation"[14] and "a labor

union for the employees of the Philadelphia Police Department and the Philadelphia Office of the

Sheriff."[15]  As a matter of law, the FOP is not a state actor under section 1983.  *See e.g. Ford v.*

*Kenney*, 2023 WL 349180, *3 n.1 (E.D. Pa. January 19, 2023) (holding that FOP Lodge No. 5 is

---

[14] Docket Item No. 18, at ¶ 33.
[15] Docket Item No. 18, at ¶ 35.

not a state actor for purposes of a claim under Section 1983); *Amaechi v. District Council 89*, 2022 WL 2052654, *5 (M.D. Pa. June 7, 2022) ("it is well settled that labor unions such as AFSCME are typically not considered state actors for purposes of § 1983."); *Johnson v. International Brotherhood of Teamsters (Local 830)*, 2007 WL 4285368, *1 (3rd Cir. December 7, 2007) ("[L]abor unions are generally not state actors-they are private entities.")  Here, Plaintiff admits that the FOP is a private corporation and a labor union.  As such, his claims against the FOP under Section 1983 are without merit, and the FOP has a strong meritorious defense thereto.

> ### 3.     *The Allegations of Plaintiff's Second Amended Complaint Cannot Sustain any Claim Against the FOP*

Finally, the allegations set forth in the Second Amended Complaint are devoid of any facts that possibly could sustain any claim against the FOP.  As set forth in the Second Amended Complaint:

> 33.     Defendant, Philadelphia Lodge No. 5, Fraternal Order of Police ("FOP Lodge No. 5") is a Pennsylvania nonprofit corporation.

> 34.     FOP Lodge No. 5 is headquartered at 11630 Caroline Road, Philadelphia, PA  6 19154.

> 35.     FOP Lodge No. 5 is a labor union for employees of the Philadelphia Police Department and the Philadelphia Office of the Sheriff.

> * * *

> 45.     During all relevant times, Boyer manages and periodically authors and publishes information on Serpico News which bears upon the conduct of the Police Department of the City of Philadelphia, the Philadelphia Office of the Sheriff, FOP Lodge No. 5, or any of them.

> * * *

> 47.     As a result of Boyer's work for Serpico News, FOP Lodge No. 5 regards Boyer as a political enemy. FOP Lodge No. 5 has requested of, and formed agreements with, the

Defendants (or with any of them) to engage in a pattern of personal animus against Boyer and, while acting under color of state law, to repeatedly look for any pretext to violate his rights, including by way of assault, battery, and false imprisonment, to prevent his ability to obtain a license under the Private Detective Act and the Uniform Firearms Act and then look for any pretext to prosecute him those statutes, and to retaliate against him by reason of his involvement with Serpico News. Such conspiracy continues so long as Boyer continues to be found in the City of Philadelphia, to work in the City of Philadelphia, or both.[16]

* * *

49. Prior to 2016, Boyer held a license to carry firearms in the City of Philadelphia under the Uniform Firearms Act (UFA), 18 Pa.C.S. § 6101 et seq.

50. In 2016, the City of Philadelphia revoked Boyer's UFA license.

51. On December 20, 2016, in the case of In re Andre Boyer, Appeal No. 28392, the License & Inspection Review Board for the City of Philadelphia held a Firearms Appeal Hearing and affirmed the City's decision to revoke Boyer's UFA license.

52. A true and correct copy of a transcript of the aforementioned Firearms Appeal Hearing is attached as Exhibit D and incorporated by reference.[17]

53. During such Firearms Appeal Hearing, Deputy Sheriff Robert Lee testified that he investigated Boyer at the request of a representative of FOP Lodge 5.

54. During such Firearms Appeal Hearing, Deputy Sheriff Robert Lee falsely stated under oath that Boyer admitted to wearing a firearm on a holster within a courtroom within City Hall in Philadelphia, where a civil trial was held for a suit against FOP Lodge No. 5.[18]

---

[16] The majority of this paragraph constitutes an unsupported conclusion of law.

[17] According to this transcript, Mr. McGrody testified at this hearing on December 20, 2016.

[18] Docket Item No. 18.

The Second Amended Complaint does not include *any* other factual allegations against the FOP. Further, to the extent that the Second Amended Complaint makes conclusory claims against some conspiracy, the Court must ignore such claims, as "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3rd Cir. 2010). Based on the *factual* allegations pled, it is abundantly clear that Plaintiff's claims against the FOP are frivolous, at best.

First, "To state a prima facie case of First Amendment retaliation, a plaintiff must prove that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link existed between the constitutionally protected conduct and the retaliatory action." *Doe 1438 v. Pennsylvania State University*, 2023 WL 3409037, *2 (3rd Cir. May 12, 2023) (*internal quotation marks omitted*). Plaintiff has not pled any facts to suggest that the FOP engaged in any retaliatory conduct towards him. In such absence, no claim under the First Amendment can exist. Similarly, Plaintiff's Second Amended Complaint is devoid of any facts to suggest that the FOP took any action to deprive Plaintiff of any right under the Second Amendment. As noted above, as a private actor, the FOP is incapable of affecting Plaintiff's Second Amendment rights. Similarly, Count Eight of the Second Amended Complaint alleges a claim of some form of conspiracy to seize Plaintiff's firearm. There are no facts in the Second Amended Complaint that could ever support such a claim.

Counts Nine and Ten allege claims for Malicious Prosecution.

> To establish a prima facie case of a section 1983 malicious prosecution claim, the plaintiff must demonstrate the elements of common law malicious prosecution, including: 1) the defendants commenced a criminal proceeding; 2) without probable cause; 3)

with malice or for reasons other than to bring the party to justice and
4) the proceedings were terminated in favor of the plaintiff.

*Freeman v. Murray*, 163 F.Supp.2d 478, 483-84 (M.D. Pa. 2001). In this matter, Plaintiff's claims fail at the first step. There was no initiation of criminal proceedings. Instead, Plaintiff was subjected to an administrative proceeding. Further, the FOP was not responsible for initiating those proceedings, as it is a private entity. As such, these claims are without any merit.

Count Twelve alleges a claim for trespass to chattel.

The tort of trespass to chattels, to the extent it still exists in Pennsylvania, is governed by Restatement (2nd) of Torts § 217, Ways Of Committing Trespass To Chattel, which provides:

A trespass to a chattel may be committed by intentionally:

(a) dispossessing another of the chattel, or

(b) using or intermeddling with a chattel in the possession of another.

*Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 708 (Pa. Super. Ct. 2005). Plaintiff has not pled any facts to show that the FOP dispossessed Plaintiff of any property or intermeddled with any of Plaintiff's property. To the contrary, Plaintiff has claimed that he was not in possession of a firearm when he had contact with Mr. McGrody. As such, the FOP has a meritorious defense to this claim.

Count Thirteen alleges a claim for assault and battery. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950). Here, Plaintiff has not alleged any conduct by the FOP that ever could rise to this level. Finally, "To constitute the injury of false imprisonment the two requisites are (1) the detention of the person, and (2) the unlawfulness of

- 12 -

such detention." *Ibid.*  Once again, as Plaintiff was never detained by the FOP, a private actor, this claim is frivolous.  Accordingly, the FOP has strong meritorious defenses to all of Plaintiff's claims.

### III.   Conclusion

As set forth above, Plaintiff failed to follow the proper procedures to either serve the FOP with the Amended Complaint and Second Amended Complaint or to make a proper application for a default.  Further, even had the default been secured pursuant to the appropriate means, good cause exists to vacate that default and to allow the FOP to present its defenses on the merits.

Respectfully submitted,

DEASEY, MAHONEY & VALENTINI, LTD.

By:     /s/ *Rufus A. Jennings*

Rufus A. Jennings, Esquire
Pa. Attorney Identification No. 93030
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone:  (215) 587-9400
Fax:     (215) 587-9456
Email:  rjennings@dmvlawfirm.com

Attorney for Defendant,
Philadelphia Lodge No. 5, Fraternal Order of Police

Date: January 5, 2024