IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDRE BOYER,** | : | |
| | : | |
| **PENNSYLVANIA S.I.T.E.S. AGENTS, LLC,** | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-2885 |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

**REPLY IN SUPPORT OF THE MOTION TO DISMISS
FILED BY THE DA DEFENDANTS**

1

**Introduction**

Defendants Philadelphia District Attorney's Office ("DAO") and Philadelphia District Attorney, Lawrence S. Krasner (collectively the "DA Defendants") file this reply to address issues raised in Plaintiffs Andre Boyer and Pennsylvania S.I.T.E.S. Agents, LLC (collectively "Plaintiffs") amended brief in opposition to the DA Defendants' Motion to Dismiss (ECF 36).

Broadly speaking, Plaintiff Boyer's challenges to Pennsylvania's gun laws are fatally flawed, in that all of the prohibitions with which he takes issue are lawful for individuals who have a license to carry. Plaintiff Boyer (hereafter "Plaintiff") cannot publicly carry in the manner he wishes to, because his license was properly revoked, and his subsequent applications were denied for good cause shown. His challenges to the Private Detective Act are difficult to comprehend and largely seek to transform his gripes with the state adjudicatory process into federal constitutional claims of due process and equal protection, or assert speculative harms. They are better suited for resolution by Pennsylvania courts, which have extensive knowledge of the history and purpose behind the arcane law.

    A.  Gun Claims

Plaintiff claims that the Court should review his equal protection challenges to Sections 6106(a)[1] and 6108 of the Uniform Firearms Act ("UFA") under strict scrutiny (ECF 36, at 7). In arriving at this conclusion, he mischaracterizes Section 6108 as a prohibition or severe limitation on open carry in Philadelphia, when 6108 merely prohibits carrying a firearm *without a license*.

---

[1] It is unclear how Plaintiff's challenge to Pennsylvania's state-wide prohibition on carrying firearms in vehicles without a license implicates equal protection. But to the extent that the Court construes Plaintiff's claim as one based in substantive due process, the licensure requirement reflects that when a gun is carried in a car it is concealed. That is why it is included in Section 6106, which addresses concealed carry, and why the General Assembly treated it differently than openly carrying on the street. As described in this brief, permitting requirements for concealed carry are ubiquitous and are consistent with the nation's historical tradition of firearm regulation.

1

18 Pa.C.S. § 6108 ("No person shall carry a firearm . . . upon the public streets . . . unless such person is licensed to carry a firearm"). Similarly, he minimizes that Section 6106(a) only prohibits carrying in a vehicle *without a license*. 18 Pa.C.S. § 6106(a). Therefore, the real issue before this Court is whether Pennsylvania can impose licensing requirements on carrying firearms at all. It clearly can. Licensing regimes like Pennsylvania's were *expressly* sanctioned in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2161 (2022) (Kavanaugh, J. concurring) ("[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense. In particular, the Court's decision does not affect the existing licensing regimes – known as 'shall-issue' regimes – that are employed in 43 States."). *See also Frey v. Nigrelli*, 2023 WL 2929389, at *4 (S.D.N.Y. Apr. 13, 2023) (rejecting argument that permits were not required in 1791 and open-carry was the preferred means of carrying weapons).

Pennsylvania has traditionally afforded rational basis review to equal protection challenges to the requirement that an individual possess a permit to carry. *See Commonwealth v. Scarborough*, 89 A.3d 679, 686 (Pa. Super. 2014) ("The right at issue under Section 6106 . . . and the right at issue under Section 6108, 'the right to carry a firearm on the streets of Philadelphia without a license,' are not fundamental rights. They manifestly do not rise to the protection afforded by the Second Amendment's general guarantee of the right to keep and bear arms."). Pennsylvania courts that have reviewed such challenges have found that they satisfy this review. *See id.* at 686-87 (finding that the differential treatment of Philadelphia in 6108 and the permitting requirement in 6106 were rationally related to legitimate state interests).[2] *See also Commonwealth v. McKown*,

---

[2] The Superior Court in *Scarborough* found that the licensure requirement in Section 6108 rationally addresses gun violence in Philadelphia. 89 A.3d at 686. It explained that, as the most populated city in the Commonwealth, with a correspondingly high crime rate, the brandishing of a weapon can invoke a fearful reaction on behalf of the citizenry and the possibility of a dangerous response by law enforcement officers. *Id.* at 686-87. It also noted that the licensure requirement

79 A.3d 678, 691 (Pa. Super. 2013)(challenge to Section 6106 permitting requirement lodged under the Second Amendment survived more exacting, "intermediate scrutiny" review, because the state has an important governmental interest in protecting the public from persons who carry concealed firearms for unlawful purposes).

The DA Defendants maintain that *Bruen*'s two-part test for Second Amendment challenges did not alter the means-end scrutiny prescribed under Fourteenth Amendment equal protection review. In any case, they note that permitting requirements for open carry and concealed carry are consistent with the nation's historical tradition of firearm regulation. *See Bruen*, 142 S. Ct. at 2150 ("The historical evidence from antebellum America does demonstrate that *the manner* of public carry was subject to reasonable regulation.") (emphasis added); *id.* at 2157 (Alito, J., concurring) (the holding "decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun . . . Nor have we disturbed anything that we said in [*Heller* or *McDonald*] about restrictions that may be imposed on the possession or carrying of guns."): *id.* at 2161 (Kavanaugh, J., concurring) (writing separately to "underscore . . . the Court's decision does not prohibit . . . the imposition of licensing requirements for carrying a handgun for self-defense.").

Plaintiff also maintains that *Bruen* supports his challenge to Section 6108, because there, the Court held that New York could not severely restrict firearm possession in the entirety of Manhattan (ECF 36, at 10-11). But the DA Defendants reiterate that the Court's conclusion was that law-abiding individuals who wished to possess a gun for the purpose of self-defense could not be denied a permit to do so on the theory that the city of New York as a whole could be

---

aids in the efforts of law enforcement in the protection of the public, because in Philadelphia, police may arrest an individual for overtly carrying a firearm without first determining if it is licensed or operable. *Id.* at 687 (citing *Commonwealth v. Taggart*, 997 A.2d 1189, 1189, 1196-97 (Pa. Super. 2010) (making licensure an affirmative defense to a 6108 charge)). The DA Defendants additionally note that licensure aids local police in solving shootings.

3

characterized as a "sensitive place" (a historically recognized place where weapons were "altogether prohibited"). Under a "shall issue" regime, like Pennsylvania's, Philadelphia permitting authorities "must issue licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Bruen*, 142 S.Ct. at 2123. Plaintiff simply could not meet those requirements because of his history of erratic and dangerous behavior. Requiring Philadelphia residents to possess a license for public carry is not improper. It does not severely restrict the ability of law-abiding citizens to carry.[3]

In his opposition, Plaintiff clarified that his challenge to Section 913 of the UFA relates specifically to the fact that the statute requires court facilities to provide free lockers for individuals who are licensed to carry or for whom state law exempts the licensure requirement, but does not provide similar accommodations for individuals who are unlicensed, but wish to carry a firearm on the way to a court facility (ECF 36, at 14-15). The DA Defendants reiterate the aforementioned citations to *Bruen*, supporting the principle that states may limit public carry of firearms to licensed individuals, and may criminalize unlawful possession. *See, e.g.*, *Bruen*, 142 S.Ct. at 2150 (discussing the history of criminal prohibitions on methods of carry). *See also Antonyuk v. Chiumento*, -- F.4th --, 2023 WL 8518003, at *6 (2d Cir. Dec 8, 2023) (upholding under the preliminary injunction standard, a facial challenge to New York's law criminalizing carrying in zoos and public parks, where the statute exempted various individuals). The provision of free

---

[3] In fact, in *Lara v. Evanchick*, a challenge to Pennsylvania's age-based restrictions limiting the rights of 18-20-year-olds to publicly carry arms, the court commented that Section 6106(b) excepts a broad range of activities and occupations from the licensure requirement; therefore, the plaintiffs, (and similarly situated individuals) who were ineligible for licensure, were not precluded from "the right to bear arms in public in any manner" as they argued. 534 F.Supp. 3d 478, 484, 491 (W.D. Pa. 2021).

lockers for those who are eligible to public carry is rationally related to legitimate government interest in protecting the right of "law-abiding, responsible citizens" to exercise their Second Amendment rights, while ensuring that those who are not permitted to publicly carry firearms leave their firearms in their home or in their fixed place of business, as is required under Pennsylvania law. The additional circumstance that Plaintiff claims could alter the analysis in an "as applied" challenge—that he was subpoenaed for court, or other anticipated arguments, such as that he possesses an Act 235 certificate or that he was previously employed as a police officer—do not change the calculus, because he is unlicensed and does not qualify for an exemption to the licensure requirement.

### B. Private Detective Act Claims

#### a. Challenges to his Qualification for a Private Detective License

While Boyer may believe that his "chosen calling" is providing security, he simply does not have an unqualified right to do so. The right to one's chosen occupation is not considered fundamental under either federal or state constitutional jurisprudence. *See Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 21 (Pa Cmwlth. 2012) ("While the right to engage in a particular profession is an important right, it is not a fundamental one.")(quoting *Nixon v. Dep't of Pub. Welfare*, 839 A.2d 277, 288 (Pa. 2003); *See also Sammon v. N.J. Bd. of Medical Examiners*, 66 F.3d 639, 645 (3d Cir. 1995) ("[S]tate restrictions on the right to practice a profession receive rational basis review rather than higher scrutiny."). The state may prescribe employment qualifications commensurate with the nature of the job. *See McCool v. City of Phila.*, 494 F. Supp. 2d 307, 328-29 (E.D. Pa. 2007)(upholding residency requirement for firefighters); *Bureau of Traffic Safety v. Slater*, 462 A.2d 870, 880-81 (Pa. Cmwlth. 1983)(upholding revocation of school bus driver's license of a diabetic). Few professions better underscore the need for such

5

qualifications than a vocation where individuals are entrusted with protecting persons and property.

Boyer also asserts that the DAO had no good faith reason to oppose his application for a private detective license, because his reading of *In re Sentry Secur., Inc.*, 417 A.2d 190 (Pa. 1980), makes his patrolman rank at the PPD irrelevant, as he possesses other qualifying experience (ECF 36 at 27, Sec. Am. Compl. ¶¶ 102-117). But Boyer remains free to challenge the DAO's interpretation of the "patrolman exception" under the proper procedural avenue: by filing another petition and appealing a denial if necessary. His argument concerning state statutory interpretation does not implicate a federal constitutional question.[4]

Plaintiff claims that there is no rational basis for treating city police officers differently from municipal police officers with respect to whether an applicant possesses the requisite qualifying experience under the Private Detective Act (ECF 36, at 20). But Plaintiff mischaracterizes a privilege bestowed upon city police officers as a *discrimination* against them. The Act requires applicants to have been "regularly employed as a detective, or shall have been a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of a patrolman for a period of no less than three years." 22 P.S. § 14(a). Therefore, the Act bestows a privilege on city police officers, who would not otherwise qualify under the preceding

---

[4] He also claims that the DA Defendants failed to address his contention that he does not need a license for his security work at the hotel, because the PDA exempts "any person regularly employed as special agent, detective or investigator exclusively by one employer in connection with the affairs of that employer only." (ECF 36, at 5, 16) (citing 22 P.S. § 25). He further states that if the DAO believes that this employment is illegal, it is engaging in unconstitutional discrimination, by failing to include him as meeting that exemption (*id.* at 5). If this issue becomes ripe, it is a matter of state statutory interpretation, not of equal protection, and should be litigated in state court.

6

qualifications. As explained in the DA Defendants' principal brief, the privilege bestowed upon city officers could be in recognition of the greater proficiency in training and supervision that is generally given by a metropolitan police department as opposed to their counterparts in smaller political subdivisions (ECF 21, at 21). Extending the privilege to officers trained as detectives as opposed to beat cops is not arbitrary: beat cops may not possess the level of responsibility, investigative acumen, and degree of independence as do officers at higher grades. Because the right to a chosen profession is not fundamental, nor are city police officers members of a suspect class, whether his claim is based on equal protection or substantive due process, the challenged portion of the Act survives rational basis review.

      Plaintiff also takes issue with the General Assembly's decision to allow sheriffs to qualify over low-rank city police officers (ECF 30 at 22). Sheriffs are elected by the entire county and serve four-year terms, *see* Pa. Const. Article IX, § 4. They have therefore earned the community's trust and respect, important qualities for those holding themselves out as detectives for hire. *See In re Sentry Secur., Inc.*, 417 A.2d 190, 195 (Pa. 1980)(Nix, J. dissenting)(discussing the reasons why the General Assembly chose to include certain qualifying experience). More importantly, the official duties of sheriffs involve detective functions. For instance, the county sheriff is required to investigate applications for a license to carry firearms, 18 Pa.C.S. § 6109(d), to protect lives and property by transporting prisoners (61 Pa.C.S. §1731(a)(4)), to conduct sales of personal property and real estate (68 Pa.C.S. § 2306(c)), and to serve and enforce court orders (Pa. R. Civ. P. 400; 61 § Pa.C.S. 6106(f)). These duties share a great deal of overlap with "private detective business" as defined in the PDA. *See* 22 P.S. § 12. The Assembly could logically have concluded that a former sheriff applying for a private detective license would have at least four years of relevant experience. The DA Defendants reiterate that under rational basis review, states are allowed to

7

sweep broadly in determining occupational qualifications. *McCool v. City of Phila.*, 494 F. Supp. 2d 307, 314 (E.D. Pa. 2007).

        b.  *Procedural Due Process*

Plaintiff reiterates his belief that it violates due process to permit district attorney's offices the ability to petition the court of common pleas to revoke an improperly granted license without giving petitioners a reciprocal right to petition for relief from an improper denial (ECF 36 at 22-23). As an initial matter, nothing in the Act outlines a procedure whereby the district attorney's office can petition to revoke an improperly granted license. The Act provides that the license "shall be revocable at all times by the court of quarter sessions for cause shown." 22 P.S. § 16. The Act includes several violations that could subject a license holder to revocation, such as: violating the Act's "employment ban," (*id.* § 23) committing specified "unlawful acts," (*id.* § 26) or failure to notify the licensing authority of a change in address (*id.* § 16). A Westlaw search reveals only one instance where the courts permitted a district attorney's office to petition to revoke an improperly granted license. *In re Sentry Secur., Inc.* Nevertheless, the ability of the district attorney's office to petition the court for revocation does not deprive a petitioner of any due process rights. Petitioners are free to defend the propriety of their license under such circumstances, in proceedings that comport with due process. Moreover, if Plaintiff believes that the court that evaluates his next petition improperly denies it, in addition to possessing the ability to appeal, he remains free to ask the court to reconsider its decision during the appropriate window for doing so.

Plaintiff also maintains that he cannot be denied a detective license or a permit to carry a firearm without a jury trial, under due process principles and under the Sixth Amendment (ECF 36, at 30-35). Plaintiff's reliance on an isolated line from a concurrence *in Axon Enter. v. FTC*,

8

598 U.S. 175, 197-202 (2023) to advance his due process argument is misplaced. There, Justice Thomas commented on whether an administrative agency can recharacterize claims that were traditionally subject to the *Seventh* Amendment, which provides for a right to trial by jury in "Suits at common law where the value in controversy shall exceed twenty dollars", U.S. Const. amend. VII, into those internally resolvable by administrative agency. *Axon Enter.*, 598 U.S. at 202. For instance, that *Seventh* Amendment issue is currently under review *in SEC v. Jarkesy*, No. 22-859, 2023 WL 4278448 (U.S. June 30, 2023) (challenging the ability of the SEC to administratively adjudicate fraud claims which resulted in the imposition of a multi-million-dollar administrative sanction). This line of cases implicates the Seventh Amendment, not procedural due process, and the rationale provided there is wholly unrelated to the pertinent proceedings in equity.

He also claims (while acknowledging that his argument is "novel theory of relief") that denial of his ability to engage in his chosen occupation amounts to criminal punishment (ECF 36 at 35-36). Even if an occupational permit denial were akin to criminal punishment (which it is not), the right to a jury trial only attaches to crimes that carry a potential sentence of more than six months' imprisonment. *Baldwin v. N.Y.*, 399 U.S. 66 (1970).

### c. *State-Law claims*

Plaintiff maintains that he has standing to request that this Court declare the DAO subject to Section 9124(b) of Pennsylvania's Criminal History Record Information Act ("CHRIA"), when the DAO exercises its role in providing a recommendation to the court of common pleas on whether the petitioner meets the qualifications for a detective license. The DA Defendants argued that he did not have standing because Plaintiff had specifically mentioned that his patrolman rank was the *sole* basis on which the court denied his petition, and did not allege that the DAO or the courts considered his arrests (ECF 21 at 14).

To satisfy standing, Plaintiff must show an injury in fact, and one that is "actual or imminent, not conjectural or hypothetical." *Spokeo Inc., v. Robins*, 578 U.S. 30, 338. (2016). To meet this standard, Plaintiff now claims that the DA Defendants' discussion of his arrests in the background section of their brief is an admission of the DAO's intention to "exclude him from his chosen occupation based on arrests" (ECF 36, at 29). This is not the case. The background section merely provided a coherent counter-narrative to Plaintiff's version of events by adding omitted details from the public record. *See, e.g.*, Sec. Am. Compl. ¶ 72 (mentioning that he was arrested after effectuating a citizen's arrest at his place of employment, but omitting the fact that he was arrested for tasering the individual).

Plaintiff's contention that the DAO (which is not a licensing agency under 9124(b) of CHRIA) will consider his arrests in resolving a purportedly forthcoming petition for a private detective license is purely conjecture. Relatedly, this claim is not ripe for adjudication. Ripeness is closely related to standing and determines when a party may bring an action. *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994). Underpinning the ripeness doctrine is the question of whether a party is genuinely aggrieved, so as to avoid expenditure of judicial resources on matters which have caused harm to no one. *Khodara Envtl., Inc., v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (citation omitted). The same is true for Plaintiffs' request that the Court prohibit the DAO from prosecuting Pennsylvania S.I.T.E.S., LLC for violating the PDA or mandating a cease-and-desist order prior to any such prosecution. Such claims are not ripe for adjudication.

Plaintiff also appears to claim that the DAO's decision to oppose his second petition on the basis that he was collaterally estopped from attempting to qualify with his patrolman experience violates his procedural due process rights, and any such interpretation giving preclusive effect past

10

the two-year licensing period prescribed under the PDA would also violate Pennsylvania law (ECF 36 at 23-24). While the DA Defendants initially understood Plaintiff as challenging the DAO's ability to argue collateral estoppel within the two-year licensure period, the DA Defendants do not intend to argue that the decision rendered by the court of common pleas in 2016 precludes him from trying to qualify in 2024 based on his patrolman experience. Rather, the DAO argued that the issue was already decided, when Plaintiff, by his own admission, filed a new petition seeking to qualify on that same experience, ten days after his first petition was denied for that reason.

With respect to Plaintiff's request that the Court consider his CHRIA claim, and his claim that under Pennsylvania law, collateral estoppel should not apply to him, under supplemental jurisdiction, the Court should decline to do so, particularly if it dismisses Plaintiffs' other PDA claims, *see* 28 U.S.C. § 1367(c)(3). Pennsylvania courts would be in a better position to address issues such as whether CHRIA's prohibition applies to a non-licensing agency that merely provides a recommendation to a court, or whether the factual circumstances of the incidents giving rise to an arrest may be considered, even if the fact that the person was arrested may not. They would also be in a better position to evaluate Pennsylvania's application of collateral estoppel to administrative proceedings.

> d. Abstention

Plaintiffs raise a number of claims that are packaged as constitutional due process and equal protection claims, but in actuality, they are complaints with how prior state adjudicatory bodies' interpreted state law, or seek a prospective interpretation of state law. These claims include: 1) whether Plaintiff is precluded from receiving a private detective license because he never achieved a rank greater than patrolman prior to his termination from the PPD; 2) whether Plaintiff's current security arrangement with the hotel meets the exception to the licensure requirement under Section

25 of the PDA, for those who perform work for one employer and are regularly employed by them; and 3) whether Plaintiffs' proposed private detective referral service requires a private detective license. This Court should abstain from considering those issues under the *Pullman* abstention doctrine.

"When a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose regulation might narrow or eliminate the federal constitutional question, abstention may be justified under principles of comity in order to avoid 'needless friction with state policies.'" *Chez Sez III Corp. v. Union*, 945 F.2d 628, 631 (3d Cir. 1991) (citing *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 500 (1941)). For abstention to be the appropriate resolution, a court must find three circumstances to exist: (1) Uncertain issues of state law underlying the federal constitutional claims brought in federal court (2) State law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims (3) A federal court's erroneous construction of state law would be disruptive of important state policies. *Id.*

With respect to his challenges to the application of the "patrolman exception", this Court would have to determine whether the fact that Plaintiff seeks to qualify based on his experience as a city patrolman—a class of persons that the PDA states does not meet the eligibility criteria, may nevertheless be eligible by showing that his patrolman work included functions akin to that which the PDA defines as "private detective business". Such a resolution could also obviate the need to analyze whether the Pennsylvania Legislature's decision to include certain qualifying experience, but not others was rational. A resolution to the contrary could disrupt the state's ability to ensure that those who hold themselves out as detectives or security guards have the requisite experience and community standing to perform investigations or protect persons and property for

12

remuneration. Plaintiff's second and third claims satisfy this test as well, because they implicate areas of arcane Pennsylvania law on which there is little precedent, and an interpretation sanctioning these arrangements could create a donut-hole-sized loophole in the state's ability to regulate the profession.

### C. Waiver

Contrary to Plaintiffs' assertion, the DA Defendants did not disclaim all "as applied" challenges brought in the suit. For example, the DA Defendants discussed that Boyer's possession of an Act 235 certificate does not given him a constitutional right to carry a firearm without a license (ECF 21, at 4-5, 11) and that Boyer received ample process prior to the denial of his private detective petition (*id.* at 17). It merely noted that, with respect to Plaintiff's specific gripes with his application for a gun permit or the City's stated reasons for denial, such claims were better addressed by those who reviewed his application or those who promulgate guidance on review of such applications.[5] The DAO merely prosecutes individuals who carry without a license. It does not create or enforce the eligibility criteria contained in 18 Pa.C.S. § 6109—this is a matter of state law, controlled by the Pennsylvania Legislature. To the extent that the DA Defendants could be asked to respond to such claims, they join the arguments made by the City Defendants in their motion to dismiss, regarding Pennsylvania's ability to impose a "character and reputation"

---

[5] The Complaint does not neatly delineate which portion of Plaintiffs' multi-part claims are addressed to which Defendants, what conduct is encompassed under each claim, or what constitutional challenge (i.e. due process vs. equal protection) is alleged, which made response difficult. In any case, all of Plaintiff's claims concerning Pennsylvania's gun laws appear directed to both the DA Defendants and the City Defendants. Since the sought-after relief is a declaration declaring portions of Pennsylvania laws unconstitutional, if there were certain aspects of Plaintiff's gun claims that the City defendants addressed, but the DA Defendants overlooked (or vice versa), it would make little sense to allow those claims to proceed against certain defendants but not others if the Court finds that they fail as a matter of law.

requirement that considers criteria broader than simply whether an individual's conduct resulted in a criminal conviction (*see* ECF 29, at 12-13).

### D. Monell Claim

In his opposition brief, Plaintiff states that *Monell* is inapplicable to his claims for prospective, declaratory/injunctive relief (ECF 36, at 36-37). The DA Defendants agree. The DA Defendants asserted only that Count 11 of the Second Amended Complaint, which seeks monetary damages under a municipal theory of liability, fails as a matter of law for the various reasons discussed in its principal brief (ECF 21, at 22-25). To the extent that Plaintiff disclaims his claim for monetary damages against the DAO, this is a welcome development.

### Conclusion

For the foregoing reasons, and those outlined in the DA Defendants' memorandum of law in support of its Motion to Dismiss (ECF 21), and incorporating the applicable arguments discussed in the City Defendants' Motion to Dismiss (ECF 29), the DA Defendants respectfully request dismissal of all claims for relief directed at them.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **ANDRE BOYER,** | |
| **PENNSYLVANIA S.I.T.E.S. AGENTS, LLC,** | |
| Plaintiffs, | |
| v. | **CIVIL ACTION** |
|  | No. 23-2885 |
| **CITY OF PHILADELPHIA,** *et al.*, | |
| Defendants. | |

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 8, 2024, true and correct copies of the foregoing reply brief were served on all parties of record via the Court's e-filing system.

> Respectfully submitted,
>
> */s/ Joshua B. Niemtzow*
>
> *Counsel for Defendants Philadelphia District Attorney's Office and District Attorney Lawrence S. Krasner*

15