## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDRE BOYER and PENNSYLVANIA S.I.T.E.S. AGENTS, LLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CITY OF PHILADELPHIA, et al.,**<br><br>**Defendants.** | **Civil Action No. 5:23-02885-JLS** |

## REPLY IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS

CITY OF PHILADELPHIA LAW DEPARTMENT
RENEE GARCIA, Acting City Solicitor

William B. Shuey (PA No. 208792)
Senior Attorney, Affirmative & Special Litigation
Danielle B. Rosenthal (PA 329676)
Deputy City Solicitor, Civil Rights Unit
Jennifer MacNaughton (PA 88424)
Senior Attorney, Appeals Unit
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595
(215) 683-5444
william.shuey@phila.gov

Dated: January 30, 2024

# TABLE OF CONTENTS

REPLY IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS .............................. i

TABLE OF AUTHORITIES ............................................................................................... iii

I.     INTRODUCTION ............................................................................................... 1

II.    ARGUMENT ....................................................................................................... 1

       A.     Individual City Defendants are immune from state law claims under the
              Pennsylvania Political Subdivision Tort Claims Act (Counts 10, 12-14). ............. 1

       B.     Many of Boyer's allegations are time-barred. ....................................................... 3

       C.     Counts 1, 2, and 7 (pertaining to the UFA, state law barring weapons from
              courthouses, and the Second Amendment) should be dismissed............................ 4

       D.     Boyer has failed to state a claim for First Amendment retaliation (Count
              6). ................................................................................................................... 17

       E.     Boyer has failed to state a claim under the Fourth Amendment (Count 8). ......... 18

       F.     Boyer has failed to state a claim for malicious prosecution or false
              imprisonment (Counts 9, 10, and 14)................................................................... 21

       G.     Boyer has failed to state a claim for *Monell* liability (Count 11). ....................... 22

       H.     Boyer has failed to state a claim for trespass to chattels (Count 12). .................. 23

       I.     Boyer has failed to state a claim for assault and battery (Count 13). .................. 24

       J.     Boyer's derivative conspiracy claims fail as a matter of law (Counts 12-
              14). ................................................................................................................... 24

       K.     The Individual City Defendants have qualified immunity (Counts 6-9). ............. 26

III.   CONCLUSION.................................................................................................... 27

CERTIFICATE OF SERVICE ....................................................................................... 28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Antonyuk v. Chiumento*,
89 F.4th 271 (2d Cir. 2023) ............................................................... 6, 7

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
598 U.S. 175 (2023).......................................................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................... 11

*New York State Rifle & Pistol Ass'n, Inc. v.Bruen*,
597 U.S. 1 (2022)........................................................... 6, 7, 8, 12

*Buari v. City of New York*,
530 F. Supp. 3d 356 (S.D.N.Y. 2021)............................................. 24, 25

*Caba v. Weaknecht*,
64 A.3d 39 (Pa. Cmwlth. 2013) ....................................................... 9

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988)......................................................... 11, 18

*Com. v. Lyles*,
97 A.3d 298 (Pa. 2014)................................................................... 20

*Com. v. Scott*,
176 A.3d 283 (Pa. Super. 2017)...................................................... 12

*Com. v. Walton*,
529 A.2d 15 (Pa. Super. 1987)........................................................ 12

Com. v. Anderson,
169 A.3d 1092 (Pa. Super. Ct. 2017)............................................... 19

*Com. v. Hicks*,
208 A.3d 916 (Pa. 2019) ............................................................. 19, 20

*Com. v. Robinson*,
600 A.2d 957 (Pa. Super. Ct. 1991) ................................................ 22

*Copenhaver v. Borough of Bernville*,
No. CIV.A. 02-8398, 2003 WL 26616224 (E.D. Pa. Jan. 10, 2003) ......................................... 3

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002) ................................................................... 24

*DiSalvio v. Lower Merion High Sch. Dist.*,
    158 F. Supp. 2d 553 (E.D. Pa. 2001) ......................................................... 2

*District of Columbia v. Heller*,
    554 U.S. 570 (2008).................................................................................. 8, 12

*Doby v. DeCrescenzo*,
    171 F.3d 858 (3d Cir. 1999)....................................................................... 23

*Florida v. Bostick*,
    501 U.S. 429 (1991)................................................................................... 20

*Flynt v. Berry*,
    No. 13CV633 JCH/RHS, 2013 WL 12329780 (D.N.M. Aug. 9, 2013) ................ 24

*Frein v. Pennsylvania State Police*,
    47 F.4th 247 (3d Cir. 2022) ....................................................................... 14

*Grooms v. Tencza*,
    No. 09 C 3631, 2010 WL 1489983 (N.D. Ill. Apr. 13, 2010)..................... 25

*Guilday v. Crisis Ctr. at Crozer-Chester Med. Ctr.*,
    No. 22-1519, 2022 WL 17484328 (3d Cir. Dec. 7, 2022)......................... 23

*Halsey v. Pfeiffer*,
    750 F.3d 273 (3d Cir. 2014)....................................................................... 21

*Hayes v. City of Philadelphia*,
    No. CIV.A. 04-554, 2005 WL 3054550 (E.D. Pa. Nov. 15, 2005) ............ 2

*Hill v. Kutztown*,
    455 F.3d 225 (3d Cir. 2006)....................................................................... 22

*In re K-Dur Antitrust Litig.*,
    No. 01-CV-1652SRCCLW, 2016 WL 755623 (D.N.J. Feb. 25, 2016) ....... 25

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ................................................................... 25

*In re Pandora Media, LLC*,
    No. 222CV00809MCSMAR, 2022 WL 19299126 (C.D. Cal. Oct. 26, 2022)......... 25

*Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)....................................................................... 25

*Kach v. Hose,*
589 F.3d 626 (3d Cir. 2009)................................................................. 4

*Kotteakos v. United States,*
328 U.S. 750 (1946)........................................................................ 24

*Lozman v. City of Riviera Beach, Fla.,*
138 S. Ct. 1945 (2018)................................................................... 17

*Luparella v. United States,*
335 F. App'x 212 (3d Cir. 2009) ....................................................... 3

*Madero v. Luffey,*
549 F. Supp. 3d 435 (W.D. Pa. 2021)............................................... 3

*Michigan v. Chesternut,*
486 U.S. 567 (1988)........................................................................ 20

*Mosca v. Cole,*
217 Fed. App'x 158 (3d Cir. 2007).................................................. 22

*Nieves v. Bartlett,*
139 S. Ct. 1715 (2019).................................................................... 18

*Radio Music License Comm., Inc. v. SESAC Inc.,*
No. 12-CV-5807, 2013 WL 12114098 (E.D. Pa. Dec. 23, 2013)........... 26

*Range v. Attorney Gen. United States of Am.,*
69 F.4th 96 (3d Cir. 2023) ........................................................... 7, 8

*Renk v. City of Pittsburgh,*
641 A.2d 289 (Pa 1994).................................................................... 2

*Rodriguez v. Hanna,*
288 A.3d 137 (Pa. Cmwlth. 2022) ..................................................... 9

*Sauers v. Borough of Nesquehoning,*
905 F.3d 711 (3d Cir. 2018)............................................................ 26

*Tarr v. City of Pittsburgh,*
800 Fed. App'x 131 (3d Cir. 2020)................................................... 22

*Terry v. Ohio,*
392 U.S. 1 (1968)............................................................................ 19

*Thomas v. Coopersmith, No.,*
CIV.A. 11-7578, 2012 WL 3599415 (E.D. Pa. Aug. 21, 2012) ............ 22

*United States v. Bond*,
  173 Fed. App'x 144 (3d Cir. 2006) ........................................................... 22

*United States v. Jenkins*,
  -- F.Supp.3d --, 2023 WL 6534200 (E.D. Pa. Oct. 6, 2023) ....................... 12

**Statutes**

18 Pa. C.S. § 913 ............................................................................... 5, 6, 20

18 Pa. C.S. § 6106 ................................................................................ passim

18 Pa. C.S. § 6108 ........................................................................... 5, 21, 22

18 Pa. C.S. § 6109 ................................................................................ passim

18 Pa.C.S. § 9124 ...................................................................................... 16

22 P.S. § 46 ............................................................................................... 15

25 Pa.C.S. § 1301 ..................................................................................... 16

**Rules**

Pa. R. Crim. P. 588(B) .............................................................................. 14

**Other Authorities**

Rest.2d Torts § 217 .................................................................................... 23

# I.    INTRODUCTION

In their opening brief, City Defendants identified legal and pleading deficiencies in Boyer's substantive claims, and also outlined how specific claims and/or specific defendants should be dismissed due to the statute of limitations, a lack of allegations implicating those individuals, the Tort Claims Act, and qualified immunity.

Despite filing three opposition briefs – ostensibly to target his arguments against the relevant Defendants – Boyer largely avoids addressing the lack of factual pleadings regarding specific Defendants or specific claims. In some instances, he attempts to improperly supplement his Complaint by raising entirely new allegations or legal theories. But even overlooking those pleading deficiencies, amendment would be futile because Boyer's claims all boil down to legally unsupportable attacks on Pennsylvania's gun licensing laws, disputes with his arrests for which his own pleading establishes probable cause, and attempts to transform City Defendants' valid actions to enforce the law into constitutional claims or state-law torts.

Below, City Defendants address Boyer's arguments in the same order as the opening brief (ECF 29).

# II.    ARGUMENT

## A.    Individual City Defendants are immune from state law claims under the Pennsylvania Political Subdivision Tort Claims Act (Counts 10, 12-14).

City Defendants' opening brief argued that Tort Claims Act immunity shields the individual Defendants[1] unless Boyer can show willful misconduct, which (in the context of police conduct) is not shown by simply proving an intentional tort. ECF 49 at 17-18. Boyer's response is essentially to argue that each of the state law claims (malicious prosecution, trespass

---

[1] The state law claims (Counts 10, 12, 13, and 14) are pled against individual City Defendants only, not the City itself.

1

to chattels, assault and battery, and false imprisonment) are intentional torts. ECF 49 at 17-18. But as City Defendants' opening brief argued, Boyer cannot establish willful misconduct by simply pointing to conduct that fell within each Defendant's job responsibilities; instead, he must plausibly identify a specific intent to commit a wrongful act. His inability to do so makes it appropriate to dismiss the state law claims.

Although Boyer cites *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa 1994), he does not engage with *Renk*'s actual holding: that proof that a police officer committed an intentional tort does not defeat an immunity defense. In *Renk*, the Pennsylvania Supreme Court held that a police officer who was found liable for "the intentional torts of assault, battery and false imprisonment" could claim indemnification from the municipal government. *Id.* at 291-92. This is because in the context of police action, assault and battery and false imprisonment are not *per se* willful misconduct. *Id.* at 294.

Boyer further relies on other inapposite cases. Regarding assault and battery, Boyer cites *DiSalvio v. Lower Merion High Sch. Dist.*, 158 F. Supp. 2d 553 (E.D. Pa. 2001). However, this case does not involve police action, but rather allegations of assault by a school district employee. As noted in *Renk*, this comparison has "no validity in the context of a lawsuit based upon police conduct." *Renk*, 641 A.2d at 293. Likewise, Boyer's reliance on *Hayes v. City of Philadelphia*, No. CIV.A. 04-554, 2005 WL 3054550 (E.D. Pa. Nov. 15, 2005) regarding false imprisonment is also misplaced. *Hayes* holds that where a police officer is alleged to have used coercion to induce false testimony, the Tort Claims Act would not apply. It does not apply to municipal employees who act within the course and scope of their employment. Again, the court's review does not begin and end with whether an alleged tort is an "intentional tort" but looks to the actual nature of the conduct alleged. Finally, Boyer relies on an unreported decision,

*Copenhaver v. Borough of Bernville*, No. CIV.A. 02-8398, 2003 WL 26616224, at *2 (E.D. Pa. Jan. 10, 2003) as an example of an individual defendant's immunity being denied in a trespass to chattels claim; however, that case did not contain any substantive discussions of the allegations, but simply noted that the plaintiff "alleges willful misconduct". *Id*. at *2 n.2. The court did not announce a new rule that merely alleging trespass to chattels inherently alleges willful misconduct. Instead, the City Defendants point this Court to *Madero v. Luffey*, 549 F. Supp. 3d 435, 448 (W.D. Pa. 2021) which again recognizes the distinction between an intentional tort and "willful misconduct" is crucial.

Here, willful misconduct has not been plausibly alleged and these claims should be dismissed. Neither in the SAC nor in his opposition briefs has Boyer alleged facts that would plausibly demonstrate an intention to commit the alleged torts. Instead, Boyer alleges only a vague animus, but no specific facts to establish that each named Defendant acted without legal authority. See ECF 49 at 17-18. Under *Renk*, these generic allegations are not sufficient to overcome Tort Claims Act immunity.

### B.     Many of Boyer's allegations are time-barred.

City Defendants' opening brief explained that many of the incidents Boyer alleges occurred outside of the limitations period. ECF 29 at 9-10. Boyer has no response to this issue for the individual claims, but instead he cites his conclusory allegation of an ongoing "civil conspiracy" immunizes his claims from the statute of limitations, so long as the last overt act occurred within the limitations period. ECF 49 at 18-20. However, the case law he cites does not support this proposition. Instead, cases such as *Luparella* hold that, while earlier acts can be admissible as <u>evidence</u> to prove the existence of an ongoing conspiracy, defendants cannot be prosecuted for those acts. *Luparella v. United States*, 335 F. App'x 212, 215 (3d Cir. 2009) ("Acts that occur outside of the statute of limitations period may be included as overt acts 'to show the

existence and continuance of the conspiracy even though there could have been no prosecution for any substantive offense charged as an overt act.'). The specific events alleged here were distinct, not continuing, and for each one, the last overt act or "the last event necessary to complete the tort", *Kach v. Hose,* 589 F.3d 626, 634 (3d Cir. 2009) was completed before the July 27, 2021 limitations period date. These acts were: (1) the 2016 revocation of Boyer's UFA license, SAC ¶¶ 50-51; (2) his December 6, 2019, arrest and the seizure of his cell phone, id. ¶¶ 61-65; (3) the 2019 search of Boyer's home, id. ¶ 69; and (4) Boyer's March 12, 2021, arrest for unspecified reasons, id. ¶¶ 72-73. None of these acts was a continuing offense. And as for Boyer's conspiracy claim, as discussed below in Section J, the conspiracy allegations are mere conclusory statements that fall well short of the pleading standard. Accordingly, all claims based on those time-barred actions should be dismissed.

### C. Counts 1, 2, and 7 (pertaining to the UFA, state law barring weapons from courthouses, and the Second Amendment) should be dismissed.

City Defendants' Motion has fortunately prompted Boyer to narrow and more clearly articulate his expansively-pled claims regarding state firearms laws and the Second Amendment:

- For Count 1, although initially, it was difficult to pin down Mr. Boyer's constitutional claims concerning the UFA, SAC ¶ 161, his opposition briefs now focus on two Second Amendment themes: (1) the discretion of licensing authorities under the UFA, and (2) the alleged "chilling" effect of 18 Pa. C.S. § 6106(b)'s treatment of the exemptions from licensing as affirmative defenses. ECF 36 at 12-14; ECF 47 at 8-10; ECF 48 at 7-17.

- For his other constitutional claims under Count 1, Boyer now posits additional comparators for an Equal Protection claim, and focuses on his Due Process argument based on Justice Thomas's concurrence in *Axon Enter., Inc. v. Fed.*

*Trade Comm'n*, 598 U.S. 175 (2023).

- For Count 2, SAC ¶ 164, Boyer has now narrowed and explained that his constitutional challenge to 18 Pa. C.S. § 913 (weapons in courthouses) is a facial challenge to 18 Pa. C.S. § 913(e), which limits the use of gun lockers to just those who are licensed or exempt under the UFA. *See* ECF 36 at 14; ECF 47 at 4.

- For Count 7, which simply states that Defendants violated Boyer's Second Amendment rights without specifying how, the only claim not encompassed by the discussions of Counts 1 and 2 is his argument that the delay in returning the gun seized during his arrest violated his Second Amendment rights. ECF 49 at 2-3, 19.

Below, City Defendants address the Second Amendment arguments, followed by the Equal Protection and Due Process arguments.

       1.       **Boyer's Second Amendment challenges to licensing authority discretion under the UFA (Counts 1 and 7).**

In his response brief(s), Boyer elaborates a multitude of challenges to the UFA's licensing requirements (18 Pa. C.S. §§ 6106 & 6108) based on the amount of discretion afforded to the licensing authority. That is, Boyer takes issue with:

    a) The use of any amount of discretion, as opposed to "objective criteria" or enumerated offenses, ECF 47 at 10; ECF 48 at 7-9, 14, 15-17;

    b) The UFA's provision disqualifying an individual charged with or convicted of a crime punishable by imprisonment exceeding one year (18 Pa.C.S. § 6109(e)(1)(viii)), ECF 48 at 10-11;

    c) The UFA language allowing revocation of a license for "good cause", ECF 48 at 16;

    d) The City's denial of his 2023 application based on his past UFA violations, because (1) they were "unprosecuted" and/or did not result in a criminal conviction, ECF 47 at 8, 11; ECF 48 at 7, 11-12, 13-14; (2) they were allegedly non-violent and occurred over a year prior, ECF 48 at 14-15; and (3) his violation

of Section 913 was not sufficient evidence that Boyer was likely to act in a manner dangerous to public safety, ECF 48 at 15-17.

Although his arguments (except for (a), above) fail to specify whether he is asserting a facial or as-applied challenge, City Defendants will treat (a) through (c) as asserting both challenges, and argument (d) as solely as-applied, as it deals with the application of the UFA's standards to Boyer rather than the text of the statute itself.

### a. Use of __any__ discretion in UFA licensing standards

For Boyer's first argument, he misreads *Bruen* as requiring that any licensing law must be limited to a ministerial checklist of enumerated offenses, and then claims that the UFA's grounds for denial are not based on sufficiently objective criteria as required by *Bruen*. ECF 47 at 10 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38 n.9 (2022)). This is the same argument the Second Circuit rejected in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023), where the plaintiffs claimed that *Bruen* "requires states to determine eligibility for a gun license using only a checklist that wholly precludes individualized judgments." *Id*. at 324. As the Second Circuit held, this argument "cannot be squared with *Bruen*'s discussion of "shall-issue" regimes[.]" *Id*. The Second Circuit's analysis was correct: as noted in City Defendants' opening Brief, many other shall-issue states' laws – like Pennsylvania – include language requiring a licensing authority to determine whether an applicant is likely to pose a risk to themselves or others. *See* ECF 29 at 11-14 & n.5. Yet, in the same *Bruen* footnote that *Boyer* cites, the Supreme Court clarified that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall-issue" licensing regimes," which the Court characterized as containing "only 'narrow, objective, and definite standards' guiding licensing

officials". *Bruen*, 597 U.S. at 38 n.9 (citation omitted).[2] *Bruen* provides no support for Boyer's facial challenge here.

### b. Disqualification for crimes punishable by over one year incarceration (18 Pa.C.S. § 6109(e)(1)(viii)))

Boyer's second facial and as-applied challenge concerns the UFA's provision disqualifying an individual charged with or convicted of a crime punishable by imprisonment for a term exceeding one year. 18 Pa.C.S. § 6109(e)(1)(viii); ECF 48 at 10-11. Boyer argues this provision is invalid under *Range v. Attorney Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023). As a threshold matter, that provision was not the basis for Boyer's license denial, which defeats his as-applied claim as well as his standing to raise this issue. Although Boyer incorrectly claims Lt. Newsome "invoked" Section 6109(e)(1)(viii) in denying his 2023 application, ECF 48 at 10, on his license denial form, that option is not selected. ECF 18 (SAC) Ex. E.

But regardless, Boyer misstates *Range*'s holding. That case was not a facial challenge. Instead, the Third Circuit made clear that "[o]ur decision today is a narrow one", concerning the constitutionality of the federal felon-in-possession statue "only as applied to [Range]" given his violation of a state statute criminalizing making a false statement to obtain food stamps. *Range*,

---

[2] Boyer attempts to distinguish *Antonyuk* by arguing that case was limited to restrictions on concealed carry, as opposed to open carry, but the Second Circuit made no such distinction. ECF 48 at 17 (citing *Antonyuk*, 89 F.4th at 312). The particular law at issue in *Antonyuk* involved concealed carry; not surprisingly, the opinion is devoid of any discussion of the legality of potential restrictions on <u>open</u> carry, which were simply not before the court. Instead, *Antonyuk*'s discussion of New York's character requirement referred in general terms to "disarmament" of law-breakers or dangerous individuals, without any discussion of allowing such individuals to carry openly. *E.g.* 89 F.4th at 314 ("There is widespread agreement among both courts of appeals and scholars that restrictions forbidding dangerous individuals from carrying guns comport with '**this Nation's historical tradition of firearm regulation,**' *Bruen*, 142 S. Ct. at 2126) (emphasis as supplied).

69 F.4th at 106. Felon-in-possession laws remain "'presumptively lawful'" after *Range. Id.*, 69 F.4th at 109-110 (Ambro, J., concurring) (quoting *Bruen*, 591 U.S. at 81) (Kavanaugh, J., concurring), in turn quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)). Accordingly, Boyer's facial challenge must fail.

### c. "Good cause" standard for denying or revoking a license (18 Pa.C.S. § 6109(e) & (i))

Boyer's third facial and as-applied challenge – which addresses the UFA's language (repeated on the license application denial form) stating that a license may be denied "for good cause" – was not pled in the Complaint, and is contradicted by how courts actually apply that statutory language.

Boyer claims that the City's form treats "good cause" as a standalone ground for revocation, which, he argues, allows too much discretion. ECF 48 at 16. The Complaint does not plead any such claim; instead, its sole mention of the phrase "good cause" appears in the paragraph summarizing the license denial form. ECF 18 ¶ 93. Accordingly, this claim is not properly before the Court.

But further, amendment would be futile, because as Boyer acknowledges, the UFA treats "good cause" as coextensive with the specific criteria listed in Section 6109(e)(1), not an independent, discretionary ground for denial or revocation of a license. *See* ECF 48 at 10 ("The Uniform Firearms Act … does not treat good cause as an independent ground" from the 14 enumerated grounds). In assessing the constitutionality of the UFA, this Court must look to how Pennsylvania courts actually apply the statutory language. *Cf. Bruen*, 597 U.S. at 13 n.1 (examining how three states' courts treated laws that had "discretionary criteria" to conclude that they "appear to operate like 'shall issue' jurisdictions"). Pennsylvania courts have consistently held that "good cause" is a legal test that is satisfied only based upon evidence that one of the

enumerated grounds for revocation exists. *See Rodriguez v. Hanna*, 288 A.3d 137 (Pa. Cmwlth. 2022) ("whether 'good cause' exists for a firearms license revocation is a legal conclusion" that must be based on evidence; "Thus, a firearms license revocation must be upheld only "when *the evidence* supports a conclusion that an individual licensed to carry a firearm does not possess the requisite character and reputation to do so[.]'") (citation omitted; emphasis as supplied). As the Commonwealth Court explained in *Caba v. Weaknecht*, 64 A.3d 39 (Pa. Cmwlth. 2013), the UFA in its current form "evidences clear legislative intent to both guide and limit the discretion of the licensing authority". *Id*. at 62. The requirement of "good cause" means that the authority "cannot revoke a license as a matter of administrative whim. He must revoke a license if the licensee becomes ineligible, for the reasons set forth in Section 6109(e)(1) of the Act, during the term of the license." *Id*. at 62. Accordingly, Boyer cannot show that no set of circumstances exist under which the "good cause" language would be constitutional; therefore, this facial challenge fails.

Further, Boyer cannot show that the "good cause" language was unconstitutional as applied to him. Even assuming that an independent "good cause" criterion would be constitutionally problematic, the City did not actually apply that language as an independent ground in Boyer's 2023 license denial. Rather, on the face of the denial form, both the "good cause" and "dangerous to public safety" boxes were checked, with specific conduct cited below. ECF 18 Ex. E. Boyer's application was not denied based on any purely discretionary determination of "good cause", but for Boyer's conduct that made him ineligible for a license under Section 6109(e)(1)(i).

### d. Boyer's disagreement with his 2023 license denial

Fourth, Boyer raises a purely as-applied challenge to his 2023 license denial because the City cited his past UFA violations (namely, his two arrests for carrying without a license, and his 2016 license revocation based on his violation of the law prohibiting guns in courthouses) as evidence of his lack of appropriate character and reputation. Boyer argues that these violations were insufficient grounds for denial because they did not result in criminal convictions, and because they occurred over a year prior and he characterizes them as "non-violent". ECF 47 at 8, 11; ECF 48 at 7, 11-12, 13-17. However, as previously discussed (*see* ECF 29 at 11-13), it is well established that states may deny a firearms license to individuals who pose a risk to public safety. Many of the shall-issue laws cited with approval in *Bruen* (including Pennsylvania's) do not limit the acceptable proof of dangerousness to only criminal convictions, or only very recent conduct. Further, as also previously argued (*see* ECF 29 at 16), there was ample evidence to support the determination that Boyer is likely to act in a manner dangerous to public safety, as he willfully and repeatedly violated state laws regarding where and how he carried a deadly weapon. The City's application of a constitutional shall-issue licensing standard to Boyer was lawful under the Second Amendment.

### 2. Boyer's new-found claim of "chilling" of his ability to carry under an 18 Pa.C.S. § 6106(b) exemption (Counts 1 and 7).

In his opposition briefs, Boyer raises an entirely new claim without any basis in the Complaint: that he was "chilled" in exercising his Second Amendment rights because the licensing statute treats the exemptions to licensure as affirmative defenses, not an element of the crime needed for probable cause. The argument begins with the premise that during the two incidents that led to Boyer's arrests for carrying in Philadelphia without a license (the time-barred December 2019 arrest and the October 2021 arrest), he was dressed like someone who might have been eligible for an exemption to licensure under 18 Pa. C.S. § 6106(b)(6) (for

private agents carrying while in the course of their duties). Then, Boyer points to case law cited in the Motion to Dismiss (*e.g.* ECF 29 at 16) stating that under Section 6106, the exemptions are affirmative defenses, not elements of the crime that the Commonwealth is required to <u>dis</u>prove. Boyer then argues that arresting officers need not "investigate" whether an individual is subject to an exemption before arresting them, and therefore Boyer's arrests chilled his (and others') lawful conduct. ECF 47 at 7-11; ECF 49 at 2-3; ECF 36 at 13-14.

*First*, Boyer did not allege any such claim in his Complaint, so it is not properly before the Court. "'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Although the Complaint alleged in generic terms that Boyer's arrests violated his Second Amendment rights, it did not claim that Boyer was eligible for a Section 6106(b) exemption, nor did it give any hint that Boyer's issue with the statute stemmed from its treating the exemptions as affirmative defenses. On the contrary, he expressly alleged that he "desires to regularly carry a firearm in any vehicle under circumstances where none of the exceptions in 18 Pa.C.S. § 6106(a)(2) & (b) exist…" SAC ¶ 139. Boyer's attempt to invent a new claim in his opposition briefing contradicts the basic goal of Rule 8 notice pleading, to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

*Second*, allowing Boyer to amend the Complaint would be futile because he does not have standing to assert this claim. Boyer alleged only one arrest within the limitations period (the October 19, 2021 arrest), but his own pleadings establish that he was not eligible for the Section 6106(b)(6) private agent exemption when he was arrested. Pennsylvania courts interpret that exemption narrowly: it applies only to agents "hired for the primary purpose of and whose duties

are principally related to the protection of money, valuables, and property", *Com. v. Walton*, 529 A.2d 15, 17 (Pa. Super. 1987), and only while the agents are discharging those duties, *Com. v. Scott*, 176 A.3d 283, 289 (Pa. Super. 2017). But Boyer alleged that he appeared at the CJC that day "to testify in a case". 2AC ¶ 74. Testifying is a very different activity than guarding money, valuables, or property. Accordingly, it would be futile to allow Boyer to amend to allege he was entitled to the private agent exemption when he was arrested in 2021.

*Third*, any facial or as-applied challenge must fail because the conduct at issue – carrying for purposes of one's employment as a private agent – is not protected by the Second Amendment. The Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 626). Instead, "'individual self-defense is 'the central component' of the Second Amendment right.'" *Bruen*, 597 U.S. at 29. In addition, the Supreme Court has recognized that the Second Amendment protects carrying arms for the purposes of hunting and serving in a militia. *Heller*, 554 U.S. at 599; *see also United States v. Jenkins*, -- F.Supp.3d --, 2023 WL 6534200, at *9 (E.D. Pa. Oct. 6, 2023). But completely absent from *Bruen* and *Heller*'s discussions of protected conduct is any mention of carrying weapons as part of one's job responsibilities to safeguard the employer's property.

*Lastly*, even assuming there existed a Second Amendment right to work as an armed security guard, on the face of the Complaint, Boyer fails to state a facial or as-applied claim that Section 6106(b) burdens that right by treating the exemptions as an affirmative defense. Boyer's as-applied claim fails because, as shown above, he was not eligible for the private agent exemption when he was arrested in October 2021 (the arrest that is not time-barred). Further, by his own allegations, Lt. O'Leary did not simply arrest Boyer "without having to investigate", *cf.*

ECF 47 at 8. On the contrary, Boyer alleges that Lt. O'Leary Lieutenant O'Leary asked Boyer whether he had a license to carry; Boyer gave an evasive answer citing his "Lethal Weapons Act certification"; and only then did Lt. O'Leary arrest Boyer. 2AC ¶ 77. And because the statute was not unconstitutional conduct as applied to Boyer, by necessity, Boyer cannot show that the statute is facially unconstitutional in all of its applications.

### 3. Boyer's challenge to 18 Pa.C.S. § 913's provision regarding unlicensed individuals' ability to use gun lockers at courthouses (Counts 2 and 7).

Boyer's challenge to 18 Pa. C.S. § 913 is now limited to subsection (e)'s provision limiting the use of gun lockers in courthouses to those who are licensed or legally exempt from licensure, *see* ECF 36 at 14; ECF 47 at 4. Boyer's argument is essentially a disagreement with licensing laws, not with Section 913. *See, e.g.* ECF 47 at 4 ("… Boyer is challenging the extent that persons cannot openly carry a firearm, without a license, and surrender the same to a deputy sheriff for placement in a secure gun locker immediately upon entering a court facility."). As the City Defendants explained in their opening brief, the Supreme Court's recent Second Amendment jurisprudence makes clear that states may require a license to carry. *See* ECF 29 at 11-13; *accord* ECF 21 at 10-11. And if states may require a license to publicly carry, that requirement necessarily encompasses public carry on the way to a courthouse – or indeed, any other destination. Accordingly, Boyer's facial challenge to the requirement of a license to use a gun locker must fail.

### 4. Boyer's Second Amendment claim based on the one-month delay in returning his firearm (Count 7).

As an additional Second Amendment claim, Boyer argues that the one-month delay between the trial court's grant of his motion for return of property on April 12, 2023, and the

return of his firearm on May 8, constituted a Second Amendment violation, but relies on inapposite authority. ECF 49 at 3; ECF 18 ¶¶ 88-89.[3]

Although Boyer cites *Frein v. Pennsylvania State Police*, 47 F.4th 247, 255-56 (3d Cir. 2022), that case did not involve a minor administrative delay in returning seized firearms, but instead, the case concerned an attempt to permanently seize firearms. The guns in question belonged to a murder suspect's parents and were seized during the execution of a search warrant. *Id*. at 250. Nonetheless, even after the suspect's conviction was final, the state police refused to return the guns. *Id*. at 254. The Third Circuit held this was inappropriate: "The seizure under a valid warrant immunized the government for the duration of the criminal case. But now that the case is over, the government must either get another warrant or return the property." *Id*. In reaching its holding, the Third Circuit cited case law and sources involving the permanent seizure of guns for the purpose of disarming individuals. *Id*. at 254-55. But *Frein* said nothing about whether a brief delay between a court order to return property and the actual return of the property would be sufficient to trigger a Second Amendment violation. Further, the Third Circuit found that the process Boyer followed here – a motion for return of property under Pa. R. Crim. P. 588(B) – was adequate procedural due process to protect the parents' rights. *Id*. at 256-57. Accordingly, there is no support for the notion that the City violated Boyer's rights by following this lawful process.

### 5. Boyer's Due Process and Equal Protection allegations (Counts 1 and 2).

The City Defendants' opening brief attempted to match Boyer's vague incantations of Equal Protection and Due Process with any potentially actionable conduct by Defendants. ECF

---

[3] Alternatively, the delay is two months if measured between his March 15, 2023 acquittal and the May 8 return of the firearm. ECF 18 ¶¶ 81, 89.

29 at 17-20. Boyer's response briefs address the City's arguments and raise additional potential comparators for an Equal Protection claim. The now-operative Equal Protection and Due Process arguments are addressed below.

Regarding Boyer's previously-identified comparison between individuals who are not ineligible for licensure under 18 Pa. C.S. § 6109 and individuals holding an Act 235 lethal weapons training certificate, City Defendants rest on their opening brief and join the District Attorney Defendants' arguments. These arguments showed that a training certificate is not equivalent to the "character and reputation" criterion for licensure, which aims to prevent dangerous individuals from carrying firearms (regardless of those individuals' weapons proficiency). *See* ECF 29 at 19-20; ECF 21 at 5 n.3, 11. In addition, though Boyer claims that his employment as a security guard plus his Act 235 certificate make him similarly situated to someone eligible for the private agents exemption under Section 6106(b)(6), as argued above (at 11-12), that exemption is very narrow and applies only while an individual is actually engaged in their employment duty of guarding valuables or property. *Cf.* ECF 47 at 12-14. It is not a generalized permission to carry without a license, as Boyer desires to do.

Further, Boyer argues that an Act 235 certificate should be treated as equivalent to a UFA license because applicants for Act 235 training must attest to their "good character, competency, and integrity". ECF 47 at 13 (quoting 22 P.S. § 46(b)). However, Act 235 (unlike the UFA) does not require that the Commissioner of the Pennsylvania State Police actually conduct any inquiry into an individual's character or reputation. Instead, the statute simply requires the Commissioner to determine "that the applicant is eighteen years of age and has not been convicted of or has not pleaded guilty or nolo contendere to a crime of violence" before allowing the applicant to enroll in a lethal weapons training program. 22 P.S. § 46(f). *See also* 1978 Pennsylvania Atty. Gen.

Op. No. 27, at p.106[4] ("An examination of the section of the Act in question here reveals that there is no requirement that a determination as to the character of the applicant be made…"). Boyer still cannot show that, by virtue of his holding an Act 235 certificate, he is similarly situated to individuals who (unlike him) have not had their licenses revoked for engaging in conduct demonstrating that they are "likely to act in a manner dangerous to public safety." 18 Pa. C.S. § 6109(e)(1)(i).

Boyer also identifies two more inapposite comparators: namely, individuals applying for employment that requires a criminal background check, and convicted felons regaining the right to vote. First, Boyer argues that his conduct resulting in two arrests for UFA violations should be disregarded by the gun licensing authority because the Criminal History Record Information Act (18 Pa.C.S. § 9124(b)) prohibits disclosure of records of arrests without convictions or convictions of summary offenses. ECF 48 at 12-13, 15-16. By its terms, the CHRIA is limited to individuals seeking a license "to engage in a trade, profession or occupation," not a firearms license under the UFA. *See* 18 Pa.C.S. § 9124(a). Further, an individual seeking a license to engage in a trade or profession is not similarly situated to an individual seeking a permit to carry a deadly weapon. It should be obvious that there are significant public safety concerns underlying a license to carry firearms that are not implicated in an individual's application for a trade or professional license. Conduct that did not result in a criminal conviction may still indicate that an individual is likely to pose a safety risk – such as Boyer's repeated, erratic, willful violations of state firearms laws.

Likewise, Boyer argues that convicted felons are allowed to vote five years after their release from prison under 25 Pa.C.S. § 1301(a), and claims that his offense of bringing a gun into

---

[4] Available at www.attorneygeneral.gov/wp-content/uploads/2018/01/1978_AG_Kane_Gornish_opinions.pdf .

a courtroom seven years ago should not exclude him from obtaining a firearms license. ECF 48 at 15. But again, there is no public safety concern with an individual exercising the right to vote, unlike an individual applying for a gun license. Boyer's additional comparators are inapt and do not support an Equal Protection claim.

Boyer also argues that two UFA provisions – Section 6108's requirement of a license for concealed carry in Philadelphia (as opposed to the rest of the Commonwealth) and Section 6106(a)'s requirement of a license to carry in a vehicle – raise Equal Protection issues, but as the District Attorney Defendants aptly stated, Boyer's dispute there is really with the requirement of a license, not with those laws themselves. *See* ECF 36 at 7-8, 9-10, 12-14; ECF 45-1 at 1-2 & n.1, 3-4.

Lastly, Boyer does not raise any additional Due Process issues beyond his argument based on a two-Justice concurring opinion in Axon Enters. See ECF 36 at 30-33. City Defendants rest on their opening brief and the District Attorney Defendants' briefing on this subject. *See* ECF 29 at 18; ECF 45-1 at 8-9.

**D.     Boyer has failed to state a claim for First Amendment retaliation (Count 6).**

In their opposition to Defendant's Motion to Dismiss, Boyer argues that his pleadings claiming First Amendment retaliation, specifically Count 6, are allegations of "an alleged official municipal policy." *See* ECF 49 at 16. This apparently is in reliance on *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1954 (2018) (Plaintiff "must prove the existence and enforcement of an official policy motivated by retaliation.").However, the SAC does not even include an allegation that there is an official policy or custom of the City to retaliate against Boyer.   At most, Boyer's claims amount to vague and conclusory statements that an animus existed against Boyer. What the SAC fails to do is plead that there was a City policy or custom to retaliate against Boyer because of his speech and that this retaliatory motive is a "'but-for' cause,

meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

Moreover, Boyer's First Amendment retaliation claim fails because, as discussed detail below, the laws enforced by the individual City Defendants were all constitutional at the time of their enforcement. Finally, Boyer's claim against Wanda Newsome, in particular fails because there is no allegation that Newsome was motivated by Boyer's speech, or even aware of it.

### E. Boyer has failed to state a claim under the Fourth Amendment (Count 8).

Boyer has clarified that Defendant Newsome was inadvertently included in the Wherefore clause of Count 8[5] and there was "no intent to lodge that claim against her." *See* ECF 48 at 20. Therefore, this claim should be dismissed as to Defendant Newsome.

Regarding the Fourth Amendment claim against the City and the Individual Defendants, although the Complaint bases this claim on just the seizure of Boyer's firearm, *see* ECF 18 ¶ 183, Boyer now attempts to expand his claim to include his three arrests for carrying without a license. *See* ECF 49 at 4-9. As previously argued, it is improper for Boyer to amend his complaint in the briefing. *See Zimmerman*, 836 F.2d at 181.

Further, allowing Boyer to amend would be futile because, on the face of the Complaint, there was probable cause to arrest Boyer and to seize his firearm in connection with those arrests.

*First*, we discuss only the October 19, 2021 arrest at the CJC, ECF 18 ¶ 77, and the April 2022 arrest after the refiling of the earlier criminal complaint against him arising from the October 2021 arrest, *id.* ¶¶ 78-80. The earlier arrest in December 2019 is time-barred. *See* ECF 18 ¶¶ 59-64; ECF 29 at 9-10. In addition, the only Individual Defendant involved with the October 2021 arrest

---

[5] In their opposition, Boyer refers to this sections as "Count 7 (Fourth Amendment violations)". In the SAC, Count 7 is a claim for Second Amendment violations, and the Count 8 is a claim for Fourth Amendment violations. Therefore, it is believed that this is intended to be a reference to Count 8.

was Lt. O'Leary, so Count 8 should be dismissed against Sgt. O'Shaughnessy, Det. Wallace, Lt. Long, Det. Poulos, and Det. Glaviano. *Cf.* ECF 29 at 23. Likewise, Boyer's opposition briefs do not identify any custom or policy of unconstitutional seizures and so Boyer cannot state a claim against the City.

*Second*, the Complaint establishes that there was probable cause for Boyer's October 2021 arrest, and by extension, his April 2022 arrest on the same charges. Boyer asserts that when he was arrested, Defendants had no information as to whether Plaintiff Boyer's conduct was unlawful "other than merely his open carry of a firearm in the City of Philadelphia." *See* ECF 49 at 4. However, this assertion is belied by the SAC itself, which states that, for example, on October 19, 2021 Boyer was asked whether he had a permit to carry the firearm in his possession and Boyer gave the evasive response that he had a Lethal Weapons Act certification. SAC ¶ 77. Thus, the police officer had more than merely the sight of Mr. Boyer possessing a firearm as a basis for his arrest. *See generally Commonwealth v. Anderson*, 169 A.3d 1092, 1103 (Pa. Super. Ct. 2017) ( Lethal Weapons Act "is not a 'substitution' for a license to carry a firearm and … [does] not supersede the licensing requirements in the PUFA.") Moreover, it is undisputed that Plaintiff Boyer did not, in fact, have a UFA license. *See* SAC ¶ 50.

Boyer's reliance on *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019) is misplaced because that case was limited to investigative or *Terry* stops[6], not a mere encounter with law enforcement like Lt. O'Leary's asking Boyer whether he had a license. In *Hicks*, the Pennsylvania Supreme Court held that the mere fact that a citizen is carrying a firearm, standing alone, does not provide reasonable suspicion of criminal activity that would justify a *Terry* stop. A *Terry* stop is one of three kinds of warrantless interactions between a citizen and police – the

---

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

other two being a "mere encounter" – which is a request for information that does not constitute a seizure – and an arrest based on probable cause. *Hicks*, 208 A.3d at 927. A *Terry* stop requires reasonable suspicion of criminal activity; a "mere encounter" does not. *Id*. at 927.

Boyer's own allegations demonstrate that the interaction between him and Lt. O'Leary was a mere encounter, not a *Terry* stop requiring reasonable suspicion. In distinguishing between these two kinds of police interactions, courts have applied an objective test that asks whether a reasonable citizen would believe they were free to leave. *See, e.g. Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.") (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)).

Here, even accepting the allegations in the SAC as true, the interaction between Boyer and Lt. O'Leary was limited to a simple question. Boyer alleged that he "retrieved his firearm and equipment" from the gun locker, and "[a]t that moment, Lieutenant O'Leary questioned whether Boyer had a permit to carry that firearm." ECF 18 ¶ 77. Lt. O'Leary's question was comparable to a routine request for identification, but it is well established that a request for identification, by itself, does not escalate a "mere encounter" to an investigative detention. *Com. v. Lyles*, 97 A.3d 298, 304 (Pa. 2014). In fact, this question was not simply a random request for identification by a police officer on the street because, as Boyer argues elsewhere, a firearms license is required for individuals to use gun lockers in courthouses under 18 Pa. C.S. § 913(e).Accordingly, because Lt. O'Leary's question constituted a "mere encounter" with law enforcement, no reasonable suspicion was necessary, and *Hicks* is not relevant.

*Lastly*, regarding seizure of the firearm, Boyer does not claim that Sgt. O'Shaughnessy, Det. Wallace, Lt. Long, Det. Poulos, Det. Glaviano, or Lt. Newsome seized any firearm from Boyer.

The Court should dismiss Count 8 as to these defendants.

F. **Boyer has failed to state a claim for malicious prosecution or false imprisonment (Counts 9, 10, and 14).**

Boyer's responses regarding the malicious prosecution and false imprisonment claims fail to grapple with the grounds for dismissing several individual Defendants; fail to refute the basic fact that none of the City Defendants was involved with the decision to initiate a prosecution (as opposed to just an arrest); and fail to identify any facts that would meet Boyer's burden of proving an <u>absence</u> of probable cause.

*First*, Boyer entirely fails to address several of the individual City Defendants' grounds for dismissal of these claims against them. Boyer has no answer to the fact that neither Detective Glaviano nor Detective Poulus had any direct involvement in the arrests at issue, as opposed to *post hoc* execution of a search warrant, requiring dismissal of these Defendants. *See* ECF No. 49. Similarly, he has no answer to the fact that the only arrest in which Lt. Long and Det. Wallace, and Sgt. O'Shaughnessy had any involvement occurred outside of the limitations period. See ECF 29 at 25. Counts 9, 10, and 14 should be dismissed as against these individual Defendants.

*Second*, for the malicious prosecution claim, Boyer fails to allege that any of the named Defendants are responsible for initiating criminal proceedings against him. Rather, Boyer merely points out what the City Defendants already argued, which is that individuals other than a prosecutor may be liable only if they "influenced or participated in the decision to institute criminal proceedings." ECF 29 at 26 (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014)). In the case of police officers, Boyer must allege that officers participated "by supplying false or misleading information" *Id.* Boyer points to no such allegations.

*Third*, Boyer's arguments with respect to probable cause for the December 2019 or October 2021 arrests for violating 18 Pa. C.S. § 6108, fail to pass muster. As Boyer

acknowledges, under state law, "licensure is not an element of the offense for prosecution under 18 Pa.C.S. § 6108". ECF No. 47 at 8. Further, Boyer inaptly criticizes the statement in *United States v. Bond*, 173 Fed. App'x 144 (3d Cir. 2006), that "[t]he possession of a license is [merely] an affirmative defense" as resting on a now-overruled Superior Court of Pennsylvania decision, *Commonwealth v. Robinson*, 600 A.2d 957, 958 (Pa. Super. Ct. 1991). But *Robinson* was not a case about the statutory interpretation of the provision at issue. Moreover, Boyer fails to acknowledge the reiteration of this principle in *Tarr v. City of Pittsburgh*, 800 Fed. App'x 131, 135 (3d Cir. 2020), post-dating the arrest at issue.

As Boyer cannot rehabilitate his claims in Counts 9, 10, and 14, dismissal of these claims is appropriate.

### G. Boyer has failed to state a claim for *Monell* liability (Count 11).

In Boyer's response briefs, he does nothing to cure his failure to plead adequately his *Monell* claim, predicated on the boilerplate allegation that "[t]he City of Philadelphia . . . ha[s] failed to train, discipline, or supervise their respective officers, employees or agents under circumstances evidencing a reckless indifference to the rights of others." SAC ¶ 192. Instead, Boyer shifts focus to unpled theories, for example, that the City had a policy of selectively enforcing the laws against him. ECF No. 48 at 21. This does not pass muster. Even if Boyer could inject unpled theories and allegations into a legal brief, which he cannot, he still would have failed to allege that he was treated differently than similarly situated individuals, that there was no rational basis for this difference in treatment, or that such differential treatment can be attributed to a final City policymaker. Accordingly, his claim fails. *See, e.g.*, *Mosca v. Cole*, 217 Fed. App'x 158, 164 (3d Cir. 2007); *Hill v. Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006); *Thomas v. Coopersmith*, No. CIV.A. 11-7578, 2012 WL 3599415, at *7 (E.D. Pa. Aug. 21, 2012).

Likewise, Boyer's attempt to re-reframe his *Monell* claim as predicated on a policy of enforcing the UFA, *see* ECF No. 48 at 22, also fails as a matter of law because "when a county is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the *Monell* line of cases." *Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999); *see also Guilday v. Crisis Ctr. at Crozer-Chester Med. Ctr.*, No. 22-1519, 2022 WL 17484328, at *1 (3d Cir. Dec. 7, 2022). Dismissal therefore is appropriate.

**H.      Boyer has failed to state a claim for trespass to chattels (Count 12).**

Undisputed in Boyer's opposition briefs is that he did not specifically allege that Sgt. O'Shaughnessy, Det. Poulos, or Det. Glaviano seized or held any property of his. Thus, the Court should dismiss Count 12 as to those defendants. Moreover, Boyer has not disputed that Det. Wallace and Lt. Long had legal authority to seize Boyer's cell phone in December 2019 or to suggest Lt. O'Leary lacked legal authority to seize his firearm in October 2021.

Instead, Boyer now argues that his claim is based on the one month delay between the grant of his motion for return of property on April 12, 2023, and the return of his property "the week of May 8, 2023." SAC ¶¶ 81, 88, 89; ECF 49 at 17. However, as before, his claim that "*Moving Defendants* continued to detain Boyer's property" is unsupported by any plausible allegation that any of these specific, individual Defendants[7] were holding his property. ECF 49 at 178 (emphasis added). Further, this account portrays not a deliberate "intermeddling" with Boyer's property, but a return of his property following the normal procedural route set forth in state law. Cf. Rest.2d Torts § 217 (trespass to chattels requires intentional dispossession of the chattel). Thus, this claim should be dismissed.

---

[7] Boyer did not name the City as a defendant in this count.

## I.    Boyer has failed to state a claim for assault and battery (Count 13).

City Defendants' opening brief pointed out that Boyer failed to plead any facts suggesting that an assault and battery occurred. *See* ECF 29 at 32-33. Boyer's response is unable to identify any such allegation in the Complaint. *See* ECF 49 at 17. Accordingly, this claim should be dismissed.

## J.    Boyer's derivative conspiracy claims fail as a matter of law (Counts 12-14).

In his response brief(s), Boyer attempts to rehabilitate his bare, conclusory allegations of a conspiracy in his Complaint by arguing that he is proceeding on the theory of a "wheel conspiracy," a concept that he introduces for the first time in his brief. *See* ECF 49 at 10-11.  Not only is the SAC entirely devoid of any such theory, , but changing the label to a "wheel conspiracy" cannot save Boyer's conspiracy claim from dismissal.

First, although Boyer argues that his allegations should survive dismissal because he has alleged a "rimless wheel conspiracy," *see id.* at 11, the case that Boyer cites to support such a concept, *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002), *rejects* – rather than *adopts* – the notion that liability can lie under such a theory. *See id* at 203 (considering the issue in the context of an antitrust case and concluding "[t]he Supreme Court was clear: a wheel without a rim is not a single conspiracy." (citing *Kotteakos v. United States*, 328 U.S. 750, 755 (1946))); *see also Buari v. City of New York*, 530 F. Supp. 3d 356, 394 (S.D.N.Y. 2021) (citing *Dickson*, 309 F.3d 193 with approval). This alone is sufficient to reject Boyer's analysis.

Further, to the extent Boyer is instead proceeding on a "rimmed wheel conspiracy" theory,[8] his allegations are woefully deficient. First, Boyer has *not* alleged any sort of "wheel

---

[8] In addition, "[a] 'wheel conspiracy' is a type of conspiracy theory used in criminal law," *Flynt v. Berry*, No. 13CV633 JCH/RHS, 2013 WL 12329780, at *2 (D.N.M. Aug. 9, 2013), or antitrust law, *see, e.g.*, *Dickson*, 309 F.3d 193, rather than the present context.  The only federal

24

conspiracy" of either type, and thus, it is entirely unclear who is the so called "hub" in the spoke

of the wheel, or how each "spoke" in this case conspired through that "hub." This is insufficient

to satisfy the pleading standard under *Iqbal* and *Twombly*. *See, e.g.*, *In re Pandora Media, LLC*,

No. 222CV00809MCSMAR, 2022 WL 19299126, at *12 (C.D. Cal. Oct. 26, 2022) ("Pandora

described this as a hub-and-spoke conspiracy at the hearing. . . . [T]his is not enough. Pandora

must allege 'who, did what, to whom (or with whom), where, and when.'" (quoting *In re*

*Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015)));

*Grooms v. Tencza*, No. 09 C 3631, 2010 WL 1489983, at *3 (N.D. Ill. Apr. 13, 2010) (holding,

in the context of a section 1983 suit, that the plaintiffs' assertion that their false arrests were a

product of a "'hub and spoke' conspiracy . . . that ha[d] all been generated from and/or passed

through the City of Chicago OEMC, or 911 center" were "not sufficient to substantiate

allegations of conspiracy").

But even assuming the SAC had contained such allegations, it is insufficient in such a

rimmed-wheel conspiracy for actors to be connected to one another merely by virtue of being

"spokes" in a wheel, as Boyer suggests. *See* ECF No. 49 at 10-11 Rather, "[f]or a single

conspiracy to exist, a 'rim' must connect the spokes, and typically a rim takes the form of

*connecting agreements between the spokes*." *In re K-Dur Antitrust Litig.*, No. 01-CV-

1652SRCCLW, 2016 WL 755623, at *18 (D.N.J. Feb. 25, 2016) (emphasis added); *see also,*

*e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010) ("Here, the District

Court found plaintiffs had not adequately alleged the existence of a "wheel" or "rim" (that is, a

court decision of which counsel is aware that seriously examines the doctrine in the context of a
section 1983 suit is a single out of circuit decision, cited by Boyer, which itself cites only
antitrust and criminal law cases in its analysis. *See Buari*, 530 F. Supp. 3d at 394. Further, the
discussion of a rimmed-wheel conspiracy by the *Buari* court was dicta because it included that
the allegations fell well short of those required to plead an actionable conspiracy. *See id.*

horizontal agreement) connecting the insurer-spokes."); *Radio Music License Comm., Inc. v. SESAC Inc.*, No. 12-CV-5807, 2013 WL 12114098, at *16 (E.D. Pa. Dec. 23, 2013), *report and recommendation adopted as modified*, 2014 WL 12617437 (E.D. Pa. Feb. 20, 2014).

For these reasons, Boyer's invocation the concept of a wheeled conspiracy wholly fails to save his claim from dismissal.

### K. The Individual City Defendants have qualified immunity (Counts 6-9).

Given that Boyer's constitutional claims under Counts 6 to 9 are based on a novel premise – that the UFA is unconstitutional, and therefore City Defendants acted improperly in enforcing that law -- City Defendants have argued that they are entitled to qualified immunity. ECF 29 at 34-35. In response, Boyer argues that (1) Lt. Newsome should have been aware that abiding by the UFA's standards for denying a license would violate his rights, and (2) factual issues surrounding the other individual City Defendants' conduct preclude dismissal. ECF 49 at 20-24; ECF 48 at 22-23. Both of these arguments ignore the lack of any "clearly established" case law invalidating the challenged provisions of the UFA on Second Amendment grounds or addressing the Individual Defendants' challenged conduct. *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018). Boyer's claim that Newsome should have been able to divine some unconstitutionality in the UFA from the 1940 First Amendment case of *Cantwell* is unavailing, as in the 80 or so years since *Cantwell*, the UFA's licensing rules have not been deemed unconstitutional. Likewise, Boyer's attempts to create a factual dispute regarding the other individual City Defendants is a red herring where Boyer can cite no Third Circuit precedent holding that the UFA's licensing provisions are unconstitutional, nor any consensus of decisions from other appellate courts examining similar firearms licensing laws. Therefore the UFA was constitutional at all times alleged in the SAC, and each of the individual City Defendants has qualified immunity for Counts 6-9, which should be dismissed as to them.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss Boyer's Second Amended Complaint as against City Defendants, with prejudice.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Dated: January 30, 2024    RENEE GARCIA, Acting City Solicitor

/s/ *William B. Shuey*

William B. Shuey (PA No. 208792)
Senior Attorney, Affirmative & Special Litigation
Danielle B. Rosenthal (PA 329676)
Deputy City Solicitor, Civil Rights Unit
Jennifer MacNaughton (PA 88424)
Senior Attorney, Appeals Unit
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595
(215) 683-5444
william.shuey@phila.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated below, I filed, via the Court's ECF system, a true and correct copy of the attached Defendants' Motion and Memorandum of Law in Support of Defendants' Motion to Dismiss, which will accomplish service on all parties.

Date:   January 30, 2024

/s/ *William B. Shuey*

William B. Shuey